

Constantine P. Economides<br>
(305) 985-2959<br>
ceconomides@dynamisllp.com

July 1, 2025

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Advanced Flower Capital Inc. and AFC Agent LLC v. Michael Kanovitz and Jon Loevy*, **No. 1:25-CV-02996-PKC**

Dear Judge Castel:

      On behalf of Defendants, Jon Loevy and Michael Kanovitz (the "Defendants"), we respectfully submit this Pre-Motion Letter seeking leave to file a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b). Pursuant to Your Honor's Individual Practices, we note that the Court has set an individual pretrial conference for October 24, 2025. *See* June 9, 2025 Minute Entry. A proposed briefing schedule is included in Section IV below.

      This case is the second of three related lawsuits, all filed this year, and all arising out of the same dispute over the same loan agreement. The first and third of these lawsuits were both filed in the U.S. District Court for the District of New Jersey, on March 7, 2025, and April 17, 2025, respectively. Those suits are being litigated before the Hon. Zahid N. Quraishi, as discussed below.

      The Amended Complaint[1] filed by Plaintiffs, Advanced Flower Capital Inc. and AFC Agent LLC (collectively, "AFC" or "Plaintiffs"), states claims against two lawyers, but the dispute arises out of a larger dispute concerning a loan agreement between AFC, as the lender, and several entities partially owned by the two individual defendants. The Amended Complaint alleges breach of contract, tortious interference with contract, fraud, aiding and abetting fraud, and conversion.

      **I.**    **A Federal District Court Has Already Declared That the Loan Is Not in Default**

      **A. Introduction**

      Plaintiffs' Amended Complaint is essentially an improper collateral attack on the factual findings and conclusions of law recently issued by a federal judge in the District of New Jersey. *See generally Hayden Gateway LLC and Bloc Dispensary LLC v. Advanced Flower Capital Inc. and AFC Agent LLC,* No. 3:25-CV-02789-ZNQ-JBD (D.N.J.) (hereinafter "*Hayden Gateway*"). That Judge, the Hon. Zahid N. Quraishi, held an all-day evidentiary hearing on May 2, 2025, at which all

---

[1] Citations to Plaintiffs' Amended Complaint filed in this case will be referenced as "Amend. Compl."

of the relevant loan documents were introduced and five witnesses testified, including Plaintiffs' CEO and one of the individual Defendants from this case (Michael Kanovitz). In its resulting 39-page opinion, the Court concluded that the very same loan at issue in this case is not in default and that the loan's borrowers, Hayden Gateway LLC and Bloc Dispensary LLC (hereinafter, collectively, the "Borrowers") have not breached it. *See Hayden Gateway*, Dkt. 46. A copy of that opinion is attached hereto as Exhibit A.

To be clear, the Borrowers have not missed—or even been late on—any required monthly payment in more than a year since the most recent forbearance agreement. Instead, AFC had been attempting to foreclose based on alleged "non-monetary" bases for default. Importantly, every alleged breach of the loan document relied upon by AFC, including most of the same purported breaches of warranties and alleged restricted payments implicated by this lawsuit, was considered and rejected by Judge Quraishi. The Court thus affirmatively "DECLARE[D] that, as of the date of this Order, [the Borrowers] are not in breach or default of the parties' Credit Agreement and 2024 Forbearance Agreement." *See Hayden Gateway*, Dkt. 47 at 1 (Order Granting Preliminary Injunction). The Court granted the Borrowers a preliminary injunction, prohibiting AFC from taking any further actions against the Borrowers to foreclose unless and until the Borrowers actually did default or the loan term expires. *Id.* A copy of Judge Quraishi's Order granting the preliminary injunction is attached hereto as Exhibit B.

The lawsuit pending before this Court is predicated on the claim that Defendants, who are the primary individual investors in the Borrowers in *Hayden Gateway*, supposedly violated the "bad boy" shareholder guarantee, by which they had promised to backstop the borrowing companies' loan in the event of default, albeit only if the owners personally committed misconduct, such as fraud. Judge Quraishi's recent findings are entirely inconsistent with the allegations in the Amended Complaint, which seeks to hold two individual owners of the Borrowers personally liable for allegedly breaching the loan that is not, in fact, in breach.

### B. Summary of the Dispute

Plaintiffs are a group of entities which makes high-interest loans to cannabis companies. *See* Dkt. 24, ¶ 2. The case arises out of a loan that AFC made for approximately $60 million to the Borrowers, a group of corporate entities referred to in the Amended Complaint as "Justice Grown" to build cannabis businesses in New Jersey and Pennsylvania. *See* Amend. Compl. ¶ 4. The loan is performing. Every month, for more than a year, the Borrowers make at least their required minimum monthly payment of $250,000—always on time, and always in the required amount. *See Hayden Gateway*, Dkt. 7-7 (Declaration of Vasillios Papatheofanis) at ¶ 8.

The Borrowers are involved in the litigation in New Jersey. By this lawsuit, Plaintiffs have sued not the corporate Borrowers, but two individual Defendants, both full-time attorneys who run a law firm. Defendants are also the primary investors in a Delaware limited liability company (hereinafter, "JG HoldCo") that owns the Borrowers. *See* Amend. Compl. ¶ 19.

AFC seeks to hold Defendants personally liable for the alleged loan breach on two theories. First, Defendants executed a Shareholder Guaranty ("SG"), pursuant to which they agreed, under very limited circumstances, to personally guaranty the obligations of the Borrowers in the loan

agreement. Second, AFC seeks to hold Defendants liable for fraud and conversion stemming from alleged misconduct and misrepresentations attributed to Defendants that allegedly caused the loan agreement to be in default.

The key premise of AFC's Amended Complaint is its allegation that the loan agreement is in default. But that issue was already litigated in federal court in New Jersey, and the Court has found no breach or default by the Borrowers. *See generally* Ex. A & Ex. B. Seeking another bite at the apple, AFC has attempted to recast its unsuccessful breach of contract claims against the Borrowers in New Jersey as contract and tort claims against the Borrowers' owners in New York. The result does not state any legally viable cause of action and must therefore be dismissed.

### C. Factual Allegations

The first 19 pages of the Amended Complaint recount the history of the loan. This is misdirection. There is no dispute that the loan has had a troubled history and that over its first two years, the Borrowers repeatedly fell in default. Between Covid, regulatory delays, construction problems, and other issues, the Borrowers quickly fell behind on this predatory interest rate cannabis loan. It is undisputed that the Borrowers could not make their payments and went into default multiple times. Amend. Compl. ¶¶ 47-64.

However, each time the Borrowers fell into default, instead of foreclosing, AFC renegotiated the loan, but always on the condition that Defendants put millions of dollars into AFC's pocket. Over the course of nine agreed renegotiations, Defendants drained their savings and put everything they had into this loan, a total of more than $18 million. In consideration for those payments, AFC excused the prior defaults and moved forward. *See generally* Amend. Compl. ¶¶ 34-68.

In March 2024, the Borrowers and AFC renegotiated the parties' obligations a final time. Amend. Compl. ¶¶ 65-67. The goal was to right-size the interest payments to a level that the Borrowers could satisfy and ensure once and for all that the loan could stay out of default. The resulting agreement, referred to herein as the "March 2024 Forbearance," established, *inter alia,* a cash-sweep mechanism for the Borrowers' monthly payments, with a minimum of $250,000 per month to AFC. *See* Ex. A at 4.

It is extremely telling that AFC's Amended Complaint leans so heavily on the prior defaults, which comprises the first 19 pages. These earlier defaults do not support any of the relief sought. As Judge Quraishi observed, given that AFC decided not to call the loan, and instead to work with the Borrowers to extend forbearance in exchange for consideration: "[s]o how do you [AFC] go back now, after all that time, and say they are in default from Day 1? That to me seems a little bit disingenuous." *See Hayden Gateway*, Dkt. 36 (May 2, 2025 Hearing Tr.) at 91, excerpt attached hereto as Exhibit C. The Borrowers paid dearly for forbearance for each of those defaults, culminating in the March 2024 Forbearance, which finally reduced the interest rate and set the monthly repayment at terms the Borrowers could satisfy. As Judge Quraishi found, the Borrowers never defaulted again, making every payment on time. *See generally* Ex. A & Ex. B.

D.  **Critical Context**

It is important for the Court to understand how the parties got to this point. The following background, drawn from the record at the preliminary injunction hearing, is critical to understanding that this lawsuit is an improper and baseless attempt to gain leverage in a loan renegotiation.

As adduced at the preliminary injunction proceedings, AFC recently came into a financial crisis of its own. It is a publicly traded company, whose stock price is cratering, losing half of its value in the past six months. As a predatory lender relying on extremely high fees and high-interest loans (exploiting the unavailability of traditional financing in the cannabis industry), AFC's portfolio is faring poorly, and it has run out of money. It is in danger of insolvency and is by all appearances having trouble making its required shareholder dividends. *See Hayden Gateway*, Dkt. 7-4 (Declaration of Michael Kanovitz) at ¶¶ 7-11.

Shortly after the parties entered into the March 2024 Forbearance, AFC began to make demands that the Borrowers' owners contribute $30 million in cash plus other valuable collateral to the loan package. Because the loan was no longer in default, Defendants refused. Defendants were not personally obligated under the Borrowers' loan agreement in any event, and they had done nothing wrong. *Id.* at ¶¶ 17-21.

AFC kept insisting. Defendants kept refusing. AFC then threatened Defendants that unless they met AFC's demands, Plaintiffs would bring a RICO lawsuit against them personally, accusing them of criminal misconduct, thereby causing them professional harm. AFC gave Defendants a deadline by which they had to come up with tens of millions of dollars in cash and collateral or AFC would try to destroy them by accusing them of RICO crimes. *Id.* at ¶¶ 17-21.

Having done nothing wrong, Defendants refused to give in. The loan was not in default, and Defendants were not parties to the loan agreement. They had no obligation to contribute an enormous amount of money to the collateral package. *Id.* at ¶¶ 17-21.

The deadline set by AFC elapsed. The next day, AFC followed through with its threat, suing Defendants for criminal wire and mail fraud in violation of the RICO Act. AFC spokespeople gave quotes to media services, such as Law360, which publicized the criminal RICO allegations against Defendants to the entire legal community. *See* Mike Curley, "Attorney Owners of Pot Co. Accused Of $46M RICO Scheme," Law360 (Apr. 11, 2025), https://www.law360.com/articles/2324561/attorney-owners-of-pot-co-accused-of-46m-rico-scheme.

After that, three things happened.

First, on May 9, Judge Quraishi affirmatively declared that the loan was not in default, a conclusion completely at odds with AFC's salacious allegations that Defendants had stolen almost $20 million from the loan collateral package. *See* Ex. B at 1.

Second, on May 13, Defendants wrote and filed with this Court a letter explaining why the RICO allegations were without factual basis and legally frivolous. *See generally* Dkt. 15. In response to that letter, AFC asked to amend the complaint. *See generally* Dkt. 18.

Third, when AFC amended the complaint, it simply dropped the RICO allegations without explanation. *Compare* Dkt. 1 (original complaint) *with* Amend. Compl. On information and belief, AFC did not issue any press releases when it quietly excluded the unfounded RICO allegations from its high-profile RICO complaint.

### E. AFC's Remaining Re-Pled Allegations Lack Merit

The very first paragraph of the Amended Complaint contends that Defendants "fraudulently diverted" tens of millions of dollars of loan proceeds and "secretly funneled" those moneys to other entities owned by Defendants, all while "repeatedly lying to AFC about defaults[.]" Amend. Compl. ¶ 1. These are serious allegations, made about officers of the Court, but they are not true. Under the law discussed below, the allegation is not plausible.

AFC's other contentions fare no better. The Amended Complaint contends that the Borrowers (not the individual Defendants) failed to disclose certain "affiliate assets" and made "incomplete and misleading perfection certificates." Amend. Compl. ¶¶ 92-100. Again, by the time it amended its complaint, AFC had already failed to persuade Judge Quraishi that the Borrowers had failed to disclose anything, or that there were problems with any of the Borrowers' perfection certificates. *See generally* Ex. A. AFC had every opportunity to prove that there was a disputed issue of fact and vigorously argued for the right to foreclose on the loan but it failed to marshal any evidence to support these allegations.

At bottom, AFC cannot plausibly allege here that Defendants committed misconduct which caused the Borrowers to default on the loan, when the loan has been affirmatively declared to be not in default, and a federal court has enjoined AFC from acting on the very allegations at the heart of this Amended Complaint.[2]

### II.   Pursuant to Rule 12(b)(2), the Amended Complaint Must Be Dismissed Because This Court Lacks Personal Jurisdiction Over Defendants

"On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Forstech Technical Nigeria Limited & Chidi Adabanya v. The Shell Petroleum Development Company Of Nigeria Limited (Spdc)*, No. 24 CIV. 7629 (PAE), 2025 WL 1435203, at *3 (S.D.N.Y. May 19, 2025). AFC has not met—and cannot meet—that burden. The Amended Complaint alleges that "[t]he Court has personal jurisdiction over all Defendants because Defendants Loevy and Kanovitz have expressly consented to this Court's jurisdiction over them through their execution of the Shareholder Guaranty." Amend. Compl. ¶ 10. Subsequently, the Amended Complaint alleges that Defendants' consent was "knowing and voluntary" because Defendants are themselves lawyers who "engage in multi-jurisdictional litigation" and who "knowingly agreed to the jurisdiction clause in the Shareholder Guaranty." *Id.* ¶ 12. These assertions are insufficient to establish personal jurisdiction.

---

[2] AFC unlawfully helped itself to more than $1.8MM from the Borrowers' bank accounts on the basis of the alleged default, money that AFC returned after Judge Quraishi ruled the loan is not in default.

**Boston**                                              **Miami**                                              **New York**

Plaintiffs do not allege any facts about how, when, or where Defendants "consented" to personal jurisdiction in this Court. Defendants were not parties to the Credit Agreement by which the Borrowers consented to New York jurisdiction, and the agreement Defendants entered (the SG, discussed below) addresses only venue, not jurisdiction. Absent such allegations, the Court cannot assess whether—let alone conclude that—either Defendant somehow consented to personal jurisdiction. Thus, Plaintiffs' allegations fail under Rule 12(b)(2), and the Complaint must be dismissed for lack of personal jurisdiction.

### III. Pursuant to Rule 12(b)(6), the Amended Complaint Must Be Dismissed Because It Fails to State a Claim Upon Which Relief May Be Granted

This Court must dismiss under Rule 12(b)(6), because AFC has failed to state a claim.

#### A. The Contract-Based Claims: Defendants Did Not Breach the Shareholder Guaranty, and Defendants Did Not Tortiously Cause the Borrowers to Breach the Loan Agreement

Count I alleges that Defendants breached the SG, a typical "bad boy guaranty," pursuant to which Defendants agreed to guarantee the Borrowers' obligations under the loan agreement under certain narrowly defined circumstances. Counts I and II fail to state a cognizable claim for breach of contract or tortious interference for the following reasons.

##### 1. No Obligations Are Due and Payable

This Court should dismiss AFC's breach of contract claim because no obligations are yet due and payable under the contract. The SG provides that each guarantor

> [G]uaranties to [AFC] as and for such Guarantor's own debt, until the final payment in full thereof, in cash, has been made, the due payment of the Guaranteed Obligations, when and as the same shall become due and payable, whether at maturity, pursuant to a mandatory prepayment requirement, by acceleration, or otherwise, and after the expiration of any applicable grace and notice period under the Credit Agreement or any of the other Loan Documents[.]

SG § 2 (emphasis added).[3]

Here, the operative agreement is the March 2024 Forbearance, which continues in full force and does not mature until May 2026. *See* Amend. Compl. ¶¶ 65-68. The Borrowers continue to make their monthly payments, and AFC continues to accept them, as set forth in the March 2024 Forbearance, the most recent iteration of the loan.

The only obligations that are "due and payable" are the Borrowers' monthly loan payments. AFC's Amended Complaint does not allege, nor could it allege, that the Borrowers are not current

---

[3] "It is well-settled that where the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiff's claim." *Lehrer v. J&M Monitoring, Inc.*, No. 20-CV-6956 (KMK), 2022 WL 2392441, at *1 (S.D.N.Y. July 1, 2022) (cleaned up).

on those payments. They are. Were it otherwise, Judge Quraishi would not have held that the loan is not in default. *See generally* Ex. A & Ex. B. Absent anything due and payable, Defendants' SG obligations are not actionable.

        2.        <u>AFC Has Not Sustained Any Losses That Could Trigger a Guaranty</u>

To the extent that AFC suggests that any amounts apart from loan payments are due, that is wrong as a matter of law. The Amended Complaint falsely claims that Defendants are personally liable for all payments under the loan agreement. Rather, Defendants personally guaranteed (again, under very limited circumstances) only a set of obligations defined in the SG as the "Guaranteed Obligations." "Guaranteed Obligations" "means any losses, expenses, charges, costs, or liability to [AFC] arising from" a number of specified events. SG § 1 (emphasis added). Those events include fraud on the part of Defendants, a material breach of warranty, or a failure to pay taxes. SG § 1.

AFC alleges (with no factual support) that the Borrowers have accrued an accounts-payable balance of more than $5 million and unpaid taxes of more than $5 million. Amend. Compl. ¶ 85. Even assuming the truth of that allegation (which Defendants dispute), AFC has failed to allege any "losses, expenses, charges, costs, or liability" to AFC as a consequence. Rather, it alleges that these amounts "will attach to *any potential foreclosure*" and therefore "will reduce the amount the JG Borrowers have to pay down the obligation." Amend. Compl. ¶ 87 (emphasis added).

In other words, AFC alleges that these hypothetical balances *might,* in the future, result in losses covered by the SG, but only if a foreclosure possibly becomes appropriate should the Borrowers default in the future. AFC thus might or might not have potential future losses covered by the SG in the event that: (1) the Borrowers default on their loan in a manner giving rise to a right to foreclose; (2) AFC forecloses on a Pennsylvania property (which Judge Quraishi enjoined them from doing); (3) AFC receives a money judgment as to that foreclosure; (4) there are still unpaid taxes and bills in some amount to be determined on the date of the judgment; and (5) the foreclosure sale is insufficient and results in a shortfall, such that AFC's recovery on that judgment is reduced by that undetermined, hypothetical amount. Such an allegation is plainly insufficient as a matter of law.

What AFC definitely does not have or allege is any "losses, expenses, charges, costs, or liability to [AFC] arising from" the alleged accrued balances. Therefore, the obligations under the SG have not been triggered, and Defendants are not liable under the SG (or under any other theory) for AFC's hypothetical future losses which may or may not come to pass. Because there are no amounts currently "due and payable" under the SG, AFC has failed to allege a breach of the SG. *Wells Fargo Bank Nw., N.A. v. Sundowner Alexandria, LLC*, No. 09 CIV. 7313 BSJ FM, 2010 WL 3238948, at *3 (S.D.N.Y. Aug. 16, 2010) ("Although the Court must accept the material facts alleged in the complaint as true, when the content of the contracts conflicts with allegations about those contracts made in the Complaint, the actual language of the contracts must control.").

        3.        <u>There Has Been No Material Breach of Any Representation and Warranty</u>

Count I alleges that the Borrowers breached various representations or warranties in connection with the Restricted Payments—allegations considered and rejected by Judge Quraishi.

**Boston**        **Miami**        **New York**

*See generally* Ex. A. For reasons set forth below, those allegations fail. Moreover, even if there had been any breaches of representations and warranties, AFC has failed to identify any "losses, expenses, charges, costs, or liability to [AFC] arising from" those breaches. Accordingly, there are no amounts currently "due and payable" by the Defendants under the SG, and AFC has failed to allege a breach of the SG. This Court must therefore dismiss Count I as well.

    4.    <u>AFC Has Not Adequately Pled Tortious Interference as a Matter of Law</u>

Count II alleges that Defendants caused the Borrower to breach the loan agreement. This Court must dismiss that count because there has been no breach of contract, and thus no action for causing such a breach. Indeed, the District of New Jersey has held that the Borrowers are not in breach or default of the loan agreement. One cannot be liable for tortiously causing a breach of contract if the contract has not been breached.

In addition, the Court must dismiss Count II because it is legally defective. Under New York law, "a plaintiff cannot impose individual liability on a corporate officer or director because the defendant took actions in his official capacity that caused the company to breach its contract with the plaintiff." *Kelly v. MD Buyline, Inc.,* 2 F. Supp. 2d 420, 438-39 (S.D.N.Y. 1998); *accord Murtha v. Yonkers Child Care Ass'n, Inc.,* 383 N.E.2d 865, 866 (N.Y. 1978) ("A director of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken.") (internal citations and quotation marks omitted.)

The reason is obvious: if the law were otherwise, then every claim of breach of contract by an entity would give rise to a parallel claim of tortious interference with contract by that entity's agent. *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.,* No. 02 Civ. 1363 (PKL), 2003 WL 21203503, at *6-*7 (S.D.N.Y. May 22, 2003). Thus, under New York law, "company officers" cannot be "sued individually for causing their own company to breach a contract." *Id.* (citing *Kelly*, 2 F. Supp. 2d at 439; *Murtha*, 383 N.E.2d 865, 865-66); *see also Diamond v. ShiftPixy, Inc.*, No. 20-CV-7305 (LJL), 2021 WL 3085405, at *19 (S.D.N.Y. July 19, 2021) ("Where the defendant is an officer of a corporation that is party to a contract, they are generally not considered third parties to the contract who can interfere with it.").

    **B.**    **The Tort-Based Claims: Plaintiffs Failed to Allege Cognizable Claims for Fraud or Conversion**

The remaining three counts allege intentional torts including fraud (Count III), aiding and abetting fraud (Count IV), and conversion (Count V). Again, these claims are simply reiterations of AFC's contract claim against the Borrowers. They are ordinary commercial contract claims disguised as intentional torts, with no legal basis.

All of these allegations turn on the Borrowers' (but not Defendants') alleged breach of the "Restricted Payments" provision of the loan agreement (to which Defendants were not even parties). The connection between an alleged corporate (non)-breach of a loan agreement and individual liability of the company's part-owners is tenuous, convoluted, and poorly explicated in

the Amended Complaint. That obfuscation is by design. There was no misconduct, and nothing that can be attributed to the Defendants even if there was. The allegations are plainly insufficient.

1. The Alleged Restricted Payments and "False" Statements

The bulk of AFC's allegations turn on AFC's theory that the Borrowers (not Defendants) defaulted on their loan, because, in 2021-2023, they made some unidentified number of transactions transferring money from a Pennsylvania bank account to other JG HoldCo entities (but not to Defendants). *See, e.g.*, Amend. Compl. ¶¶ 74-83. AFC's CEO testified about some of these payments at the injunction hearing. *See* Ex. A at 14-15 (discussing CEO Dan Neville's testimony).

AFC does not claim that these alleged, unidentified transfers were unlawful in themselves, but rather, that they constituted a breach of portions of the loan agreement governing the use of loan proceeds and inter-company transfers (the "Restricted Payments"). *See, e.g.*, Amend. Compl. ¶¶ 76, 83. According to AFC, as a result of those alleged (but unidentified) Restricted Payments, the Borrowers (but not Defendants) were in a continuous state of default from November 2021 through July 2023. *Id.*

During that period, the Borrowers (but not Defendants) were required to file quarterly and annual financial reports and compliance certificates detailing the financial circumstances of the Borrowers. Amend. Compl. ¶ 101. Also during that period, the Borrowers (but not Defendants) were required to submit draw requests whenever they needed to pay contractors or otherwise expend loan funds for their approved purposes. Amend. Compl. ¶ 108. Each time the Borrowers submitted a quarterly compliance certificate or a draw request, they were required to certify that the Borrowers (but not Defendants) were not in default. *Id.* at 101, 108. Finally, during that period, the Borrowers and AFC renegotiated the loan agreement roughly six times, including four amendments and two forbearance agreements. *See generally* Amend. Compl. ¶¶ 34-68. In each case, the Borrowers (but not Defendants) were required to certify that the Borrowers were not in default.

As a result, AFC alleges that, during that period, the Borrowers (but not Defendants) submitted eight compliance certificates, "nearly 100" of draw requests, and six loan amendments "falsely" certifying that Borrower were not in default. Amend. Compl. ¶ 6, 107-08, 137, 145.

The Amended Complaint contends that the Defendants are liable for those "false" statements. According to AFC, Defendant Loevy is allegedly liable because he signed the loan amendments in his capacity as a manager of the Borrowers and supposedly "directed" various officers of Borrowers to sign the compliance certificates and the Draw Applications. Amend. Compl. at ¶¶ 107-08. Defendant Kanovitz is allegedly liable because, AFC claims, he allegedly "had actual knowledge" of the alleged misrepresentations. Amend. Compl. ¶ 146. The sole basis for that allegation is that Kanovitz owned a larger equity share in JG HoldCo than Loevy. Amend. Compl. ¶ 146. AFC also alleges that Kanovitz "fail[ed] to disclose or correct" the alleged misrepresentations, and he "benefit[ed] from" them in some unspecified manner. Amend. Compl. ¶ 147.

In virtually every instance alleged, the purported "false statement" was a certification that the Borrowers were not in default. Accordingly, the bulk of the Amended Complaint turns on whether the alleged "Restricted Payments" were, in fact, a default.

The Amended Complaint fails to identify the Restricted Payments with the required specificity. It provides no dates, payees, dollar amounts, or circumstances for any of the payments, apart from two. While the Amended Complaint alleges a total of just over $19 million in payments between September 2021 and July 2023, it provides no further information whatsoever. Amend. Compl. ¶ 75. A summary table purports to break the payments down into six categories by payee, but even that is wrong; the payee identified for the vast majority of the payments ($16 million of the $19 million) is "Oakland Manager," an entity that did not even have a bank account until after July 2023.

Due to the Amended Complaint's profound lack of particularity, neither Defendants nor this Court can determine how many payments were allegedly made (dozens? hundreds? thousands?), when they were made, to whom they made, who approved them, or what they were payments for. Accordingly, it is impossible to determine from the Amended Complaint whether they were "Restricted Payments" or otherwise constituted breaches of the loan agreement.

Only two specific payments are referenced in the Amended Complaint. The first is a loan re-payment for $966,762 made to a company that loaned Defendants money, money which was in turn loaned to the cannabis company. AFC's pleading fails to explain why this was a "Restricted Payment" that breached the loan agreement (which is not in breach). As with the other alleged restricted payments, the money used to make payment came from other company operations, not the Borrowers' restricted funds. *See Hayden Gateway*, Dkt. 7-7 (Declaration of Vasillios Papatheofanis) ¶ 22. There was no default, and Defendants caused no default.

The second allegation, a September 2023 disbursement intended to pay for manufacturing laboratory equipment, was a payment made in error that was repaid in short order after Defendants learned about it, long before the March 2024 Forbearance. AFC had disbursed to the Borrowers just over $400,000 to pay for an invoice for extraction lab equipment. When the Borrowers terminated their prior CEO and CFO, the new leadership submitted a draw request for the same lab equipment. AFC pointed out the prior disbursement. As soon as Defendants (owners of the Borrowers) learned of the discrepancy, the Borrowers promptly repaid the entire amount to AFC. But in any event, to the extent that the lab equipment disbursement ran afoul of any portion of the Borrowers' contract, that breach has been remedied and then later forborne upon in writing in exchange for valuable consideration under the 2024 Forbearance Schedule I (which specifically listed this event as one of the actions that the lenders agreed to forbear). It cannot now serve as a basis for fraud when it was explicitly acknowledged and forborne in the March 2024 Forbearance.

As discussed below, these transactions do not satisfy even a single element required to plead fraud under New York law. That AFC would highlight these transactions as the only two examples of allegedly violative "Restricted Payment" reveals the utter lack of substance to the allegations.

2. <u>The Fraud Counts Fail Rule 9(b)'s Requirement to Plead with the Particularity</u>

The Amended Complaint, like the original, suffers from a fatal problem under Fed. R. Civ. P. 9(b). Indeed, Defendants' original letter pressed this point, prompting AFC to ask to amend. Unfortunately, but not surprisingly, the amendment does not cure the problem.

Fed. R. Civ. P. 9(b) requires particularity in pleading the "circumstances constituting fraud." This particularity requirement applies not just to causes of action denominated "fraud," but to any cause of action "based on plaintiff's allegations of fraud." *Apace Comm'ns, Ltd. v. Burke,* 522 F. Supp. 2d 509, 514 (W.D.N.Y. 2007).

The primary purpose of the particularity requirement is "to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Novak v. Kasaks,* 216 F.3d 300, 314 (2d Cir. 2000). Courts must therefore take pains to ensure that a complaint alleges sufficiently particular detail "to give adequate notice to an adverse party and to enable that party to prepare a responsive pleading." *Wright & Miller*, "Pleading Fraud With Particularity—Extent of Requirement," 5A Fed. Prac. & Proc. Civ. § 1298 (4th ed.).

Here, the allegations of fraud nearly all relate to a statement that the Borrowers were not in default. While AFC has provided some information about when those statements were made and by whom, it has failed to "explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir.2006); accord *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993); *Knox v. Countrywide Bank,* 4 F. Supp. 3d 499, 506 (E.D.N.Y. 2014); *Colony at Holbrook, Inc. v. Strata G.C., Inc.,* 928 F. Supp. 1224, 1230-31 (E.D.N.Y. 1996). When there are hundreds or thousands of such transactions, plaintiffs need not provide that level of detail as to every transaction, but they must "at least provide some representative examples of the alleged fraud." *U.S. ex rel. Alsaker v. CentraCare Health Sys., Inc.*, No. CIV. 99-106, 2002 WL 1285089, at *4 (D. Minn. June 5, 2002); see also, e.g., *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 87 (11th Cir. 2008).

As noted above, the Amended Complaint identifies only two alleged Restricted Payments, and in neither case did the payment constitute a default. For the remaining alleged Restricted Payments, Rule 9(b) is a prohibitive problem. AFC has not alleged—because it cannot allege--any identifying information about the remaining purported transactions.

The dearth of detail surrounding the alleged $19 million in Restricted Payments that forms the backbone of the fraud-related counts is fatal to AFC's Amended Complaint. This Court must therefore dismiss those counts for failing to conform to Rule 9(b).

3. <u>A Legal Conclusion, Even If Incorrect, Is Not a Fraudulent Misstatement</u>

Independently, the Amended Complaint has another dispositive flaw. As noted, the bulk of AFC's allegations rely on a claim that Defendant Loevy and people he "directed" certified that the Borrowers were not in default, when, in AFC's view, they were in default. This allegation cannot be the basis for a fraud claim.

Under New York law, "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, *knowledge of its falsity,* an intent to induce reliance, justifiable reliance by the plaintiff and damages." *City of Long Beach v. Agostisi,* 221 A.D.3d 776, 778 (2d Dept 2023) (emphasis added). Moreover, the plaintiff must show by clear and convincing evidence that the representation was "false and *known by the defendant to be false.*" *Tanzman v. La Pietra,* 8 A.D.3d 706, 707 (3d Dept 2004) (emphasis added).

A declaration that an entity is, or is not, in default of a complex loan agreement whose multiple and self-referential iterations comprise roughly one thousand pages is, by necessity, a legal conclusion, and a matter of professional legal opinion. It is certainly not "a material misrepresentation of fact," as required by New York law to support a claim of fraud. *See Knox v. Countrywide Bank,* 4 F. Supp. 3d 499, 508 (E.D.N.Y. 2014) ("The foregoing discussion demonstrates the flaw in plaintiffs' primary theory of fraud, which rests on their legal conclusion that Countrywide was not the 'holder in due course' of the 2004 note because it was split from the mortgage. Of course, a legal conclusion of this nature is not entitled to the presumption of truth.").

Legal conclusions and opinions are not "representations of fact," and therefore cannot serve as the basis for a fraud claim. *Petrello v. White,* 412 F. Supp. 2d 215, 228 (E.D.N.Y. 2006), aff'd, 344 F. App'x 651 (2d Cir. 2009); *Arnold Constable Corp. v. Chase Manhattan Mortg. & Realty Trust,* 59 A.D.2d 666, 667 (1st Dept 1977); *see also Singh v. NYCLT 2009-A Trust,* Case No. 14 Civ. 2558 (RWS), 2016 WL 3962009, at *7 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir. 2017) (citing 37 Am. Jur. 2D of Fraud & Deceit § 101 (2014)) ("It is 'well settled' that 'fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law."); *3 E. 54th St. New York, LLC v. Patriarch Partners, LLC,* 90 A.D.3d 418, 419 (1st Dept 2011) ("Contrary to plaintiff's contention, these bare legal conclusions, especially as they concern claims of fraud, are not entitled to be accepted as true on a motion to dismiss on the pleadings. . . .") (citations omitted). Nor can a party "reasonably rely" on such opinions, especially a sophisticated commercial entity such as AFC, with an army of fancy lawyers at its disposal. *Mann v. Rusk,* 14 A.D.3d 909, 910 (3d Dept 2005).

AFC's fraud claims rely upon a certification that the Borrowers were not in default and are therefore insufficient as a matter of law. *Knox*, 4 F. Supp. 3d at 508.

4. <u>AFC Also Failed to Sufficiently Allege Scienter</u>

Fraud is a serious charge that requires intent. In this case, AFC has not, and cannot, allege any specific facts to establish that Defendants had the mental state and knowledge required to establish fraud.

"[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b). The plaintiffs must set forth specific facts supporting an inference of fraud." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 339 (5th Cir. 2008). Simply alleging that a defendant "must have known" that a statement was false or "must have been privy" to the truth is patently insufficient. *Flexborrow LLC v. TD Auto Fin. LLC,* 255 F. Supp. 3d 406, 423 (E.D.N.Y. 2017). Nor is it sufficient to allege "a generalized profit motive" or claim that "a defendant stands to gain economically from fraud." *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater*

*N.Y.,* No. 07-CV-1471 (RRM)(LB), 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009) (collecting cases). Such allegations "do not satisfy the heightened pleading requirements of Rule 9(b)." *Flexborrow,* 255 F, Supp. 3d at 421 (citation omitted).

AFC's original complaint could not surmount this hurdle, and the Amended Complaint likewise fails to solve the problem. It, too, is rife with the same bald claims that Defendants "knew" something, without stating a single specific fact supporting an inference that in fact they knew the thing. *See, e.g.*, Amend. Compl. ¶ 125 (alleging that Defendants "knew" the alleged Restricted Payments were wrong); ¶ 138 (alleging that Loevy "knew that these misrepresentations were false when he (or others he directed) made them").

Even worse are the multiple claims that Defendants must have known something simply because they partly owned the company. *See, e.g.,* Amend. Compl. ¶ 146 (alleging that Kanovitz "had actual knowledge of" unspecified fraud "as [Kanovitz] served as an even larger owner of JG HoldCo"). Indeed, the 39-page Amended Complaint is bereft of a single allegation of a specific actual fact tending to show that Defendants:

- knew about the existence of the alleged Restricted Payments;
- knew that the Restricted Payments, or any of the alleged non-monetary defaults, constituted Events of Default; or
- knew that various employees were signing compliance certificates or draw requests.

Nor is there a single fact tending to show that Defendants intended to defraud AFC and made any statements with the intention that AFC rely thereon.

Even the two specific examples of alleged Restricted Payments fail to satisfy the elements of fraud on the part of Defendants. Plaintiffs do not allege that Defendants made a false statement; that they did so with knowledge that the statement was false or with the intent to defraud; that they knew the payment to be an Event of Default; that they intended AFC to rely on the statement; that AFC actually did reasonably rely on the statement; or that AFC was damaged in some way as a result.

Thus, even including the two instances that AFC touts as examples of Restricted Payments, AFC does not sufficiently allege the scienter element of its fraud claims, much less allege facts that actually support those elements. At best AFC is asserting a breach of the loan agreement -- by Defendants who were not even parties to it -- that is not in fact in breach. That is not fraud.

  5. <u>The Perfection Certificate Allegations</u>

AFC also contends that Defendant Loevy failed to disclose certain entities as JG HoldCo "affiliates" in a Perfection Certificate prepared in connection with one of the forbearance agreements. Amend. Compl. ¶¶ 96.

In *Hayden Gateway*, the Borrowers submitted detailed affidavits disproving these allegations and sponsored testimony tending to prove that (1) the alleged entities are not affiliates, and (2) the Borrowers' General Counsel had disclosed the information to AFC in any event. AFC offered no proof to the contrary. And Judge Quraishi found there was no default. *See* Ex. A & Ex.

B. At a minimum, this allegation is thus not plausible and should be dismissed on that basis. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ; *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010).

### C. The Conversion Claim Fails to Establish a Single Element of Conversion and Must Be Dismissed

Count V purports to allege conversion. Given that the loan is not even in default, this claim too fails the plausibility test.

Conversion under New York law is "any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240, 249 (2d Cir.1987). AFC claims Defendants exercised control over specific property, to which AFC had a superior possessory interest. As a matter of New York law, neither of those allegations is true.

First, under New York law, a fungible sum of money does not constitute "property" for purposes of a conversion claim. To state a cause of action for conversion of money, the money must be "described or identified in the same manner as a specific chattel." *9310 Third Ave. Assocs., Inc. v. Schaffer Food,* 210 A.D.2d 207, 208 (2d Dept. 1994) (internal quotation marks and citation omitted). In other words, the money must be "specifically identifiable and segregated." *Manufacturers Hanover Trust Co. v. Chemical Bank,* 160 A.D.2d 113, 124 (1st Dept. 1990).

Here, AFC merely refers to "the funds it dispersed" to the Borrowers. AFC's conversion claim must fail on that ground alone. There is no indication of an identifiable fund or otherwise segregated amount, nor is there any description of the alleged transfer or transfers from which the Court could infer a specifically identified fund of money. *Global View Ltd. Venture Cap. v. Great Cent. Basin Expl., L.L.C.,* 288 F. Supp. 2d 473, 480 (S.D.N.Y. 2003); *accord United Republic Ins. Co. v. Chase Manhattan Bank,* 168 F. Supp. 2d 8, 19 (N.D.N.Y. 2001), *aff'd*, 40 F. App'x 630 (2d Cir. 2002) ("In the instant case, the $14,000,000.00 in question was mingled in the Alpha Trust with the $13,000,000.00 from the UCIC loan. These mingled funds were then loaned to LGI, which then paid the Lender Banks their respective amounts due. The funds are now so dispersed that they are not identifiable or segregated. Therefore, an action for conversion is not appropriate.").

Second, and perhaps more importantly, AFC does not have a possessory right in the funds, much less a right superior to that of the Borrowers. The law is clear: "To sustain a conversion claim, acts must be alleged that are unlawful or wrongful that are not a mere violation of contractual rights." *In re Ticketplanet.com,* 313 B.R. 46, 69 (Bankr. S.D.N.Y. 2004). Thus, "[f]or purposes of a conversion claim, the Court will not deem a plaintiff to have immediate possessory rights over money where that money represents damages in contract." *Id.*

As held in a similar case:

> Plaintiff does not have a legal ownership or a right of possession in the $14,000,000.00 it loaned to the [Borrower]. It voluntarily made the loan and

> accepted specific collateral in return. [Borrower] thereafter had authorization to control the funds . . . . Plaintiff had no intent to retain or exercise control. [Plaintiff] agreed to be paid back in monthly payments as part of the contract, not paid back from the specific funds that it loaned to the trust. It cannot now claim a possessory or ownership interest in that which it freely gave away as a loan in a contract that was bargained for and supported by consideration. The claim here is essentially a breach of contract claim for the [Borrower's] failure to repay the loan from [Plaintiff], or for the lack of value of the consideration or collateral that plaintiff received. Neither theory is actionable under a conversion claim.

*United Republic Ins. Co. v. Chase Manhattan Bank,* 168 F. Supp. 2d 8, 19 (N.D.N.Y. 2001), *aff'd*, 40 F. App'x 630 (2d Cir. 2002).

In short, Plaintiffs cannot convert a breach of contract claim into a conversion claim. If AFC contends that the Borrowers breached their contract by making the Restricted Payments, it can certainly try to prove that in a breach of contract lawsuit against the Borrowers.

### IV.  **Conclusion and Proposed Briefing Schedule**

Viewed properly, this Amended Complaint is a baseless and improper attempt to gain leverage over Defendants in loan negotiations. AFC threatened to cause serious harms to Defendants' personal reputations by alleging criminal RICO misconduct if they did not capitulate to AFC's unjustified demands regarding a loan that was not in default. When Defendants stood their ground because they have done nothing wrong, AFC followed through with their threat and made the RICO allegations—spurious claims which AFC then promptly withdrew rather than try to defend.

The claims that remain have no more merit than the RICO allegations. If AFC can somehow persuade Judge Quraishi to reverse course, AFC might or might not have a valid breach of contract lawsuit against the Borrowers. What AFC does not have, however, is a claim against the individual Defendants named in this lawsuit.

If the Court decides not to transfer this case to Judge Quraishi in the District of New Jersey under 28 U.S.C. §1404(a), to, among other reasons, avoid the possibility of inconsistent judgments, or dismiss it for lack personal jurisdiction over Defendants, then this Court should dismiss AFC's Amended Complaint in its entirety because none of the five counts states a legally cognizable claim under New York or federal law. All counts must be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Finally, Defendants have conferred with Plaintiffs and respectfully propose the following agreed-upon briefing schedule. Defendants will file their anticipated motion to dismiss and anticipated motion to transfer to New Jersey within fourteen (14) days of the Court granting Defendants permission to file. Plaintiffs' responses to these motions will be filed within 28 days after Defendants file their motions. Defendants will file their reply briefs, if any, within 14 days after Plaintiffs file their responses.

**Boston**                                            **Miami**                                            **New York**

Dated: July 1, 2025

                                                                          Respectfully submitted,

By: */s/ Constantine Economides*
Constantine P. Economides
DYNAMIS LLP
175 Federal Street, Suite 1200
Boston, MA 02110
(305) 985-2959
CEconomides@dynamisllp.com

*Counsel for Michael Kanovitz, Jon Loevy*

Case 1:25-cv-02996-PKC   Document 26   Filed 07/01/25   Page 16 of 16