quinn emanuel trial lawyers | new york

295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7160**

WRITER'S EMAIL ADDRESS
**kevinreed@quinnemanuel.com**

July 9, 2025

**VIA ECF**

Hon. P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Advanced Flower Capital Inc. and AFC Agent LLC v. Michael Kanovitz and Jon Loevy*
      (Case No. 1:25-cv-02996)

Dear Judge Castel:

We represent Plaintiffs Advanced Flower Capital Inc. and AFC Agent LLC (together, "Plaintiffs" or "AFC").[1] This letter responds to the July 1, 2025 pre-motion letter filed by Defendants Jon Loevy and Michael Kanovitz ("Letter"), which seeks leave to move to dismiss AFC's Amended Complaint ("Compl.," ECF No. 24) against Defendants for breach of contract, tortious interference with contract, fraud, aiding and abetting fraud, and conversion.

This Court's rules require that a party proposing to file a motion first submit a letter detailing the factual and legal bases for the motion. Defendants' *16-page* letter regarding their proposed motion to dismiss the Amended Complaint goes well beyond this scope and opens with a 5-page digression consisting largely of speculation on Plaintiffs' motives in bringing this lawsuit, improper references to settlement negotiations, attacks on Plaintiffs' lending practices (which Defendants had no issue with when they took Plaintiffs' money), false claims about Plaintiffs' financial health, and legally immaterial (at the pleading stage) denials of the well-pled factual allegations in the Amended Complaint. None of this constitutes a proper factual or legal basis for Defendants' proposed motion to dismiss the Amended Complaint, and Plaintiffs will not engage with these diversionary tactics at this point in the litigation, except to say that it is an obvious attempt to distract from the issues raised by the Amended Complaint and will be exposed as such in the course of this litigation. The remainder of this opening section of Defendants' letter

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those set forth in the Amended Complaint.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

contends that Plaintiffs' claims in this action are somehow precluded by a preliminary injunction ruling made in a separate litigation involving separate claims and separate parties. As explained below, that argument fundamentally misapprehends preclusion doctrine, as the ruling, which is under appeal, is neither relevant to nor binding in this case.

As to the portion of Defendants' letter that sets forth actual arguments in support of a proposed motion to dismiss, Plaintiffs explain below why they are meritless and will not succeed if presented in a motion.

**I.      Background**

This case concerns a dispute between a lender, AFC, and two personal guarantors for a serially-delinquent borrower, referred to in the Amended Complaint as "Justice Grown." Justice Grown is a business that manages a family of subsidiaries which holds licenses for the cultivation, manufacturing, and distribution of cannabis and cannabis products in their respective states of operation. In 2021, AFC agreed to extend a $75.4 million credit facility (later ballooning to $83 million) to several entities under Justice Grown's corporate umbrella (the "JG Borrowers") to finance Justice Grown's construction and operations in New Jersey and Pennsylvania (the "Projects"). (Compl. ¶ 4.) AFC and the JG Borrowers executed the original Credit Agreement on April 5, 2021 and the Second Amended and Restated Credit Agreement on September 30, 2021 (together with amendments thereto, the "Credit Agreement").

The Defendants in this action, Jon Loevy and Michael Kanovitz, executed a Shareholder Guaranty for Justice Grown's obligations under the Credit Agreement to secure AFC's interests in the loan. Under the Shareholder Guaranty, Loevy and Kanovitz personally guaranteed certain losses and liabilities ("Guaranteed Obligations"). These Guaranteed Obligations included losses and liabilities arising from breaches of the JG Borrowers' representations and warranties in the Credit Agreement, any failure by any of the JG Borrowers to pay taxes and vendor charges, and misappropriation of AFC's collateral. (*Id*. ¶ 44.) They also included losses and liabilities arising from "fraud, malfeasance or intentional misrepresentation *by Guarantors*." (Shareholder Guaranty § 1(a) at 2.) Each guarantor's liability is "a primary and original obligation," not merely the creation of a surety relationship, and "immediate" once a triggering event occurs. (Compl. ¶ 45.)

By June of 2022, just over a year after entering the Credit Agreement, the JG Borrowers were repeatedly breaching the Credit Agreement, including by missing construction deadlines and failing to meet required financial covenants. (*Id*. ¶ 48; *see* Credit Agreement § 7.) AFC attempted to cooperate with the JG Borrowers to restructure the loan, ultimately entering into four amendments to the Credit Agreement and both the September 2023 and March 2024 Forbearance Agreements. When signing every single one of these amendments and forbearance agreements, Defendants represented and warranted to AFC that no other defaults existed.

But unbeknownst to AFC, Defendants were systematically diverting loan proceeds away from Plaintiffs' collateral to Justice Grown's businesses in other states in direct violation of the terms of the Credit Agreement, which clearly prohibited such "Restricted Payments." (Compl. ¶¶ 47-68.) Restricted Payments were at the time defined to include distributions to equity holders, payments to or on behalf of affiliates, payments (or repayments) on any subordinated debt, and

management fees or advisory fees paid to any affiliates. (Credit Agreement § 1.1 at 29.[2])  Loevy and Kanovitz intentionally concealed nearly $20 million in Restricted Payments from AFC, because AFC's knowledge of these breaches would have changed its willingness to restructure and forbear on the loan.

After discovering the depth of Defendants' misconduct, AFC commenced this action on April 10, 2025, seeking to enforce its remedies under the Shareholder Guaranty.  The Amended Complaint, filed on June 20, 2025, alleges in detail how Loevy and Kanovitz systematically breached their contractual obligations under the Credit Agreement and amendments thereto and defrauded AFC by, among other things: (1) diverting nearly $20 million in loan proceeds to non-borrower entities under their control, in violation of the terms of the Credit Agreement; (2) repeatedly making false certifications of compliance to AFC to obtain additional funding; and (3) concealing valuable affiliate assets that should have provided additional collateral to secure the loan.  Under the Shareholder Guaranty, Defendants are personally liable for AFC's losses and liabilities arising from such fraud, misappropriation of funds, and material misrepresentations, regardless of whether Justice Grown has defaulted under the Credit Agreement.  (*See* Shareholder Guaranty § 1(a) at 2 (listing as "Guaranteed Obligations" any losses arising from "fraud, malfeasance or intentional misrepresentation *by Guarantors*…"); § 5(a)  ("[T]he obligations of each Guarantor hereunder are independent of the obligations of the Borrowers…").)

Days after AFC filed this case, two Justice Grown subsidiaries, Hayden Gateway LLC and Bloc Dispensary LLC, sued AFC in the District of New Jersey to enjoin AFC from enforcing its rights under the Credit Agreement by collecting cash from a collateral operating account holding Justice Grown's debt payments.  *Hayden Gateway LLC and Bloc Dispensary LLC v. Advanced Flower Capital Inc. and AFC Agent LLC,* No. 3:25-CV-02789-ZNQ-JBD (the "New Jersey Action").  The plaintiffs in the New Jersey Action claimed that AFC was not entitled to collect the escrowed collateral funds because the JG Borrowers were purportedly not in default under the Credit Agreement.  After considering a limited set of alleged breaches involving the New Jersey and Pennsylvania cultivation facilities and failure to provide audited financials—which notably did *not* include any analysis regarding the breaches at issue in this case involving Restricted Payments, false compliance certifications, and an incomplete perfection certificate (*see* "PI Order," New Jersey Action, Dkt. 46)—the Court in the New Jersey Action entered a preliminary injunction based on a preliminary finding that the JG Borrowers were not in breach of the operative loan agreements and enjoined AFC from collecting the cash collateral.  AFC has appealed the PI Order (New Jersey Action, Dkt. 64) on numerous grounds, including that the court's ruling is premised on a finding that the parties made oral modifications to the Credit Agreement that, even if made (AFC denies they were), are plainly unenforceable under well-established New York law.

---

[2]   The Credit Agreement, through the various amendments, would later expand the definition of Restricted Payments to include, for example, "directly or indirectly mak[ing] any payment of any kind to Jon Loevy, Michael Kanovitz, their Affiliate … or any family member of any of the foregoing Persons or Affiliates…"  Amendment No. 1 § 2.3.

## II. The PI Order In The New Jersey Action Has No Relevance To This Action.

Defendants' contention that this case presents an improper collateral attack on the PI Order is wholly baseless. As a threshold matter, Defendants seem to forget that this case was filed *before* the New Jersey Action, which makes the suggestion that this case was filed as a collateral attack on the District of New Jersey's later-issued preliminary findings fundamentally illogical. Even setting this timing issue aside, the doctrine of collateral estoppel, or issue preclusion, only "bars a party from relitigating in a subsequent proceeding an issue clearly raised in a prior proceeding and decided against that party where the party to be precluded had a full and fair opportunity to contest the prior determination." *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996). Collateral estoppel only applies when "'(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.'" *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 234 (S.D.N.Y. 2018) (quoting *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001)). Defendants would need to prove *all* of these elements to support collateral estoppel; they can establish none.

First, the New Jersey Action and this case raise fundamentally different claims, concern different breaches under different agreements, and seek different relief. In the New Jersey Action, the court analyzed whether AFC was entitled to cash sweeps of its Agent-controlled collateral operating account based on alleged defaults by the JG Borrowers under the March 2024 Forbearance Agreement and whether AFC could move forward with foreclosure on a cultivation facility in Pennsylvania. In preliminarily deciding whether the JG Borrowers had defaulted on the loan, Judge Quraishi only considered an alleged oral agreement between AFC and the JG Borrowers concerning reopening a cultivation facility in Pennsylvania, whether the JG Borrowers were required to prepare audited financial statements for AFC, and whether AFC was entitled to collect cash collateral from the JG Borrowers based on these issues.

By contrast, this action seeks payment from Defendants Loevy and Kanovitz for the obligations they guaranteed under the Shareholder Guaranty, including losses and liabilities arising from their misappropriation of nearly $20 million in funds that Defendants fraudulently concealed from AFC since the inception of the loan. The PI Order did not discuss or make any findings regarding these impermissible Restricted Payments—or the other alleged breaches in the Amended Complaint—and thus cannot shield Defendants against AFC's claims here. Notably, the March 2024 Forbearance Agreement specifically carved out the issue of Restricted Payments in Section 2.3(c) from AFC's forbearance obligations.

Second, the PI Order, as a preliminary order, does not have preclusive effect because it is not a final judgment on the merits. *Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.*, 192 F. Supp. 2d 143, 154 (S.D.N.Y. 2002) (explaining preclusion does not apply because a preliminary injunction is not a final determination). The PI Order is currently on appeal to the Third Circuit, further undercutting any suggestion that it is final. With due respect to the New Jersey court, AFC believes it made clear errors of law in the expedited injunction proceedings that will result in the PI Order being reversed.

### III. The Court May Properly Exercise Personal Jurisdiction Over Defendants.

Defendants' argument that they are subject only to the venue provisions of the Credit Agreement, and not the jurisdiction-related provisions, is meritless. Defendants are subject to the personal jurisdiction of this Court based on the plain language of the Credit Agreement and Shareholder Guaranty. Section 13(c) of the Credit Agreement clearly provides that each party "irrevocably and unconditionally submits to the non-exclusive jurisdiction of the state and federal courts located in the state of New York…in any action or proceeding arise out of or relating to any loan documents." The Shareholder Guaranty expressly incorporates the choice-of-law and venue provisions of the Credit Agreement. *See* Shareholder Guaranty § 24(b) ("The provisions regarding choice of law and venue and jury trial waiver set forth in Section 13 of the Credit Agreement are applicable to each Guarantor fully as though such Guarantor were a party thereto, and such providers are hereby incorporated herein by reference, *mutatis mutandis*.").

Defendants concede that the parties to the Credit Agreement consented to personal jurisdiction in New York, but argue that the Shareholder Guaranty "addresses only venue, not jurisdiction." (Letter at 6.) But it is well established that a valid "forum selection clause amounts to consent to personal jurisdiction." *Ademco Inc. v. TWS Tech. Ltd.*, No. 23-CV-8383 (AS), 2024 WL 3567417, at *3 (S.D.N.Y. July 29, 2024) (quoting *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 342 (S.D.N.Y. 2020) (cleaned up)); *Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, No. 09-CV-3573 PGG, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010) ("Where an agreement contains a valid and enforceable forum selection clause, however, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process.") (citing *Koninklijke Philips Elecs. V. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005)). As all of the claims asserted by AFC fall within the forum selection clause, Defendants have consented to personal jurisdiction in this Court.

### IV. The Amended Complaint Pleads A Plausible Right to Relief On Each Of The Causes Of Action.

#### A. AFC's Contract Claims Are Sufficiently Alleged.

##### i. Defendants Breached the Shareholder Guaranty.

Despite their claims to the contrary (Letter at 6), Defendants' obligations under the Shareholder Guaranty are immediately due and payable. Under the Shareholder Guaranty, Defendants are personally liable for specific "Guaranteed Obligations," including, but not limited to, "losses, expenses, charges, costs or liability" arising from "fraud, malfeasance or intentional misrepresentations by Guarantors" or those they direct, "intentional misapplication, misappropriation or conversion" of loan proceeds, and "any material breach of any representation and warranty in the Credit Agreement or any other Loan Document." Shareholder Guaranty § 1(a) at 2. As Defendants have directly committed fraud and intentional misrepresentations—including knowing breaches of representations and warranties and submitting false certifications to AFC—

they are personally liable for these breaches and resultant losses. Because the Guaranteed Obligations are due and payable immediately, this action is timely. *See* Shareholder Guaranty §5(a) ("Each Guarantor hereby agrees that such guarantor's liability hereunder shall be **immediate and shall not be contingent upon the exercise or enforcement by any member of the Lender Group of whatever remedies they may have against the Borrowers or any other guarantor…**") (emphasis added).

Defendants misread Section 2 of the Shareholder Guaranty, which provides that each guarantor:

> **guaranties** to [AFC] as and for such Guarantor's own debt, until the final payment in full thereof, in cash, has been made, **the due payment of the Guaranteed Obligations, when and as the same shall become due and payable, whether** at maturity, pursuant to a mandatory prepayment requirement, **by acceleration, or otherwise**, and after the expiration of any applicable grace and notice period under the Credit Agreement or any of the other Loan Documents[.]

Shareholder Guaranty §2 (emphasis added). This provision, consistent with Section 5(a), plainly make Defendants' obligations to AFC for the Guaranteed Obligations, including the claims alleged in the Amended Complaint, payable at the time those breaches arose.

### ii. AFC Has Sustained Extensive Losses Triggering the Guaranty.

Contrary to Defendants' claims (Letter at 7), AFC has already incurred substantial losses from the Defendants' fraud, misrepresentation, and misappropriation. These losses include diminished collateral value resulting from Defendants' improper diversion of funds away from the Projects, missed interest payments, reduced cash interest payments under the fraudulently induced Amendments No. 3 and No. 4 to the Credit Agreement, reduced interest payments under the fraudulently-induced March 2024 Forbearance Agreement, advances made in reliance on false certifications, professional fees in managing the compromised loan, and expenses incurred in investigating Defendants' misconduct. (Compl. ¶ 120.) Even absent a line-by-line accounting of the waterfall of damages resulting from the diversion of funds, which is not required at this stage of litigation, each and every unauthorized Restricted Payment constituted a breach of contract that triggered extensive losses, including those listed above, which trigger an immediate obligation to AFC under the Shareholder Guaranty. (*See, e.g.*, Compl. ¶¶ 75-76, 120); *see also Mayweather Promotions, LLC v. PAC Ent. Worldwide LLC*, No. 21-CV-4378, 2022 WL 3997014, at *7 (S.D.N.Y. Sept. 1, 2022) ("To survive a motion to dismiss, a claimant 'need only allege that it was damaged; it is not required to specify the measure of damages…'" (quoting *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004))). AFC need not wait until the loan matures in May 2026 to collect.

### iii. There Have Been Material Breaches of the Representations and Warranties.

Defendants blatantly misrepresent the record in the New Jersey Action when they state that Judge Quraishi "considered and rejected" allegations that the Borrowers breached various representations or warranties in connection with the Restricted Payments. (*See* Letter at 7-8.) The PI Order excludes any mention of Restricted Payments, and as discussed *supra*, any preliminary findings in relation to the PI Order have no effect on this court's consideration of a dismissal motion.

### B. AFC Has Adequately Pled Tortious Interference.

Defendants incorrectly argue that they cannot be liable for tortious interference with the Credit Agreement because corporate officers cannot be held personally liable for inducing their corporation's breach of contract. This position ignores "'well-established [law] that corporate officers can be held liable for the infringing acts of their corporations if they personally participated in the acts constituting infringement.'" *Sadowski v. Ng*, No. 18 CIV. 10113 (VM), 2022 WL 799636, at *6 (S.D.N.Y. Mar. 15, 2022) (quoting *Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664, 2005 WL 612814, at *6 (S.D.N.Y. Mar. 14, 2005) (collecting cases)). The same is true if "'the acts of the defendant corporate officers which resulted in the tortious interference with contract either were beyond the scope of their employment or, if not, ***were motivated by their personal gain, as distinguished from gain for the corporation***,' they may be liable." *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-CV-6392 (JPO), 2017 WL 3600427, at *6 (S.D.N.Y. Aug. 18, 2017) (emphasis added) (quoting *Nahabedian v. Intercloud Sys., Inc.*, No. 15 Civ. 669, 2016 WL 155084, at *6 (S.D.N.Y. Jan. 12, 2016)).

Here, AFC has alleged that Defendants personally participated in the acts constituting the JG Borrowers' breach (*see, e.g.* Compl. ¶¶ 20, 96-97) and were motivated by personal gain (*see, e.g.* Compl. ¶¶ 77-78.) Defendants have also admitted to paying a personal debt from loan proceeds. (Compl. ¶ 5.) Thus, Defendants' assertion that their corporate roles insulate them from their wrongdoing is contrary to law.

### C. AFC's Fraud Claims Are Sufficiently Pled Under Rule 9(b).

AFC has sufficiently pled its fraud claims pursuant to Rule 9(b), which requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017). This Court has recognized that "although this standard 'demands specificity, ... it does not elevate the standard of certainty that a pleading must attain beyond the ordinary level of plausibility' required of civil complaints." *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 256–57 (S.D.N.Y. 2019). The Amended Complaint sufficiently pleads multiple instances of fraud, including detailed descriptions of when and how Defendant Loevy knowingly provided false representation and warranties in order to induce AFC to amend the loan terms (*see, e.g.*, Compl. ¶¶ 52, 56, 58). The Amended Complaint also contains detailed allegations regarding the

submission of fabricated disbursement requests (Compl. ¶¶ 90-91), a fraudulent perfection certificate (*id*. ¶¶ 92-100), false and misleading financial covenant certifications and financial statements (*id*. ¶¶ 101-106), and falsified certified draw requests (*id*. ¶¶ 107-111).

Defendants' argument that AFC was required to identify each Restricted Payment with specificity highlights its misunderstanding of AFC's fraud claims. (*See* Letter at 10.) AFC's fraud claim is based on Defendants repeatedly providing what they knew and intended to be false certifications stating that there had been no Events of Default, nor any continuing Events of Default, and further knowingly providing a false and misleading Perfection Certificate, all for the purpose of inducing AFC to continue to lend to Justice Grown and forego exercising its enforcement rights. (Compl. ¶¶ 130-142.) For the alleged false statements, AFC has specifically identified each instance the false certification was made, when and to whom those statements were made, and why they were fraudulent. (*See e.g.*, Compl. ¶¶ 48-64, 92-100.) At this stage, that is sufficient and AFC need not plead each underlying fact with specificity. *See Feasby v. Industri-Matematik Intern. Corp.*, No. 99-CIV-8761 (HB), 2000 WL 977673, at *6 (S.D.N.Y. 2000) ("Rule 9(b) does not require that plaintiffs plead with particularity every single fact upon which they base their beliefs, [instead] … plaintiffs must plead with particularity *some* facts *sufficient* to support those beliefs (emphasis in original) (citing *Novak v. Kasaks*, 216 F.3d 300, at *13 (2d Cir. 2000))). Accordingly, AFC has met its pleading burden under Rule 9(b).

Defendants' argument that the alleged fraudulent statements are legal conclusions, and so cannot support a fraud claim (Letter at 11-12), holds no water. AFC's fraud claims are based on Defendants' misrepresentations about underlying factual events: whether nearly $20 million was improperly transferred from borrower entities to non-borrower entities is a question of pure fact, not a legal opinion. The Amended Complaint plausibly alleges that Defendants knowingly and repeatedly concealed the fact of the Restricted Payments from AFC, and did so through multiple avenues.

Further, AFC has sufficiently alleged scienter by asserting Defendants personally directed and controlled all borrower entities through Hayden Manager LLC, enabling and orchestrating the fraudulent scheme. (Compl. ¶ 20). Loevy personally signed Credit Agreement amendments with false certifications and the Perfection Certificate omitting valuable assets. (Compl. ¶¶ 95-96). These allegations plausibly allege scienter.

Moreover, even if this direct evidence was insufficient, "[p]roof of scienter 'can be and customarily is presented through circumstantial evidence.'" *Maher v. Glob. Factors LLC*, No. 22-CV-6506 (LJL), 2024 WL 3356985, at *13 (S.D.N.Y. July 8, 2024) (quoting *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 495–96 (S.D.N.Y. 2005)). "A sufficient pleading of motive demonstrates the 'concrete benefits' that a defendant could realize by the false statement or omission." *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 352–53 (E.D.N.Y. 2008) (citing *Kalnit v. Eichler,* 264 F.3d 131, 139 (2d Cir. 2001)). Defendants' "concrete benefits" are manifest. They paid off unrelated debts, receive draws on the Loan to which they otherwise would not have been entitled, and induced AFC to repeatedly renegotiate the terms of the Loan by concealing these payments. *See generally,* Amended Complaint.

### D. AFC's Conversion Claim is Plausibly Alleged.

Finally, Plaintiffs have sufficiently pled their conversion claim because the loan proceeds are specifically identifiable and AFC has a possessory right in the funds. "A claim for conversion lies when funds given to a party for one purpose . . . is used for another purpose . . . ." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014), *aff'd sub nom. In re MF Glob. Holdings Ltd. Inv. Litig. (DeAngelis v. Corzine)*, 611 F. App'x 34 (2d Cir. 2015) (citing *Lawson v. Full Tilt Poker Ltd.,* 930 F. Supp. 2d 476, 487–88 (S.D.N.Y. 2013)).

Typically, when claiming that money was misappropriated or inappropriately transferred for a conversion claim, the complaint must allege "that the funds were either in escrow or similarly, that the transferred money is specifically identifiable, and the funds designated for a particular purpose are used for an unauthorized purpose." *Freedom Holding, Inc. v. Haart*, 172 N.Y.S.3d 873, 884 (N.Y. Sup. Ct. 2022) (cleaned up). "The funds of a specific, named bank account are sufficiently identifiable." *Republic of Haiti v. Duvalier*, 211 A.D.2s 379, 384 (N.Y. App. Div. 1995). Further, "[w]hen funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion." *Hecht v. Components Int'l, Inc.*, 867 N.Y.S.2d 889, 897 (N.Y. Sup. Ct. 2008).

The funds at issue here are specifically identifiable. Justice Grown maintains one bank account each for its Pennsylvania and New Jersey operations, and so AFC can specifically identify the misappropriated funds. The funds in these two bank accounts were intended to be used for the projects funded by the Credit Agreement, not to make Restricted Payments. Because AFC can identify the two specific, named bank accounts from which funds designated for a particular purpose were misappropriated and used for an unauthorized purpose, AFC has sufficiently alleged at this stage that these specifically identifiable funds were misappropriated.

*       *       *

For the reasons stated above, AFC respectfully requests that the Court deny Defendants' request to file a motion to dismiss.

Respectfully submitted,

*/s/  Kevin S. Reed*

Kevin S. Reed
Alex Zuckerman
295 Fifth Avenue
New York, NY 10016
kevinreed@quinnemanuel.com
alexzuckerman@quinnemanuel.com

Jason Sternberg
2601 South Bayshore Dr., Suite 1550
Miami, FL 33133
jasonsternberg@quinnemanuel.com

*Attorneys for Plaintiffs*
*Advanced Flower Capital, Inc.*
*and  AFC Agent LLC*