# <u>EXHIBIT 1</u>

*Execution Version*

## SHAREHOLDER GUARANTY

This **SHAREHOLDER GUARANTY** (this "Guaranty"), dated as of April 5, 2021, is executed and delivered by the Guarantors listed on the signature pages hereof and those additional Persons that hereafter becomes parties hereto by executing the form of Joinder attached hereto as Annex I (collectively, jointly, and severally, the "Guarantors" and each, individually, a "Guarantor"), in favor of **AFC MANAGEMENT, LLC,** a Delaware limited liability company, as agent for the Lender Group (in such capacity, together with its successors and assigns, if any, in such capacity, "Agent"), in light of the following:

**WHEREAS**, JG New Jersey LLC, Hayden Gateway LLC, Pier Cove LLC, SRG 272 Main Street LLC, SRG 1761 North Olden LLC, SRG 1474 Prospect LLC, and SRG HI Park LLC (each, a "Borrower" and collectively, the "Borrowers"), the other Loan Parties that are party thereto from time to time, JG HoldCo LLC ("Parent"), AFC Gamma, Inc. and AFC Investments, LLC (together with their respective successors and assigns in such capacity, the "Lenders"), and Agent are, contemporaneously herewith, entering into that certain Credit Agreement of even date herewith (as amended, restated, supplemented or otherwise modified from time to time in accordance with its terms, the "Credit Agreement");

**WHEREAS**, in order to induce Agent and the Lenders to enter into the Credit Agreement and the other Loan Documents and to induce the Lender Group to extend the loans and other financial accommodations to the Borrowers pursuant to the Loan Documents, and in consideration thereof, and in consideration of any loans or other financial accommodations heretofore or hereafter extended by the Lender Group to the Borrowers pursuant to the Loan Documents, each Guarantor has agreed to guarantee the Guaranteed Obligations (as defined below) pursuant to the terms and conditions set forth in this Guaranty; and

**WHEREAS**, each Guarantor is a direct or indirect shareholder of a Borrower and, in consideration of the direct and indirect financial and other support and benefits that the Borrowers have provided, and such direct and indirect financial and other support and benefits as the Borrowers may in the future provide, to the Guarantors, each of the Guarantors is willing to guarantee the Guaranteed Obligations (as defined below) pursuant to the terms and conditions set forth in this Guaranty.

**NOW, THEREFORE**, in consideration of the foregoing, each Guarantor hereby agrees as follows:

1.    **Definitions and Construction.**

(a)    Definitions.  Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Credit Agreement.  The following terms, as used in this Guaranty, shall have the following meanings:

"Agent" has the meaning set forth in the preamble to this Guaranty.

"Borrower" and "Borrowers" has the meaning set forth in the preamble to this Guaranty.

"Credit Agreement" has the meaning set forth in the recitals to this Guaranty.

"Disposition" means any sale, lease or other disposition of Collateral by Agent, together with any other exercise of secured creditor remedies by Agent in respect to the Collateral.

"<u>Guaranteed Obligations</u>" means any losses, expenses, charges, costs or liability to any member of the Lender Group arising from:

(a) (i) fraud, malfeasance or intentional misrepresentation by Guarantors (or either of them) or if Guarantors (or either of them) direct, or otherwise knowingly cause, any Loan Party or any other Person directly Controlled by such Guarantor to commit fraud or malfeasance or to make an intentional misrepresentation (with each Guarantor and each Person directed or knowingly caused by any Guarantor to take an action described herein, being referred to herein as a "<u>Designated Party</u>") in connection with the Loan Documents or any Loans, including any such conduct to the extent it causes any material breach of any provisions of the Loan Documents; (ii) the intentional misapplication, misappropriation or conversion by any Designated Party of any (x) income, revenue or other collections or other amounts derived from the operation of the Collateral Properties, in each case due to be paid or delivered to Agent under the Loan Documents, including, if applicable, in connection with a failure to deposit such amounts into any Reserve Account if so required pursuant to the Loan Documents, and (y) funds received by a Designated Party for payment of taxes, other governmental charges or charges for labor and materials that can create Liens on any portion of the Collateral Properties to the extent the same are not so applied; (iii) the commission of a criminal act by a Designated Party that materially impacts a Loan Party's ability to perform under the Loan (and specifically excluding any criminal acts relating to the growing, sale and/or distribution of marijuana); (iv) knowing or intentional destruction or physical waste of the Collateral Properties by a Designated Party, but only if such destruction or physical waste of such Collateral Property is not in connection with the construction, renovation, repair or maintenance of such Collateral Property; (v) any material breach of any representation and warranty in the Credit Agreement or any other Loan Document; (vi) the failure by a Loan Party to pay any Taxes or other governmental charges or charges for labor and materials (except those which are being contested in good faith by appropriate proceedings and for which adequate reserves are being maintained as required under the Credit Agreement); (vii) any knowing or intentional actions by a Designated Party that results in an Environmental Action or any material breach of any representation, warranty, covenant or indemnification provision in any Loan Document concerning Environmental Laws, Hazardous Materials, or any Remedial Actions and any indemnification of Lender with respect thereto in the Loan Documents; (viii) any amendment of any organizational documents of any Loan Party other than as expressly permitted under the terms of the Credit Agreement; (ix) the removal, disposal, transfer, sale, assignment or other disposition of any Collateral Property intentionally in contravention of the Credit Agreement; or (x) the transfer of, or the grant of a mortgage or Lien on, any Collateral Property in violation of the Credit Agreement by or through the efforts of any Designated Party; or

(b) (i) any Loan Party filing a voluntary petition or instituting any other proceeding, in each case, seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, reorganization, debt arrangement, dissolution, winding up, or composition or readjustment of debts of it or its debts, under the Bankruptcy Code to the extent any Guarantor, as a member of the board of directors or board of managers of any Loan Party (or any parent entity thereof) or shareholder or member of any Loan Party (or any parent entity thereof), as applicable, voted for, consented to, or otherwise directly or indirectly supported any such filing or proceeding; (ii) the filing of an involuntary petition or other proceeding against any Loan Party seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, reorganization, debt arrangement, dissolution, winding up, or composition or readjustment of debts of it or its debts, under the Bankruptcy Code (each an "<u>Involuntary Proceeding</u>"), in which any Designated Party consents to, participates in, or colludes with such petitioner, or solicits or causes to be solicited petitioning creditors for any such petition or proceeding; (iii) any Designated Party filing an answer consenting to or otherwise colluding in any Involuntary Proceeding against any Loan Party; (iv) any Designated Party consenting to or colluding in or joining in or participating in an application for, or seeking the entry of an order for relief or the appointment of, a trustee, receiver, custodian, liquidator, assignee, sequestrator or the like with respect to any Loan Party or any Collateral Property or Collateral (or any portion of any of the foregoing) under any insolvency law;

(v) any Loan Party making an assignment for the benefit of creditors, or admitting in writing or in any legal proceeding, its insolvency or inability to pay its debts as they become due; (vi) any Designated Party seeking (or consenting to any) substantive consolidation of any Loan Party (in connection with any Insolvency Proceeding) with any entity that is not a Loan Party; (vii) any Designated Party files a petition contesting or opposing any motion made by Agent or any Lender to obtain relief from the automatic stay or seeking to reinstate the automatic stay in the event of any Insolvency Proceeding of any Loan Party; or (viii) any Designated Party (A) takes any action in bad faith with the intent to directly or indirectly delay, oppose, avoid, contest, impede, obstruct, hinder, enjoin or otherwise interfere in any manner with Agent's or any Lender's exercise or enforcement of its rights and remedies against any Collateral, under the Loan Documents or under applicable law, (B) alleges, asserts or otherwise pursues any claim, defense, affirmative defense, counterclaim, cause of action, setoff or other right that it may have against Agent or any Lender relating to such Person's exercise or enforcement of its rights and remedies against any Collateral, under the Loan Documents or applicable law or (C) causes, conspires, colludes with, acts in concert with or solicits any other Person in doing or attempting to do any of the acts described in subclauses (A) or (B) of this clause (b)(viii).

(c) The Guaranteed Obligations do not include any other obligations or liability of any Designated Party under the Loan Documents.

"Guarantor" and "Guarantors" have the meanings set forth in the preamble to this Guaranty.

"Guaranty" has the meaning set forth in the preamble to this Guaranty.

"Permitted Transferee" has the meaning set forth in Section 28 of this Guaranty.

"Record" means information that is inscribed on a tangible medium or which is stored in an electronic or other medium and is retrievable in perceivable form.

"Voidable Transfer" has the meaning set forth in Section 13 of this Guaranty.

(b)    Construction.  Unless the context of this Guaranty clearly requires otherwise, references to the plural include the singular, references to the singular include the plural, the terms "includes" and "including" are not limiting, and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or."  The words "hereof," "herein," "hereby," "hereunder," and other similar terms in this Guaranty refer to this Guaranty as a whole and not to any particular provision of this Guaranty.  Section, subsection, clause, schedule, and exhibit references herein are to this Guaranty unless otherwise specified.  Any reference in this Guaranty to any agreement, instrument, or document shall include all alterations, amendments, changes, extensions, modifications, renewals, replacements, substitutions, joinders, and supplements, thereto and thereof, as applicable (subject to any restrictions on such alterations, amendments, changes, extensions, modifications, renewals, replacements, substitutions, joinders, and supplements set forth herein).  The words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts, and contract rights.  This Guaranty has been reviewed by all parties and shall be construed and interpreted according to the ordinary meaning of the words used so as to accomplish fairly the purposes and intentions of each Guarantor and Agent.  Any reference herein to the satisfaction, repayment, or payment in full of the Guaranteed Obligations shall mean the repayment in full in cash or immediately available funds of all of the Guaranteed Obligations other than contingent indemnification obligations which are not yet due and payable. Any reference herein to any Person shall be construed to include such Person's successors and assigns.  Any requirement of a writing

3

contained herein shall be satisfied by the transmission of a Record. The captions and headings are for convenience of reference only and shall not affect the construction of this Guaranty.

2.    **Guaranteed Obligations**.  Each Guarantor hereby irrevocably and unconditionally guaranties to Agent, for the benefit of the Lender Group, as and for such Guarantor's own debt, until the final payment in full thereof, in cash, has been made, the due payment of the Guaranteed Obligations, when and as the same shall become due and payable, whether at maturity, pursuant to a mandatory prepayment requirement, by acceleration, or otherwise, and after the expiration of any applicable grace and notice period under the Credit Agreement or any of the other Loan Documents; it being the intent of each Guarantor that the guaranty set forth herein shall be a guaranty of payment and not a guaranty of collection. Each of the Guarantors hereby agrees that this Guaranty is an absolute, irrevocable and unconditional guaranty of payment and is not a guaranty of collection.

3.    **Continuing Guaranty; Discharge Only Upon Payment in Full**.  Each of the Guarantors' obligations hereunder shall constitute a continuing and irrevocable guaranty of all Guaranteed Obligations now or hereafter existing and shall remain in full force and effect until all Guaranteed Obligations shall have been paid in full in cash, at which time, subject to all the foregoing conditions, the guaranties made hereunder shall automatically terminate. This Guaranty includes Guaranteed Obligations arising under successive transactions continuing, compromising, extending, increasing, modifying, releasing, or renewing the Guaranteed Obligations, changing the interest rate, payment terms, or other terms and conditions thereof, or creating new or additional Guaranteed Obligations after prior Guaranteed Obligations have been satisfied in whole or in part. To the maximum extent permitted by law, each Guarantor hereby waives any right to revoke this Guaranty as to future Guaranteed Obligations. If such a revocation is effective notwithstanding the foregoing waiver, each Guarantor acknowledges and agrees that (a) no such revocation shall be effective until written notice thereof has been provided to Agent, (b) no such revocation shall apply to any Guaranteed Obligations in existence on the date of receipt by Agent of such written notice (including any subsequent continuation, extension, or renewal thereof, or change in the interest rate, payment terms, or other terms and conditions thereof), (c) no such revocation shall apply to any Guaranteed Obligations made or created after such date to the extent made or created pursuant to a legally binding commitment of any member of the Lender Group in existence on the date of such revocation, (d) no payment by any Guarantor, any Borrower, or from any other source, prior to the date of Agent's receipt of written notice of such revocation shall reduce the maximum obligation of such Guarantor hereunder, and (e) any payment by any Borrower or from any source other than such Guarantor subsequent to the date of such revocation shall first be applied to that portion of the Guaranteed Obligations as to which the revocation is effective and which are not, therefore, guaranteed hereunder, and to the extent so applied shall not reduce the maximum obligation of such Guarantor hereunder.

4.    **Performance Under this Guaranty**.  In the event that the Borrowers fail to make any payment of any Guaranteed Obligations, on or prior to the due date thereof, the Guarantors immediately shall cause, as applicable, such payment in respect of the Guaranteed Obligations to be made.

5.    **Primary Obligations**.

(a)  This Guaranty is a primary and original obligation of each Guarantor, is not merely the creation of a surety relationship, and is an absolute, unconditional, and continuing guaranty of payment and performance of the Guaranteed Obligations which shall remain in full force and effect without respect to future changes in conditions. Each Guarantor hereby agrees that it is directly, jointly and severally with any other guarantor of the Guaranteed Obligations, liable to Agent, for the benefit of the Lender Group, that the obligations of each Guarantor hereunder are independent of the obligations of the Borrowers or any other guarantor, and that a separate action may be brought against each Guarantor, whether such action is

4

brought against the Borrowers or any other guarantor or whether the Borrowers or any other guarantor are joined in such action. Each Guarantor hereby agrees that such Guarantor's liability hereunder shall be immediate and shall not be contingent upon the exercise or enforcement by any member of the Lender Group of whatever remedies they may have against the Borrowers or any other guarantor, or the enforcement of any lien or realization upon any security by any member of the Lender Group. Each Guarantor hereby agrees that any release which may be given by Agent to the Borrowers or any other guarantor, or with respect to any property or asset subject to a Lien, shall not release such Guarantor. Each Guarantor consents and agrees that no member of the Lender Group shall be under any obligation to marshal any property or assets of the Borrowers or any other guarantor in favor of such Guarantor, or against or in payment of any or all of the Guaranteed Obligations.

(b) Without limiting the generality of the foregoing clause (a), the obligations of each of the Guarantors hereunder shall not be released, discharged or otherwise affected by:

(i)   any change in the corporate, partnership, limited liability company or other existence, structure or ownership of any Borrower or any other guarantor of any of the Guaranteed Obligations, or any insolvency, bankruptcy, reorganization or other similar proceeding affecting any Borrower or any other guarantor of the Guaranteed Obligations, or any of their respective assets or any resulting release or discharge of any obligation of any Borrower or any other guarantor of any of the Guaranteed Obligations;

(ii)   the existence of any claim, setoff or other rights which the Guarantors may have at any time against any Borrower, any other guarantor of any of the Guaranteed Obligations, any member of the Lender Group or any other Person, whether in connection herewith or in connection with any unrelated transactions, provided that nothing herein shall prevent the assertion of any such claim by separate suit or compulsory counterclaim;

(iii)   the enforceability or validity of the Guaranteed Obligations or any part thereof under Applicable Law, or the genuineness, enforceability or validity of any agreement relating thereto or with respect to any collateral securing the Guaranteed Obligations or any part thereof, or any other invalidity or unenforceability relating to or against any Borrower or any other guarantor of any of the Guaranteed Obligations (with the exception of any Cannabis Law (as defined in the Credit Agreement)), for any reason related to the Credit Agreement or any other Loan Document, or any provision of Applicable Law purporting to prohibit the payment by any Borrower or any other guarantor of the Guaranteed Obligations, of any of the Guaranteed Obligations or otherwise affecting any term of any of the Guaranteed Obligations;

(iv)   the failure of Agent to take any steps to perfect and maintain any security interest in, or to preserve any rights to, any security or collateral for the Guaranteed Obligations, if any;

(v)   the election by, or on behalf of, any one or more members of the Lender Group, in any proceeding instituted under Chapter 11 of Title 11 of the United States Code (11 U.S.C. 101 et seq.) (or any successor statute, the "Bankruptcy Code"), of the application of Section 1111(b)(2) of the Bankruptcy Code or any other applicable federal, state, provincial, municipal, local or foreign law relating to such matters;

(vi)   any borrowing or grant of a security interest by any Borrower, as debtor-in-possession, under Section 364 of the Bankruptcy Code or any other applicable federal, state, provincial, municipal, local or foreign law relating to such matters;

5

(vii)     the disallowance, under Section 502 of the Bankruptcy Code or any other applicable federal, state, provincial, municipal, local or foreign law relating to such matters, of all or any portion of the claims of the Lender Group for repayment of all or any part of the Guaranteed Obligations;

(viii)     the failure of any other guarantor to sign or become party to this Guaranty or any amendment, change, or reaffirmation hereof; or

(ix)     any other act or omission to act or delay of any kind by any Borrower, any other guarantor of the Guaranteed Obligations, any member of the Lender Group or any other Person or any other circumstance whatsoever which might, but for the provisions of this <u>Section 5(b)</u>, constitute a legal or equitable discharge of any Guarantor's obligations hereunder or otherwise reduce, release, prejudice or extinguish such Guarantor's liability under this Guaranty.

6.     **Waivers**.

(a)     To the fullest extent permitted by Applicable Law, each Guarantor hereby waives: (i) notice of acceptance hereof; (ii) notice of any loans or other financial accommodations made or extended under the Credit Agreement, or the creation or existence of any Guaranteed Obligations; (iii) notice of the amount of the Guaranteed Obligations, subject, however, to such Guarantor's right to make inquiry of Agent to ascertain the amount of the Guaranteed Obligations at any reasonable time; (iv) notice of any adverse change in the financial condition of any Borrower or of any other fact that might increase such Guarantor's risk hereunder; (v) notice of presentment for payment, intent to accelerate, acceleration, demand, protest, and notice thereof as to any instrument among the Loan Documents; (vi) notice of any Default or Event of Default under any of the Loan Documents; and (vii) all other notices (except if such notice is specifically required to be given to such Guarantor under this Guaranty or any other Loan Documents to which such Guarantor is a party) and demands to which such Guarantor might otherwise be entitled.

(b)     To the fullest extent permitted by Applicable Law, each Guarantor hereby waives the right by statute or otherwise to require any member of the Lender Group to institute suit against any Borrower or any other guarantor or to exhaust any rights and remedies which any member of the Lender Group has or may have against any Borrower or any other guarantor.  In this regard, each Guarantor agrees that it is bound to the payment of each and all Guaranteed Obligations, whether now existing or hereafter arising, as fully as if the Guaranteed Obligations were directly owing to Agent or the Lender Group, as applicable, by such Guarantor.  To the extent permitted by Applicable Law, each Guarantor further waives any defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations shall have been fully and finally performed and indefeasibly paid in full in cash, to the extent of any such payment) of any Borrower or by reason of the cessation from any cause whatsoever of the liability of any Borrower in respect thereof.

(i)     To the fullest extent permitted by Applicable Law, each Guarantor hereby waives:  (A) any right to assert against any member of the Lender Group any defense (legal or equitable), set-off, counterclaim, or claim which each Guarantor may now or at any time hereafter have against any Borrower or any other party liable to any member of the Lender Group; (B) any defense, set-off, counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Guaranteed Obligations or any security therefor; (C) any right or defense arising by reason of any claim or defense based upon an election of remedies by any member of the Lender Group, including any defense based upon an impairment or elimination of such Guarantor's rights of subrogation, reimbursement, contribution, or indemnity of such Guarantor against any Borrower or other guarantors or sureties; (D) the benefit of any statute of limitations affecting such Guarantor's liability hereunder or the enforcement thereof, and any act which shall defer or delay the

6

operation of any statute of limitations applicable to the Guaranteed Obligations shall similarly operate to defer or delay the operation of such statute of limitations applicable to such Guarantor's liability hereunder and (E) any election by the Lender Group under the Bankruptcy Code to limit the amount of, or any collateral securing, its claim against the Guarantors.

(ii)      No Guarantor will exercise any rights that it may now or hereafter acquire against any Guarantor or any other guarantor that arise from the existence, payment, performance or enforcement of such Guarantor's obligations under this Guaranty, including any right of subrogation, reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of Agent or any other member of the Lender Group against any Guarantor or any other guarantor or any Collateral, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, including the right to take or receive from any Guarantor or any other guarantor, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security solely on account of such claim, remedy or right, unless and until all of the Guaranteed Obligations and all other amounts payable under this Guaranty shall have been paid in full in cash and all of the Commitments have been terminated.  If any amount shall be paid to any Guarantor in violation of the immediately preceding sentence, such amount shall be held in trust for the benefit of Agent, for the benefit of the Lender Group, and shall forthwith be paid to Agent to be credited and applied to the Guaranteed Obligations and all other amounts payable under this Guaranty, whether matured or unmatured, in accordance with the terms of the Credit Agreement, or to be held as Collateral for any Guaranteed Obligations or other amounts payable under this Guaranty thereafter arising.  Notwithstanding anything to the contrary contained in this Guaranty, no Guarantor may exercise any rights of subrogation, contribution, indemnity, reimbursement or other similar rights against, and may not proceed or seek recourse against or with respect to any property or asset of, any other Guarantor (the "Foreclosed Guarantor"), including after payment in full of the Obligations, if all or any portion of the Obligations have been satisfied in connection with an exercise of remedies in respect of the Equity Interests of such Foreclosed Guarantor whether pursuant to this Guaranty or otherwise.

(c)      If any of the Guaranteed Obligations or the obligations of any Guarantor under this Guaranty at any time are secured by a mortgage or deed of trust upon real property, any member of the Lender Group may elect, in its sole discretion, upon a default with respect to the Guaranteed Obligations or the obligations of any Guarantor under this Guaranty, to foreclose such mortgage or deed of trust judicially or nonjudicially in any manner permitted by law, before or after enforcing this Guaranty, without diminishing or affecting the liability of such Guarantor hereunder.  Each Guarantor understands that (i) by virtue of the operation of antideficiency law applicable to nonjudicial foreclosures, an election by any member of the Lender Group to nonjudicially foreclose on such a mortgage or deed of trust probably would have the effect of impairing or destroying rights of subrogation, reimbursement, contribution, or indemnity of such Guarantor against any Borrower or other guarantors or sureties, and (ii) absent the waiver given by such Guarantor herein, such an election would estop any member of the Lender Group from enforcing this Guaranty against such Guarantor.  Understanding the foregoing, and understanding that such Guarantor is hereby relinquishing a defense to the enforceability of this Guaranty, each Guarantor hereby waives any right to assert against any member of the Lender Group any defense to the enforcement of this Guaranty, whether denominated "estoppel" or otherwise, based on or arising from an election by any member of the Lender Group to nonjudicially foreclose on any such mortgage or deed of trust or as a result of any other exercise of remedies, whether under a mortgage or deed of trust or under any personal property security agreement.  Each Guarantor understands that the effect of the foregoing waiver may be that such Guarantor may have liability hereunder for amounts with respect to which such Guarantor may be left without rights of subrogation, reimbursement, contribution, or indemnity against any Borrower or other guarantors or sureties.

7

(d)      Each Guarantor waives any defense arising by reason of or deriving from (i) any claim or defense based upon an election of remedies by the Lender Group; or (ii) any election by the Lender Group under the Bankruptcy Code, to limit the amount of, or any collateral securing, its claim against the Guarantors.

7.      **Releases**.  Each Guarantor consents and agrees that, without notice to or by such Guarantor and without affecting or impairing the obligations of such Guarantor hereunder, any member of the Lender Group may, by action or inaction, compromise or settle, shorten or extend the Maturity Date or any other period of duration or the time for the payment of the Obligations, or discharge the performance of the Obligations, or may refuse to enforce the Obligations, or otherwise elect not to enforce the Obligations, or may, by action or inaction, release all or any one or more parties to, any one or more of the terms and provisions of the Credit Agreement or any of the other Loan Documents, or may grant other indulgences to any Borrower or any other guarantor in respect thereof, or may amend or modify in any manner and at any time (or from time to time) any one or more of the Obligations, the Credit Agreement, or any other Loan Document (including any increase or decrease in the principal amount of any Obligations or the interest, fees or other amounts that may accrue from time to time in respect thereof, provided, however, that each Guarantor shall have the right to receive notice of any material amendment or modification to the Obligations, the Credit Agreement, or any other Loan Document to the extent such amendment and modification may affect such Guarantors rights or obligations under this Guaranty), or may, by action or inaction, release or substitute any Borrower or any guarantor, if any, of the Guaranteed Obligations, or may enforce, exchange, release, or waive, by action or inaction, any security for the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations, or any portion thereof.

8.      **Subordination of Other Indebtedness**.  Each Guarantor agrees that any and all claims of such Guarantor against any Borrower or any other Guarantor hereunder (each an "Obligor") with respect to any "Guarantor Indebtedness" (as hereinafter defined), any endorser, obligor or any other guarantor of all or any part of the Guaranteed Obligations, or against any of such Guarantor's properties, shall be subordinate and subject in right of payment to the prior payment, in full and in cash, of all Guaranteed Obligations; provided that, as long as no Event of Default has occurred and is continuing, such Guarantor may receive payments of principal and interest from any Obligor with respect to Guarantor Indebtedness. Notwithstanding any right of any Guarantor to ask, demand, sue for, take or receive any payment from any Obligor, all rights, liens and security interests of such Guarantor, whether now or hereafter arising and howsoever existing, in any assets of any other Obligor shall be and are subordinated to the rights of the Lender Group in those assets. No Guarantor shall have any right to possession of any such asset or to foreclose upon any such asset, whether by judicial action or otherwise, unless and until all of the Guaranteed Obligations shall have been fully paid and satisfied (in cash) and all financing arrangements pursuant to any Loan Document have been terminated.  If all or any part of the assets of any Obligor, or the proceeds thereof, are subject to any distribution, division or application to the creditors of such Obligor, whether partial or complete, voluntary or involuntary, and whether by reason of liquidation, bankruptcy, arrangement, receivership, assignment for the benefit of creditors or any other action or proceeding, or if the business of any such Obligor is dissolved or if substantially all of the assets of any such Obligor are sold, then, and in any such event (such events being herein referred to as an "Insolvency Event"), any payment or distribution of any kind or character, either in cash, securities or other property, which shall be payable or deliverable upon or with respect to any indebtedness of any Obligor to any Guarantor ("Guarantor Indebtedness") shall be paid or delivered directly to Agent for application on any of the Guaranteed Obligations, due or to become due, until such Guaranteed Obligations shall have first been fully paid and satisfied (in cash).  Should any payment, distribution, security or instrument or proceeds thereof be received by the applicable Guarantor upon or with respect to the Guarantor Indebtedness after any Insolvency Event and prior to the satisfaction of all of the Guaranteed Obligations and the termination of all financing arrangements pursuant to any Loan Document among any Borrower and the Lender Group,

such Guarantor shall receive and hold the same in trust, as trustee, for the benefit of the Lender Group and shall forthwith deliver the same to Agent, for the benefit of the Lender Group, in precisely the form received (except for the endorsement or assignment of the Guarantor where necessary), for application to any of the Guaranteed Obligations, due or not due, and, until so delivered, the same shall be held in trust by the Guarantor as the property of the Lender Group.  If any such Guarantor fails to make any such endorsement or assignment to Agent, Agent or any of its officers or employees is irrevocably authorized to make the same.  Each Guarantor agrees that until the Guaranteed Obligations have been paid in full (in cash) and satisfied and all financing arrangements pursuant to any Loan Document among any Borrower and the Lender Group have been terminated, no Guarantor will assign or transfer to any Person (other than Agent) any claim any such Guarantor has or may have against any Obligor.

9.    **Contribution with Respect to Guaranteed Obligations**.

(a)  To the extent that any Guarantor shall make a payment under this Guaranty (a "Guarantor Payment") which, taking into account all other Guarantor Payments then previously or concurrently made by any other Guarantor, exceeds the amount which otherwise would have been paid by or attributable to such Guarantor if each Guarantor had paid the aggregate Guaranteed Obligations satisfied by such Guarantor Payment in the same proportion as such Guarantor's "Allocable Amount" (as defined below) (as determined immediately prior to such Guarantor Payment) bore to the aggregate Allocable Amounts of each of the Guarantors as determined immediately prior to the making of such Guarantor Payment, then, following indefeasible payment in full in cash of the Guarantor Payment and the Guaranteed Obligations, and the Credit Agreement has terminated, such Guarantor shall be entitled to receive contribution and indemnification payments from, and be reimbursed by, each other Guarantor for the amount of such excess, pro rata based upon their respective Allocable Amounts in effect immediately prior to such Guarantor Payment.

(b)  As of any date of determination, the "Allocable Amount" of any Guarantor shall be equal to the excess of the fair saleable value of the property of such Guarantor over the total liabilities of such Guarantor (including the maximum amount reasonably expected to become due in respect of contingent liabilities, calculated, without duplication, assuming each other Guarantor that is also liable for such contingent liability pays such Guarantor's ratable share thereof), giving effect to all payments made by other Guarantors as of such date in a manner to maximize the amount of such contributions.

(c)  This Section 9 is intended only to define the relative rights of the Guarantors, and nothing set forth in this Section 9 is intended to or shall impair the obligations of the Guarantors, jointly and severally, to pay any amounts as and when the same shall become due and payable in accordance with the terms of this Guaranty.

(d)  The parties hereto acknowledge that the rights of contribution and indemnification hereunder shall constitute assets of the Guarantor or Guarantors to which such contribution and indemnification is owing.

(e)  The rights of the indemnified Guarantors against other Guarantors under this Section 9 shall be exercisable upon the full and indefeasible payment of the Guaranteed Obligations in cash and the termination of the Credit Agreement.

10.    **Limitation of Guaranty**.  Notwithstanding any other provision of this Guaranty, the amount guaranteed by each Guarantor hereunder shall be limited to the extent, if any, required so that such Guarantor's obligations hereunder shall not be subject to avoidance under Section 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law.  In determining the limitations, if any, on the amount of any Guarantor's

OMM_US:79383011.10

obligations hereunder pursuant to the preceding sentence, it is the intention of the parties hereto that any rights of subrogation, indemnification or contribution which such Guarantor may have under this Guaranty, any other agreement or Applicable Law shall be taken into account.

11.    **Stay of Acceleration**.  If acceleration of the time for payment of any amount payable by the Borrowers under the Credit Agreement or any other Loan Document is stayed upon the insolvency, bankruptcy or reorganization of any Borrower or any of the Loan Parties, all such amounts otherwise subject to acceleration under the terms of the Credit Agreement or any other Loan Document (to the extent – and only to the extent - the same constitute Guaranteed Obligations) shall nonetheless be payable by each of the Guarantors hereunder forthwith on demand by Agent.

12.    **No Election**.  The Lender Group shall have the right to seek recourse against each Guarantor to the fullest extent provided for herein and no election by any member of the Lender Group to proceed in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of the Lender Group's right to proceed in any other form of action or proceeding or against other parties unless Agent, on behalf of the Lender Group, has expressly waived such right in writing. Specifically, but without limiting the generality of the foregoing, no action or proceeding by the Lender Group under any document or instrument evidencing the Guaranteed Obligations shall serve to diminish the liability of any Guarantor under this Guaranty except to the extent that the Lender Group finally and unconditionally shall have realized indefeasible payment in full of the Guaranteed Obligations by such action or proceeding.

13.    **Revival and Reinstatement**.  If the incurrence or payment of the Guaranteed Obligations or the obligations of such Guarantor under this Guaranty by such Guarantor or the transfer by any Guarantor to Agent of any property of such Guarantor should for any reason subsequently be declared to be void or voidable under any state or federal law relating to creditors' rights, including provisions of the Bankruptcy Code relating to fraudulent conveyances, preferences, or other voidable or recoverable payments of money or transfers of property (including pursuant to any settlement entered into by a member of the Lender Group in its discretion) (collectively, a "Voidable Transfer"), and if the Lender Group is required to repay or restore, in whole or in part, any such Voidable Transfer, or elects to do so upon the reasonable advice of its counsel, then, as to any such Voidable Transfer, or the amount thereof that the Lender Group is required or elects to repay or restore, and as to all reasonable costs and expenses, and reasonable and documented out-of-pocket attorneys' fees of the Lender Group related thereto, the liability of the Guarantors automatically shall be revived, reinstated, and restored and shall exist as though such Voidable Transfer had never been made.

14.    **Financial Condition**.  Each Guarantor represents and warrants to the Lender Group that it is currently informed of the financial condition of each Borrower, the other Guarantors and any and all endorsers and/or other guarantors of all or any part of the Guaranteed Obligations, and of all other circumstances which a diligent inquiry would reveal and which bear upon the risk of nonpayment of the Guaranteed Obligations.  Each Guarantor further represents and warrants to the Lender Group that it has read and understands the terms and conditions of the Credit Agreement and each other Loan Document. Each Guarantor hereby covenants that it will continue to keep himself or herself, as applicable, informed of each Borrower's financial condition, the financial condition of other guarantors, if any, and of all other circumstances which bear upon the risk of nonpayment or nonperformance of the Guaranteed Obligations. Each Guarantor hereby agrees that none of the members of the Lender Group shall have any duty to advise such Guarantor of information known to any of them regarding such condition or any such circumstances. In the event any member of the Lender Group, in its sole discretion, undertakes at any time or from time to time to provide any such information to a Guarantor, any other Lender or Agent shall be under no obligation (a) to undertake any investigation not a part of its regular business routine, (b) to disclose any information

10

which such Lender or Agent, pursuant to accepted or reasonable commercial finance or banking practices, wishes to maintain confidential or (c) to update such information or make any other or future disclosures of such information or any other information to such Guarantor.

15.    **Payments; Application**.  All payments to be made hereunder by any Guarantor shall be made in Dollars, in immediately available funds, and without deduction (except as otherwise required by Applicable Law) or offset and shall be applied to the Guaranteed Obligations in accordance with the terms of the Credit Agreement.

16.    **Taxes; Fees and Costs**.

(a) Taxes.  Section 16.11 of the Credit Agreement shall be applicable, *mutatis mutandis*, to all payments required to be made by any Guarantor under this Guaranty.

(b) Fees and Costs.  Each Guarantor agrees to pay, on demand, all reasonable and documented out-of-pocket attorneys' fees and all other reasonable costs and expenses which may be incurred by Agent or the Lender Group in connection with the enforcement of this Guaranty or in any way arising out of, or consequential to, the protection, assertion, or enforcement of the Guaranteed Obligations (or any security therefor) against Guarantors (or either of them), irrespective of whether suit is brought.

17.    **Setoff**.  At any time after all or any part of the Guaranteed Obligations have become due and payable (by acceleration or otherwise), the Lender Group may, with the express written consent of the Required Lenders and without notice to the Guarantors, and regardless of the acceptance of any security or collateral for the payment hereof, set off and apply toward the payment of all or any part of the Guaranteed Obligations any and all deposits (general or special, time or demand, provisional or final and in whatever currency denominated at any time held) and other obligations at any time owing by any member of the Lender Group or any of their Affiliates to or for the credit or the account of any Guarantor against any of and all the Guaranteed Obligations, irrespective of whether or not such member of the Lender Group shall have made any demand under this Guaranty and although such obligations may be unmatured.  The rights of each member of the Lender Group under this Section 17 are in addition to other rights and remedies (including other rights of setoff) which such member of the Lender Group may have.

18.    **Notices**.  All notices and other communications hereunder to Agent shall be in writing and shall be mailed, sent, or delivered in accordance with Section 12 of the Credit Agreement.  All notices and other communications hereunder to any Guarantor shall be in writing and shall be mailed, sent, or delivered in care of the Borrower Representative in accordance with Section 12 of the Credit Agreement.

19.    **No Waiver; Cumulative Remedies**.  No remedy under this Guaranty, under the Credit Agreement or any other Loan Document, is intended to be exclusive of any other remedy, but each and every remedy shall be cumulative and in addition to any and every other remedy given under this Guaranty, under the Credit Agreement, or any other Loan Document, and those provided by law.  No delay or omission by the Lender Group or Agent on behalf thereof, to exercise any right under this Guaranty shall impair any such right nor be construed to be a waiver thereof.  No failure on the part of any member of the Lender Group or Agent on behalf thereof, to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver thereof; nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise thereof or the exercise of any other right.

20.    **Severability of Provisions**.  Each provision of this Guaranty shall be severable from every other provision of this Guaranty for the purpose of determining the legal enforceability of any specific provision.

21. **Entire Agreement; Amendments**. This Guaranty constitutes the entire agreement between each Guarantor and the Lender Group pertaining to the subject matter contained herein. This Guaranty may not be altered, amended, or modified, nor may any provision hereof be waived or noncompliance therewith consented to, except by means of a writing executed by each Guarantor and Agent, on behalf of the Lender Group. Any such alteration, amendment, modification, waiver, or consent shall be effective only to the extent specified therein and for the specific purpose for which given. No course of dealing and no delay or waiver of any right or default under this Guaranty shall be deemed a waiver of any other, similar or dissimilar, right or default or otherwise prejudice the rights and remedies hereunder.

22. **Successors and Assigns**. This Guaranty shall be binding upon each Guarantor and such Guarantor's successors and assigns and shall inure to the benefit of the successors and assigns of each Lender; provided, however, no Guarantor shall assign this Guaranty or delegate any of such Guarantor's duties hereunder without Agent's prior written consent and any unconsented to assignment shall be absolutely null and void. In the event of any assignment, participation, or other transfer of rights by the Lender Group, the rights and benefits herein conferred upon the Lender Group shall automatically extend to and be vested in such assignee or other transferee.

23. **No Third Party Beneficiary**. This Guaranty is solely for the benefit of each member of the Lender Group and each of their successors and assigns and may not be relied on by any other Person.

24. **Service of Process; Choice of Law and Venue; Jury Trial Waiver**.

(a) Each party to this Guaranty irrevocably consents to service of process in the manner provided for notices in Section 18 of this Guaranty, and each of the Guarantors hereby appoints the Borrower Representative as such Guarantor's agent for service of process. Nothing in this Guaranty or any other Loan Document will affect the right of any party to this Guaranty to serve process in any other manner permitted by law.

(b) The provisions regarding choice of law and venue and jury trial waiver set forth in Section 13 of the Credit Agreement are applicable to each Guarantor fully as though such Guarantor were a party thereto, and such providers are hereby incorporated herein by reference, *mutatis mutandis*.

25. **Counterparts; Electronic Execution.** This Guaranty may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Guaranty. Delivery of an executed counterpart of this Guaranty by telefacsimile or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Guaranty. Any party delivering an executed counterpart of this Guaranty by telefacsimile or other electronic method of transmission also shall deliver an original executed counterpart of this Guaranty but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Guaranty. The foregoing shall apply to each other Loan Document *mutatis mutandis*.

26. **Interpretation**. Neither this Guaranty nor any uncertainty or ambiguity herein shall be construed against any member of the Lender Group or any Guarantor, whether under any rule of construction or otherwise. On the contrary, this Guaranty has been reviewed by all parties and shall be construed and interpreted according to the ordinary meaning of the words used so as to accomplish fairly the purposes and intentions of all parties hereto.

27. **Accounting Methods**. The Guarantors shall provide at least thirty (30) days' prior written notice to the Lenders and Agent before any Borrower (a) modifies or changes its fiscal year end from

12

December 31, (b) modifies or changes its method of accounting (other than as may be required to conform to GAAP) or (c) enters into, modifies, or terminates any agreement currently existing, or at any time hereafter entered into with any third party accounting firm or service bureau for the preparation or storage of the Loan Parties' accounting records without said accounting firm or service bureau agreeing to provide Agent information regarding the Loan Parties' financial condition.

28.     **Permitted Transferee**.  Any natural person that is required to enter into this Guaranty pursuant to Section 5.13 of the Credit Agreement (a "Permitted Transferee") shall execute and deliver to Agent a Joinder to this Guaranty in substantially the form of Annex 1 attached hereto.  Upon the execution and delivery of Annex 1 by any such Permitted Transferee, such Permitted Transferee shall become a Guarantor hereunder with the same force and effect as if originally named as a Guarantor herein.  The execution and delivery of any instrument adding an additional Guarantor as a party to this Guaranty shall not require the consent of any Guarantor hereunder.  The rights and obligations of each Guarantor hereunder shall remain in full force and effect notwithstanding the addition of any new Guarantor hereunder.

29.     **Conflict**.  In the event of a conflict of the terms or provisions of this Guaranty and the Credit Agreement, the terms and provisions of the Credit Agreement shall govern.

[Signature page to follow]

13

OMM_US:79383011.10

**IN WITNESS WHEREOF**, each of the undersigned has executed and delivered this Guaranty as of the date first written above.

_____
Jon Loevy

_____
Michael Kanovitz

*[Signature Page to Shareholder Guaranty]*

AGENT:

**AFC MANAGEMENT, LLC**
a Delaware limited liability company, as Agent

By: _____
Name: _Leonard Tannenbaum_
Title: _Chief Executive Officer_

*[Signature Page to Shareholder Guaranty]*

ANNEX 1 TO SHAREHOLDER GUARANTY
FORM OF JOINDER

Joinder No. ____ (this "Joinder"), dated as of _____, to the Shareholder Guaranty, dated as of April 5, 2021 (as amended, restated, supplemented, or otherwise modified from time to time, the "Guaranty"), by and among each of the parties listed on the signature pages thereto and those additional Persons that thereafter become parties thereto (collectively, jointly and severally, "Guarantors" and each, individually, a "Guarantor") and **AFC MANAGEMENT, LLC**, a Delaware limited liability company, in its capacity as agent for the Lender Group (in such capacity, together with its successors and assigns in such capacity, "Agent"), in light of the following:

W I T N E S S E T H :

WHEREAS, reference is made to that certain Credit Agreement, dated as of April 5, 2021 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and among, by and among JG NEW JERSEY LLC, HAYDEN GATEWAY LLC, PIER COVE LLC, SRG 272 MAIN STREET LLC, SRG 1761 NORTH OLDEN LLC, SRG 1474 PROSPECT LLC, AND SRG HI PARK LLC (each, a "Borrower" and collectively, the "Borrowers"), the other Loan Parties from time to time party thereto, JG HOLDCO LLC, AFC GAMMA, INC. and AFC INVESTMENTS, LLC (together with their respective successors and permitted assigns, the "Lenders") and Agent;

WHEREAS, initially capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Guaranty or, if not defined therein, in the Credit Agreement;

WHEREAS, Guarantors have entered into the Guaranty in order to induce the Lender Group to make certain financial accommodations to the Borrowers;

WHEREAS, pursuant to the Credit Agreement and Section 28 of the Guaranty, each Permitted Transferee (each, a "New Guarantor") must execute and deliver a joinder to the Guaranty in favor of Agent, for the benefit of the Lender Group; and

WHEREAS, each New Guarantor is a direct or indirect shareholder of a Borrower and will benefit by virtue of the financial accommodations extended to the Borrowers by the Lender Group.

NOW, THEREFORE, for and in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each New Guarantor hereby agrees as follows:

1.      In accordance with Section 28 of the Guaranty, each New Guarantor, by its signature below, becomes a "Guarantor" under the Guaranty with the same force and effect as if originally named therein as a "Guarantor" and each New Guarantor hereby (a) agrees to all of the terms and provisions of the Guaranty applicable to it as a "Guarantor" thereunder and (b) represents and warrants that the representations and warranties made by it as a "Guarantor" thereunder are true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that are already qualified or modified by materiality in the text thereof) on and as of the date hereof.  In furtherance of the foregoing, each New Guarantor hereby irrevocably and unconditionally guaranties to Agent, for the benefit of the Lender Group, as and for such New Guarantor's own debt, until the final payment in full thereof, in cash, has been made, (a) the due payment of the Guaranteed Obligations, when and as the same shall become due and payable, whether at maturity, pursuant to a mandatory prepayment requirement, by acceleration, or otherwise, and after the expiration of any applicable grace and notice period

under the Credit Agreement or any of the other Loan Documents; it being the intent of each New Guarantor that the guaranty set forth herein shall be a guaranty of payment and not a guaranty of collection; and (b) the performance, keeping, observance, and fulfillment by the Borrowers of all of the agreements, conditions, covenants, and obligations of the Borrowers contained in the Credit Agreement and each of the other Loan Documents.

       2.      Each New Guarantor represents and warrants to Agent and the Lender Group that this Joinder has been duly executed and delivered by such New Guarantor and constitutes its legal, valid, and binding obligation, enforceable against the New Guarantor in accordance with its terms, except as enforceability thereof may be limited by bankruptcy, insolvency, reorganization, fraudulent transfer, moratorium, or other similar laws affecting creditors' rights generally and general principles of equity (regardless of whether such enforceability is considered in a proceeding at law or in equity).

       3.      This Joinder is a Loan Document.  This Joinder may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Joinder.  Delivery of an executed counterpart of this Joinder by telefacsimile or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Joinder.  Any party delivering an executed counterpart of this Joinder by telefacsimile or other electronic method of transmission also shall deliver an original executed counterpart of this Joinder but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Joinder.

       4.      The Guaranty, as supplemented hereby, shall remain in full force and effect.

       5.      THIS JOINDER SHALL BE SUBJECT TO THE PROVISIONS REGARDING SERVICE OF PROCESS, CHOICE OF LAW AND VENUE, AND JURY TRIAL WAIVER SET FORTH IN SECTION 24 OF THE GUARANTY, AND SUCH PROVISIONS ARE INCORPORATED HEREIN BY THIS REFERENCE, *MUTATIS MUTANDIS*.

       6.      In the event of a conflict of the terms of this Joinder and the Credit Agreement, the terms and provisions of the Credit Agreement shall govern.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Joinder to the Guaranty to be executed and delivered as of the day and year first above written.

**NEW GUARANTORS:**                              **[NAME OF NEW GUARANTORS]**

By:_____
Name:_____
Title:_____

**AGENT:**                              **AFC MANAGEMENT, LLC**
                                        a Delaware limited liability company, as Agent

By:_____
Name:_____
Title:_____