**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ADVANCED CAPITAL PARTNERS, INC., and
AFC AGENT LLC,

         Plaintiffs,

   -against-

MICHAEL KANOVITZ and JON LOEVY,

         Defendants.

Case No. 1:25-cv-02996-PKC

Hon. P. Kevin Castel

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..............................................................................................................2

    A.    The Parties And This Action...........................................................................2

    B.    The Parties' Agreement To A Forum-Selection Clause Laying Venue In New York ....................................................................................................5

    C.    Other Litigation............................................................................................5

          1.    The *Bossidy* Documents Action In California .............................5

          2.    The Later-Filed *Hayden Gateway* Action In New Jersey............6

    D.    Defendants' Motion To Transfer Venue ........................................................8

ARGUMENT ..................................................................................................................8

I.    DEFENDANTS AGREED TO A VALID FORUM-SELECTION CLAUSE THAT PRECLUDES THEIR REQUEST TO TRANSFER VENUE ................................8

    A.    The Forum-Selection Clause Was Reasonably Communicated To Defendants ...............................................................................................10

    B.    The Forum-Selection Clause Covers The Parties To And Claims In This Suit ...........................................................................................................13

    C.    Defendants Do Not Contend And Cannot Show That This Is The Exceptional Case That Overcomes The Presumption Of Enforceability..............14

    D.    The Forum-Selection Clause's Non-Exclusive Scope Does Not Nullify Defendants' Express Consent To Venue In This District.....................................14

II.    DEFENDANTS CANNOT MAKE THE REQUIRED CLEAR AND CONVINCING SHOWING TO TRANSFER THIS FIRST-FILED ACTION AWAY FROM PLAINTIFFS' CHOSEN FORUM .........................................................16

    A.    Both The First-Filed Rule And The Presumption Against Disturbing Plaintiffs' Chosen Forum Apply ................................................................16

    B.    Even Setting Aside Defendants' Waiver Of Convenience-Centered Arguments, Defendants Fail To Make A Clear And Convincing Showing That The Section 1404(a) Factors Overcome The Presumptions Against Transfer ......................................................................................................18

    C.    Granting Defendants' Transfer Request Would Endorse Defendants' Judge Shopping ..........................................................................................23

CONCLUSION................................................................................................................24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Absolute Nev., LLC v. Grand Majestic Riverboat Co., LLC*,
   646 F. Supp. 3d 426 (S.D.N.Y. 2022)........................................................................12

*Ademco Inc. v. TWS Tech. Ltd.*,
   2024 WL 3567417 (S.D.N.Y. July 29, 2024) ..................................................12, 13

*AEP Energy Servs. Gas Holding v. Bank of Am.*,
   626 F.3d 699 (2d Cir. 2010)........................................................................................17

*AFC Agent LLC v. JG Holdco LLC*,
   No. 652644/2025 (N.Y. Cty.) ......................................................................................22

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
   585 F.3d 696 (2d Cir. 2009)................................................................................10, 15

*Albright v. Terraform Labs, PTE. Ltd.*,
   641 F. Supp. 3d 48 (S.D.N.Y. 2022)..................................................................19, 22

*Anthony Sterling, M.D. v. Provident Life & Acc. Ins. Co.*,
   519 F. Supp. 2d 1195 (M.D. Fla. 2007)..................................................................19

*Atl. Mar. Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
   571 U.S. 49 (2013)....................................................................................8, 9, 14, 15

*AXA Versicherung AG v. N.H. Ins. Co.*,
   391 F. App'x 25 (2d Cir. 2010) ................................................................................11

*Bank Leumi USA v. Ehrlich*,
   98 F. Supp. 3d 637 (S.D.N.Y. 2015).....................................................................11, 15

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016).....................................................................17

*Copenhagen Reinsurance Co. (UK) Ltd. v. Sargeant Mar., Inc.*,
   1998 WL 323489 (S.D.N.Y. June 17, 1998) ..........................................................15

*D.H. Blair & Co., Inc. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006).......................................................................................9, 14

*DeBose v. Dun & Bradstreet Holdings, Inc.*,
   2025 WL 732288 (D.N.J. Mar. 7, 2025)..................................................................21

*Exploration II, Inc. v. Biallas*,
   2009 WL 1066244 (S.D.N.Y. Apr. 21, 2009)..............................................10, 15, 16

ii

*Fasano v. Li*,
    47 F.4th 91 (2d Cir. 2022) ...........................................................................15

*Hayden Gateway LLC v. Advanced Flower Cap. Inc.*,
    2025 WL 1349266 (D.N.J, May 9, 2025) ......................................................7

*Horvath v. Banco Comercial Portugues, S.A.*,
    461 F. App'x 61 (2d Cir. 2012) ..................................................................11

*Jones v. Weibrecht*,
    901 F.2d 17 (2d Cir. 1990) ...........................................................................9

*JVC Prof. Prods. Co. v. HT Elecs., Inc.*,
    1999 WL 1080280 (S.D.N.Y. Dec. 1, 1999) ..............................................21

*K.K.D. Imps., Inc. v. Karl Heinz Dietrich GmbH & Co. Int'l Spedition*,
    36 F. Supp. 2d 200 (S.D.N.Y. 1999) .........................................................11

*KnowYourMeme.com Network, Inc. v. Nizri*,
    2023 WL 6619165 (2d Cir. Oct. 11, 2023) ................................................13

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*,
    553 F.2d 842 (2d Cir. 1977) .......................................................................12

*N.Y. Mar. & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010) .......................................................................16

*Phillips v. Audio Active, Ltd.*,
    494 F.3d 378 (2d Cir. 2007) ................................................................14, 15

*Ramada Franchise Sys., Inc. v. Cusack Dev., Inc.*,
    1997 WL 304885 (S.D.N.Y. June 6, 1997) ...............................................15

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ...................................................................................19

*Wang v. Phoenix Satellite Tel. US, Inc.*,
    2014 WL 116220 (S.D.N.Y. Jan. 13, 2014) ...........................................2, 24

*Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*,
    2007 WL 2245886 (W.D.N.Y. Aug. 1, 2007) ....................................2, 23, 24

## Statutes and Rules

28 U.S.C. § 1404(a) .............................................................................................18, 23

Fed. R. Civ. P. 42(a) ...................................................................................................22

## PRELIMINARY STATEMENT

Defendants Jon Loevy and Michael Kanovitz are sophisticated attorneys and experienced investors who, over several years, obtained tens of millions of dollars in loaned funds to support their multi-state cannabis businesses.  As part of those deals, Loevy and Kanovitz freely agreed to personally guarantee the loan and to submit, "IRREVOCABLY AND UNCONDITIONALLY," to the jurisdiction of New York courts for the resolution of disputes arising out of or related to the loan.  But when AFC filed this suit in the Southern District of New York in accordance with the parties' forum-selection agreement, Defendants reneged, and now move to transfer the case to the District of New Jersey invoking paper-thin, convenience-centered arguments that they expressly agreed to waive.

Defendants' misguided transfer effort should fail.  It is premised on resistance to no fewer than three strong baseline presumptions that federal law imposes *against* transfer—the presumption favoring enforcement of forum-selection agreements, the presumption against disturbing a plaintiff's choice of forum, and the presumption against transferring the first-filed of a series of related actions.  Any one of those presumptions individually would preclude Defendants' theory here; in combination, they are determinative several times over.  Apparently recognizing the unviable path they have chosen, Defendants' motion carefully omits discussion of two of those presumptions (the enforceability of forum-selection clauses and the first-filed rule) and relegates the third (deference to the plaintiff's chosen forum) to its final page. But Defendants cannot overcome the deep flaws in their theory by ignoring them, much less make the required clear and convincing showing that transfer is warranted—yet another insurmountable obstacle to their transfer request.

Defendants' waived convenience arguments also fail on their own terms.  Litigating in New Jersey—the venue to which Defendants seek transfer—would be convenient for nobody.

AFC is not based in New Jersey. Defendants do not reside in New Jersey. Neither AFC's nor Defendants' counsel is based in New Jersey. And Defendants still have not identified a single likely witness who resides in New Jersey. The primary connection to New Jersey that Defendants tout is a later-filed case, involving different parties, claims, and issues, that Defendants insist should be consolidated with this one before a specific judge—not coincidentally, the same judge who issued a favorable preliminary injunction ruling to Defendants' companies just four days before Defendants sought permission to file their transfer motion.

Stripped of pretext, then, Defendants' theory of transfer boils down to an effort to gain tactical advantage by consolidating this action before a judge whom they perceive as more favorable to their position. But as this Court and others have correctly explained, "judge-shopping by litigants" is by itself sufficient reason to deny transfer, *Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*, 2007 WL 2245886, at *6-7 (W.D.N.Y. Aug. 1, 2007) (citation omitted), given the violence such tactics do to "the interests of justice," *Wang v. Phoenix Satellite Tel. US, Inc.*, 2014 WL 116220, at *4 (S.D.N.Y. Jan. 13, 2014) (Castel, J.).

Defendants' motion to transfer venue should accordingly be denied.

## BACKGROUND

### A. The Parties And This Action

This suit arises from Defendants' myriad breaches of a Shareholder Guaranty Agreement, tortious interference with contract, and multimillion-dollar fraud.

AFC is an institutional lender to the commercial real estate sector with a specialization in loaning funds to the nascent legal cannabis industry. (Dkt. 24 ¶ 2.) Plaintiff Advanced Flower Capital, Inc. is a Maryland corporation that is headquartered in Florida. (*Id.* ¶ 14.) AFC's CEO, Dan Neville, maintains residences in both New York and Florida. (Dkt. 14 at 5; Dkt. 32 at 10.)

Plaintiff AFC Agent LLC is a Delaware limited liability company with its principal place of business in West Palm Beach, Florida. (Dkt. 24 ¶ 15.)

Defendants Jon Loevy and Michael Kanovitz are affluent investors and high-profile attorneys who reside in Chicago, Illinois. (*Id.* ¶¶ 9, 16-17) Loevy touts himself as "one of the most successful trial lawyers in the United States," due in part to his obtaining eight- and nine-figure verdicts, including recent ones for as much as $238 million and $120 million. *Jon Loevy*, Loevy + Loevy, https://www.loevy.com/attorneys/jon-loevy/ (accessed Aug. 15, 2025). Loevy was recently profiled in Forbes. *Jon Loevy*, Forbes, https://www.forbes.com/profile/jon-loevy/ (2024) (accessed Aug. 28, 2025). As part of their legal work, Loevy and Kanovitz regularly do business and file cases in New York. In the last several months alone, they have filed three cases in this District.[1]

In 2014, Defendants founded "Justice Grown," a multi-state cannabis business consisting of a conglomerate of entities operating under an umbrella holding company called JG HoldCo LLC. (Dkt. 24 ¶ 3.) As Defendants have emphasized in other contexts, they have injected millions of dollars of their own money into Justice Grown. (*Id.* ¶ 50.)

In 2021, AFC agreed to lend the borrowers, Defendants' companies, up to $75.4 million to build cannabis facilities in Pennsylvania and New Jersey. (*Id.* ¶ 4.) AFC's agreements to loan the borrowers these funds were ultimately memorialized in a Second Amended and Restated Credit Agreement (the "Credit Agreement"). (Dkt. 30-2.)

---

[1]     *See In re OpenAI, Inc. Copyright Infringement Litig.*, No. 1:25-md-03143-SHS-OTW (S.D.N.Y. Apr. 3, 2025); *Musick et al. v. Dotdash Meredith, Inc.*, No. 1:25-cv-01718-PKC (S.D.N.Y. Feb. 28, 2025); *De Leon et al. v. DraftKings, Inc.*, 1:25-cv-00644-DLC (S.D.N.Y. Jan. 22, 2025).

Needless to say, an outlay of credit that large entailed substantial risk for AFC. In consideration of that risk, Defendants agreed to enter into a Shareholder Guaranty making them immediately and personally liable not only for defaults by the borrowers, but also for misconduct including fraud, misappropriation of funds, and misrepresentations, regardless of whether the borrowers had defaulted. (Dkt. 24 ¶¶ 4, 44.) Under the Guaranty, these obligations were "primary and original," and "not merely the creation of a surety relationship," triggering "immediate" liability of the Guarantors' upon a breach of the Guaranty. (*Id.* ¶ 45.)

Loevy and Kanovitz breached those obligations under the Shareholder Guaranty and continually misrepresented the borrowers' financial position and compliance with the Credit Agreement to induce AFC to disburse millions of more dollars to the borrowers. For example, Loevy and Kanovitz impermissibly diverted nearly $20 million of funds loaned by AFC to entities they owned for unauthorized purposes, including paying the debts of their law firm. (*Id.* ¶ 75.) The borrowers likewise failed to pay vendors and their taxes, running up their accounts payable balance to exceed $10 million. (*Id.* ¶¶ 84-85.) Loevy and Kanovitz not only failed to disclose these and other material breaches of the Credit Agreement; Loevy also continued to falsely certify that the borrowers were in compliance with the Credit Agreement to obtain millions of dollars in additional funds and other valuable concessions from AFC. (*Id.* ¶ 137.)

AFC filed this suit on April 10, 2025, asserting claims for breach of contract, tortious interference with contract, fraud, aiding and abetting fraud, conversion, and violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act. On June 20, AFC filed an amended complaint as of right that dropped the RICO claims but otherwise asserted the same causes of action as the original complaint.

**B.  The Parties' Agreement To A Forum-Selection Clause Laying Venue In New York**

In Section 24(b) of the Shareholder Guaranty, Loevy and Kanovitz both agreed that "[t]he provisions regarding choice of law and venue and jury trial waiver set forth in Section 13 of the Credit Agreement are applicable to each Guarantor fully as though such Guarantor were a party thereto, and such providers are hereby incorporated herein by reference, *mutatis mutandis*."  (Dkt. 30-1 § 24(b).)  And Section 13 of the Credit Agreement provided in pertinent part:

> PARENT AND EACH LOAN PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK, SITTING IN THE COUNTY OF WESTCHESTER OR NEW YORK, AT THE REQUIRED LENDER'S DISCRETION, AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO ANY LOAN DOCUMENTS …. NOTHING IN THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT SHALL AFFECT ANY RIGHT THAT AGENT MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT AGAINST PARENT OR ANY LOAN PARTY OR ITS PROPERTIES IN THE COURTS OF ANY JURISDICTION.

(Dkt. 30-2 § 13(c).)  The Credit Agreement also contained a choice-of-law clause selecting New York law to govern its validity, enforcement, and interpretation.  (*Id.* § 13(a).)

Loevy personally signed the Credit Agreement containing this forum-selection clause on behalf of Hayden Manager LLC, the management entity for Justice Grown.  (*Id.* at 113; Dkt. 24 ¶¶ 3, 20.)  Neither Loevy nor Kanovitz has challenged the validity of the Shareholder Guaranty.

**C.  Other Litigation**

Defendants cite two other pending cases in their motion to transfer venue.

**1.  The *Bossidy* Documents Action In California**

The first case is a suit filed by Bloc Dispensary LLC, one of the borrowers, against Timothy Bossidy, its former Chief Restructuring Officer, on March 7, 2025.  *See Bloc Dispensary LLC v. Bossidy*, No. 2:25-cv-01725, Dkt. 1 (D.N.J. Mar. 7, 2025).  Bloc Dispensary asserted two causes

of action against Bossidy—one for a breach of fiduciary duty, one for conversion, and none for breach of contract. *See id.* ¶¶ 63-71. The principal relief it sought was an order requiring Bossidy to return company documents. *See id.* at 13. Neither AFC nor Defendants were parties to the *Bossidy* suit. Bloc Dispensary initially filed the suit in the District of New Jersey, but the case was transferred to the Central District of California on July 1, 2025 (*id.*, Dkt. 15) without opposition from Bloc Dispensary. *Id.,* Dkt. 14 at 1; *see Bloc Dispensary LLC v. Bossidy*, No. 2:25-cv-06457 (C.D. Cal.). Although Defendants moved to transfer this action more than three weeks after the *Bossidy* case was transferred to California, their motion omits any mention of this transfer. (*See* Dkt. 32 at 1, 3.) Yesterday, Bloc Dispensary voluntarily dismissed the *Bossidy* action without prejudice. *See Bossidy*, No. 2:25-cv-06547, Dkt. 35 (C.D. Cal. Aug. 28, 2025).

### 2. The Later-Filed *Hayden Gateway* Action In New Jersey

The second case is a suit filed by Hayden Gateway LLC and Bloc Dispensary, two of the borrowers owned by Loevy and Kanovitz, against AFC in the District of New Jersey on April 17, 2025—after AFC filed this action. *Hayden Gateway LLC et al. v. Advanced Flower Capital Inc. et al.*, No. 3:25-cv-02789, Dkt. 1 (D.N.J. Apr. 17, 2025). In *Hayden Gateway*, the borrowers alleged that AFC breached the Credit Agreement, breached the implied covenant of good faith and fair dealing, and violated the New York Uniform Commercial Code. *Id.* ¶¶ 254-68. Neither Loevy nor Kanovitz is a party to the *Hayden Gateway* action, and the borrowers did not sue on the Shareholder Guaranty.

In early May, Judge Quraishi, who is presiding over *Hayden Gateway*, held an evidentiary hearing on the borrowers' motion for a preliminary injunction. Seven witnesses testified for the borrowers, and only one witness, Neville, testified for AFC. *See generally id.*, Dkt. 36 (transcript of Preliminary Injunction hearing). None of the witnesses who testified for either side resides in New Jersey.

On May 9, 2025, Judge Quraishi granted the borrowers' motion for a preliminary injunction prohibiting AFC from exercising its remedies under the Credit Agreement, as amended by a Forbearance Agreement that the borrowers entered into with AFC in 2024. *Hayden Gateway LLC v. Advanced Flower Cap. Inc.*, 2025 WL 1349266, at *19 (D.N.J, May 9, 2025). Judge Quraishi determined that the borrowers were likely to succeed on two of their claims in that action, reasoning that the borrowers likely had not defaulted under the Forbearance Agreement on the ground that the parties had orally modified the Forbearance Agreement to permit the borrowers' conduct. *Id.* at *11-16.

In reaching that conclusion, Judge Quraishi considered only specified grounds for default of the Forbearance Agreement addressed by the parties—principally, the borrowers' failure to provide AFC with annual audited financial statements and opposition to AFC's foreclosure on a Pennsylvania cultivation facility. *Id.* Judge Quraishi's opinion granting preliminary relief did not discuss the Shareholder Guaranty, because none of the parties in the New Jersey action sued on the Shareholder Guaranty or invoked it as a defense. *See id.* Nor did it address the borrowers' misappropriation of funds, as outlined in the AFC's amended complaint in this action, the borrowers' nonpayment of taxes, Loevy and Kanovitz's false certifications and other misleading statements, and whether Loevy and Kanovitz are likely liable for fraud or conversion. *Id.* Judge Quraishi's preliminary injunction order, in short, made only preliminary determinations on an abbreviated record about the borrowers' likelihood of establishing AFC's breach of a different contract than the one AFC sues on here.[2]

---

[2]  AFC appealed Judge Quraishi's grant of the preliminary injunction. *Hayden Gateway*, No. 3:25-cv-02789, Dkt. 64 (Notice of Interlocutory Appeal). It filed its opening brief in the appeal on July 1, 2025. *See Hayden Gateway LLC et al. v. Advanced Flower Cap. Inc.*, No. 25-2061, Dkt. 23-1 (3d Cir. July 1, 2025). On appeal, AFC argues that Judge Quraishi erred in determining

Ten days after AFC filed its appeal, the borrowers filed an amended complaint in the New Jersey action. *See Hayden Gateway*, No. 3:25-cv-02789, Dkt. 77 (D.N.J. July 11, 2025). AFC moved to dismiss that amended complaint on August 22, 2025, *see id.*, Dkt. 88, nearly a month after Loevy and Kanovitz filed their motion to dismiss AFC's amended complaint in this action. The motion-to-dismiss briefing in this action is set to be completed before motion-to-dismiss briefing in the New Jersey action.

### D. Defendants' Motion To Transfer Venue

Four days after Judge Quraishi granted the borrowers' motion for a preliminary injunction in New Jersey, Defendants filed a letter motion in this action seeking permission to move to transfer the case to New Jersey. (Dkt. 11.) Defendants moved to transfer on July 25. (Dkt. 32.) They contend that if the Court grants transfer, they will seek to consolidate this action before Judge Quraishi specifically. (*Id.* at 2, 7-9, 11-12.)

## ARGUMENT

### I.  DEFENDANTS AGREED TO A VALID FORUM-SELECTION CLAUSE THAT PRECLUDES THEIR REQUEST TO TRANSFER VENUE

Defendants' request to transfer is precluded by their own agreement to a valid forum-selection clause laying venue in this District. Because enforcement of forum-selection clauses, "bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," such clauses "should be given controlling weight in all but the most exceptional cases" presenting "extraordinary circumstances." *Atl. Mar. Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quotation marks and citation omitted)

---

that the oral modifications to the Forbearance Agreement asserted by the borrowers were enforceable despite the borrowers' agreement to no-oral-modifications clauses in their written agreements. *See id.* at 28-41.

(alteration adopted).  This case is not exceptional.  Defendants are experienced lawyers and highly sophisticated businessmen who freely contracted to resolve disputes such as this one in New York, and they should be held to their agreement.[3]

It is well-established that contracting parties may consent to litigate disputes in a particular forum through a forum-selection clause.  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).  Forum-selection clauses protect "the parties' settled expectations," often "figur[ing] centrally in the parties' negotiations" and "affect[ing] how they set monetary and other contractual terms."  *Atlantic Marine*, 571 U.S. at 66.  So when contracting parties agree to forum-selection clauses, they "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses."  *Id.* at 64.  Otherwise, counterparties would not receive the benefit of their bargain—the certainty of litigating disputes in the agreed forum.

The Second Circuit has set out "several conditions" for the enforcement of forum-selection clauses in this context.  *D.H. Blair*, 462 F.3d at 103.  When a plaintiff files suit in a forum that the defendant expressly consented to in a forum-selection clause, the clause generally may be enforced as long as its "existence … was reasonably communicated," it covers the claims at issue, and it was not "obtained through fraud or overreaching."  *Id.* (quotation marks and citation omitted).  Once those conditions are met, the clause must be enforced unless the defendant "clearly show[s]" that "enforcement would be unreasonable or unjust."  *Id.* (quotation marks and citation omitted).  And that is so even when the forum-selection clause is permissive or non-exclusive.  In such cases, the non-exclusive clause merely reflects the plaintiff's chosen forum "as a preferred, not a dispreferred, forum," and "the non-exclusivity of plaintiff's choice of forum does not affect

---

[3]    In diversity cases such as this one, matters of venue and the enforceability of forum-selection clauses are governed by federal law.  *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990).

defendants' unequivocal consent" to that forum. *Exploration II, Inc. v. Biallas*, 2009 WL 1066244, at *3 (S.D.N.Y. Apr. 21, 2009) (Lynch, J.) (quotation marks and citation omitted) (alterations adopted); *see Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009) (holding that a non-exclusive forum-selection clause and a waiver of convenience-related objections to the designated forum "amount[] to a mandatory forum selection clause, at least where the plaintiff chooses the designated forum").

The forum-selection clause here amply satisfies each of those conditions: It was clearly communicated to Defendants, it covers the claims and parties in this suit, and not even Defendants contend that it was obtained by fraud or overreaching. And Defendants cannot show—let alone clearly—that enforcing their consent to litigate in New York would be unreasonable or unjust. Their motion should thus be denied on forum-selection clause grounds alone.[4]

## A. The Forum-Selection Clause Was Reasonably Communicated To Defendants

The forum-selection clause in the Credit Agreement was reasonably communicated to Defendants. Loevy himself signed the Credit Agreement containing the forum-selection clause, so the clause was actually—not just reasonably—communicated to him (and undoubtedly to Kanovitz, his co-guarantor and law and business partner). (Dkt. 30-2 at 113.) So while Defendants now contend that "[t]here is nothing in the record showing how and when AFC reasonably communicated" the Credit Agreement's forum-selection clause to Defendants (Dkt. 30 at 9), the Credit Agreement Loevy signed and filed on the docket says the opposite.

---

[4]    Defendants do not even dispute the forum-selection clause's validity in their motion to transfer venue; inexplicably, they do not mention the forum-selection clause in that motion *at all*. (*See generally* Dkt. 32.) Defendants instead contest the clause's enforceability only in their motion to dismiss, and only as to the validity of their consent to personal jurisdiction, not venue. (Dkt. 30 at 6-11.)

In any event, the Shareholder Guaranty expressly "incorporated" the Credit Agreement's forum-selection clause by reference, directing both Loevy and Kanovitz to its contents and binding each as if he "were a party" to the Credit Agreement. (Dkt. 30-1 § 24(b).) That too ends the inquiry under Second Circuit law, which binds parties to forum-selection clauses "expressly incorporated by reference into agreements to which they manifest their assent," absent "substantive unconscionability or fraud of a type not alleged here." *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012) (citation omitted); *see Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 650 (S.D.N.Y. 2015) ("Even if the Terms were not provided to them at the time they signed, … [Defendants] were put on express notice that the [forum-selection clause was] incorporated into their Agreement.").

For good reasons, the law did not require more. The Shareholder Guaranty expressly incorporated the forum-selection clause and at minimum alerted Defendants to its existence. So if Defendants are claiming they did not actually know about the forum-selection clause—which they notably stop short of doing (Dkt. 30 at 8-9)—there are only two possibilities: (1) Defendants had access to the Credit Agreement's forum-selection clause but declined to read it before agreeing to be bound by it, which could be described only as "'gross negligence.'" *Horvath*, 461 F. App'x at 63 (quoting *AXA Versicherung AG v. N.H. Ins. Co.*, 391 F. App'x 25, 30 (2d Cir. 2010)). Or (2) they did not have access to the forum-selection clause and did not even ask to review it before agreeing to be bound, which would be "equally negligent." *Id.* In either case, any unawareness of the forum-selection clause could be "no one's fault but [Defendants'] own," and "[t]here is no reason to allow [them] to use [their] own inattention to defeat [AFC's] reasonable expectations." *K.K.D. Imps., Inc. v. Karl Heinz Dietrich GmbH & Co. Int'l Spedition*, 36 F. Supp. 2d 200, 203 (S.D.N.Y. 1999). After all, the Shareholder Guaranty was a contract to, among other things,

provide AFC with security against its loan to Defendants' own businesses.  It would have been patently unreasonable for Defendants—both sophisticated attorneys—not to have read or understood the terms of that loan, reflected in the Credit Agreement, before agreeing to guarantee it.

This same analysis forecloses Defendants' alternative contention that the Shareholder Guaranty did not reasonably communicate that the forum-selection clause included express consent to personal jurisdiction in New York.  The forum-selection clause Defendants freely agreed to stated that they "IRREVOCABLY AND UNCONDITIONALLY SUBMIT[TED] TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK."  (Dkt. 30-2 § 13(c).)  Defendants either read and understood that language (in which case they are bound by their consent to jurisdiction) or did not read and understand that language but signed the Shareholder Guaranty incorporating it anyway (in which case they are also bound).

In any case, Defendants' hair-splitting contention that they were adequately alerted to the forum-selection clause's consent to venue, but not to its corresponding consent to personal jurisdiction, rests on a nonexistent legal principle that separate consent is required for each.  As both this Court and the Second Circuit have explained before, "[p]arties can consent to personal jurisdiction through forum-selection clauses," *Absolute Nev., LLC v. Grand Majestic Riverboat Co., LLC*, 646 F. Supp. 3d 426, 438-39 (S.D.N.Y. 2022) (Castel, J.) (quotation marks and citation omitted), even when those clauses do not include express consent to personal jurisdiction, because "[t]o hold otherwise would be to render the [forum-selection] clause a nullity," *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977) (citation omitted); *see also Ademco Inc. v. TWS Tech. Ltd*., 2024 WL 3567417, at *3 (S.D.N.Y. July 29, 2024) (a valid

"forum selection clause amounts to consent to personal jurisdiction"). The Shareholder Guaranty Defendants signed expressly provided that they consented to the Credit Agreement's "provisions regarding … venue … as though [each] Guarantor were a party thereto." (Dkt. 30-1 § 24(b).) That was ample notice of Defendants' consent to jurisdiction under settled circuit law.

### B. The Forum-Selection Clause Covers The Parties To And Claims In This Suit

The forum-selection clause likewise covers all of AFC's claims against Defendants. It expressly provides that Defendants agreed to submit to the jurisdiction of this Court "IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO ANY LOAN DOCUMENTS." (Dkt. 30-2 § 13(c).) That language applies squarely here. This suit is for breach of the Shareholder Guaranty, tortious interference with AFC's rights under the Credit Agreement, fraud in the inducement of amendments to the Credit Agreement, and conversion of funds loaned pursuant to the Credit Agreement. Each of those claims, including the tort claims, arises out of and relates to both the Shareholder Guaranty and the Credit Agreement—both of which indisputably qualify as "Loan Documents."[5] *See, e.g.*, *KnowYourMeme.com Network, Inc. v. Nizri*, 2023 WL 6619165, at *1-2 (2d Cir. Oct. 11, 2023) (explaining that "[a] business tort claim arises out of a contract if the claim depends on the existence of a contractual relationship" or "assume[s] the existence of both an enforceable agreement and enforceable rights between the parties pursuant to it").

Defendants do not contest that the plain ambit of the clause extends both to them and to AFC's claims against them. Their only contention to the contrary is, again, that the forum-

---

[5]    As the Shareholder Guaranty itself acknowledges (*e.g.* Dkt. 30-1 at 1 (referring to "the Credit Agreement and the other Loan Documents")), both the Credit Agreement and the Shareholder Guaranty qualify as "Loan Document[s]" under the initial credit agreement's definition. (*See* Dkt. 24 at 10 n.3 (defining "Loan Document" and incorporated terms).)

selection clause does not cover this suit because the Shareholder Guaranty does not specifically "refer[] to jurisdiction." (Dkt. 30 at 10.)  But that argument is meritless for the reasons already explained.  *See supra*, pp. 12-13.

### C. Defendants Do Not Contend And Cannot Show That This Is The Exceptional Case That Overcomes The Presumption Of Enforceability

Defendants have never contended—nor could they—that the forum-selection clause was "obtained through fraud or overreaching." *D.H. Blair*, 462 F.3d at 103 (quotation marks and citation omitted).  So it is Defendants' burden to "clearly show[]" that "enforcement would be unreasonable or unjust," *id.* (quotation marks and citation omitted)—in essence, that this case is the "unusual" one, presenting "extraordinary circumstances unrelated to the convenience of the parties," where justice would not be "served by holding parties to their bargain," *Atlantic Marine*, 571 U.S. at 62, 66.  But Defendants have never attempted to make that showing and could not do so if they tried.  Defendants freely agreed to and surely understood the forum-selection clause they now resist.  That forum-selection agreement is thus entitled to "controlling weight." *Id.* at 63 (quotation marks and citation omitted).

### D. The Forum-Selection Clause's Non-Exclusive Scope Does Not Nullify Defendants' Express Consent To Venue In This District

Because the forum-selection clause Defendants agreed to was reasonably communicated, covers AFC's claims and Defendants, and was not obtained by fraud or overreaching, it is enforceable, and the venue-transfer inquiry should be at its end.  Defendants, nonetheless, contend that the forum-selection clause is not enforceable against them simply because it is phrased in non-exclusive terms.  (Dkt. 30 at 9-10.)  They are wrong.

Binding circuit precedent rejects Defendants' theory.  The Second Circuit has explained that a "permissive [*i.e.*, non-exclusive] forum-selection clause … confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise

appropriate." *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). The significance of a given forum-selection clause's non-exclusive scope, therefore, turns on whether the plaintiff has filed suit in the contractually designated forum. In cases where the plaintiff files suit somewhere other than the designated forum, the clause's non-exclusive scope presents a barrier to enforcement if the plaintiff's chosen forum "is otherwise appropriate." *Id.*

But in cases like this one—where the plaintiff files suit in the contractually *agreed* forum— the non-exclusivity of a forum-selection clause has no import. That is because "'when parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient,'" *Fasano v. Li*, 47 F.4th 91, 101 (2d Cir. 2022) (emphases omitted) (alteration adopted) (quoting *Atlantic Marine*, 571 U.S. at 64), and "[t]he combination" of the parties' preselection of the forum and waiver of convenience-based objections "amounts to a mandatory forum selection clause at least where the plaintiff chooses the designated forum," *Aguas Lenders*, 585 F.3d at 700. District courts in this circuit consistently follow that commonsense rule. *See, e.g.*, *Copenhagen Reinsurance Co. (UK) Ltd. v. Sargeant Mar., Inc.*, 1998 WL 323489, at *3 (S.D.N.Y. June 17, 1998) (explaining that "[t]he non-exclusivity of [a] forum selection clause does not lessen its significance," particularly given "plaintiffs' decision to initiate this action in New York"); *Ramada Franchise Sys., Inc. v. Cusack Dev., Inc.*, 1997 WL 304885, at *3 (S.D.N.Y. June 6, 1997) ("The non-exclusivity of Ramada's choice of forum does not affect [defendants'] unequivocal consent to jurisdiction and waiver of venue in New York."); *Exploration II*, 2009 WL 1066244, at *3 (same); *Bank Leumi*, 98 F. Supp. 3d at 652 (same). And it applies even more straightforwardly when, as here, the forum-selection clause includes not only an agreement to litigate in a particular forum, but also an express "UNCONDITIONAL[]" consent to jurisdiction there. (Dkt. 30-2 § 13(c).)

These principles foreclose Defendants' contention that the non-exclusivity of the forum-selection clause nullifies their unconditional consent to suit in this forum. At the very least, a non-exclusive forum-selection clause is "a significant factor that figures centrally"—and dispositively here—"in the district court's calculus." *Exploration II*, 2009 WL 1066244, at *3 (citation omitted).

In short, Defendants should be held to their forum-selection agreement, and their motion should be denied.

## II.  DEFENDANTS CANNOT MAKE THE REQUIRED CLEAR AND CONVINCING SHOWING TO TRANSFER THIS FIRST-FILED ACTION AWAY FROM PLAINTIFFS' CHOSEN FORUM

Defendants' motion to transfer venue should be denied even ignoring the forum-selection clause. Circuit law creates strong presumptions against both disturbing a plaintiff's choice of forum and transferring a first-filed case, and imposes a correspondingly demanding clear-and-convincing burden on parties seeking transfer. *See N.Y. Mar. & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (holding that clear-and-convincing standard applies to motions to transfer venue). Defendants' arguments for transfer cannot surmount any one of those hurdles, let alone all of them.

### A.  Both The First-Filed Rule And The Presumption Against Disturbing Plaintiffs' Chosen Forum Apply

Even setting aside the forum-selection clause, two baseline presumptions—the first-filed rule and the presumption in favor of the plaintiff's chosen forum—tilt the scales strongly against transfer here.

To begin, not even Defendants contest that the presumption in favor of AFC's chosen forum "clearly counsels against transfer." (Dkt. 32 at 12.) They instead argue that the presumption applies with diminished force, ostensibly because AFC is not headquartered in New York and its causes of action did not arise in New York. (*Id.* at 12-13.) But Defendants ignore that the same

16

could be said of their preferred venue in New Jersey, which is home neither to them nor any other key participant in this case. Regardless, there is no dispute that the presumption disfavors transfer, and Defendants' arguments at most bear on the weight, not the applicability, of the presumption.

Venue in this District also has primacy under the first-filed rule, which instructs that "where there are two competing lawsuits, the first should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *AEP Energy Servs. Gas Holding v. Bank of Am.*, 626 F.3d 699, 722 (2d Cir. 2010) (citation omitted). The rule applies "when two actions involve the same parties and legal issues," or at least "where there are substantial overlapping factual and legal issues between both actions." *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 551 (S.D.N.Y. 2016) (citing *Emps. Ins. of Wassau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 274 (2d Cir. 2008)).

Under these principles, this case qualifies as first-filed. Only one case, the now-dismissed *Bossidy* case, was filed before this one, and it involved neither identical nor even similar parties or claims. *Bossidy* did not include a single party or claim in common with this case. The plaintiff in *Bossidy* was Bloc Dispensary LLC, which is not a party here. The defendant was Bossidy, who is also not a party here. And Bloc Dispensary asserted two claims against Bossidy—none of which involve the Shareholder Guaranty, and both of which sought the return of alleged Bloc Dispensary documents from Bossidy. *Bossidy*, Dkt. 13 at 2-3. A third party's action to obtain documents from a different third party can hardly be described as "involving the same parties and legal issues" as this case. *Catalano*, 167 F. Supp. 3d at 551.

Defendants minimize these key differences and wrongly maintain that there is substantial overlap between *Bossidy*, this action, and *Hayden Gateway*—so much so that they contend they will seek to consolidate this action with *Hayden Gateway* if transfer is granted. (Dkt. 32 at 9.)

This argument was nonsensical when it was made given that *Bossidy* was no longer pending in New Jersey—it had been transferred to California without opposition. The argument is especially nonsensical now that *Bossidy* has been voluntarily dismissed by Defendants' own company. And there is no question that AFC filed this action before the borrowers filed *Hayden Gateway*, meaning that the first-filed rule plainly favors this action over that one.

Defendants do not dispute that the first-filed rule applies. Instead, they omit from their motion any reference to the first-filed rule, or to the transfer of *Bossidy* to California—albeit while passingly suggesting that "[t]his case is the second of three related lawsuits." (*Id.* at 1.) Setting aside that opaque approach, Defendants' argument that the three cases are related only reinforces that this action is first-filed in relation to the only of those cases that matters—*Hayden Gateway*—because that is the sole case remaining in Defendants' preferred venue, New Jersey.

In sum, the first-filed rule and presumption in favor of the plaintiff's choice of forum apply to, and ultimately resolve, this case.

**B. Even Setting Aside Defendants' Waiver Of Convenience-Centered Arguments, Defendants Fail To Make A Clear And Convincing Showing That The Section 1404(a) Factors Overcome The Presumptions Against Transfer**

Especially with these presumptions in mind, Defendants have not made and cannot make the clear and convincing showing required to warrant transfer.

Under Section 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties in witnesses, in the interest of justice, … transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision whether to grant transfer is left to district courts' "broad discretion," which district courts must exercise "in a way that promotes the underlying purposes of § 1404, namely 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Albright v. Terraform Labs, PTE. Ltd.*, 641 F. Supp. 3d 48, 55 (S.D.N.Y. 2022)

(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  Courts consider a set of nine "non-exhaustive factors" that guide their broad discretion, including: (1) the convenience of witnesses, (2) the convenience of parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interests of justice.  *Id.* (quotation marks and citation omitted).

These factors are not deserving of "equal weight," but must instead "be evaluated from a strong baseline in favor of the plaintiff's chosen forum."  *Id.*  Accordingly, "the moving party must clear a significant hurdle: they must make a 'clear and convincing showing' that transfer is preferable under these factors.'"  *Id.* (citation omitted).  And given that exacting burden, even "neutral factors will weigh *against* transfer due to the presumption in favor of a plaintiff's choice of venue."  *Anthony Sterling, M.D. v. Provident Life & Acc. Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007) (emphasis added).

Here, the factors either weigh against transfer or are uniformly neutral, and thus do not suffice as a clear and convincing showing that transfer is appropriate.

***Convenience of witnesses*.**  This factor favors retention.  Defendants still have not identified a single likely witness who resides in New Jersey and instead refer vaguely to New Jersey facility employees whom they suggest, without evidentiary support, would testify.  (Dkt. 32 at 9-10.)  Those unsubstantiated allusions to possible New Jersey-based witnesses do not satisfy Defendants' clear-and-convincing evidentiary burden.

Indeed, none of the key witnesses actually named by the parties resides in New Jersey.  Neville, whom AFC expects to call, has a residence in New York.  Defendants both reside in

Illinois.  To AFC's knowledge, the two Justice Grown employees who contemporaneously attempted to defend the money transfers at issue reside in Vermont and Illinois.  And the two employees Defendants previously blamed for the money transfers reside in California and Nevada.  Even Bossidy resides in Florida, as do most of AFC's employees.  In short, one core witness maintains a residence in New York, and no witness actually identified by the parties resides in New Jersey.

**Convenience of parties.**  This factor also favors retention.  None of the parties resides in New York or New Jersey.  But AFC's CEO has a residence in New York, several members of AFC's counsel team reside in New York, and Defendants regularly travel to and litigate cases in New York, including before this Court.

**Location of relevant documents and relative ease of access to sources of proof.**  The central documentary evidence in this case consists of wire records, emails, and accounting files maintained by the parties in their respective home bases in Florida and Illinois, a point Defendants concede.  (Dkt. 32 at 10-11.)  Defendants emphasize that their businesses have physical locations in New Jersey and Pennsylvania, but they do not explain why that matters.  AFC asserts claims against Defendants themselves for fraud and breach of contract, not construction claims.

**Locus of operative facts.**  This factor is neutral.  This case concerns Defendants' breaches of contract, fraud in obtaining millions of dollars in loaned funds, and conversion of loaned funds across numerous states.  That scheme was orchestrated from Illinois, where Defendants—the parties to the Shareholder Guaranty—live.  As Defendants underscore in their motion to dismiss, several of AFC's claims turn on Defendants' own knowledge of their misrepresentations, not on where their businesses' employees work.

***Availability of process to compel attendance of unwilling witnesses.***  This factor is neutral or slightly favors New York.  Defendants admit that they "are unaware of any witnesses in this action" who reside in New Jersey beyond 100 miles of this courthouse.  (Dkt. 32 at 11.)

***Relative means of the parties.***  This factor is neutral.  Defendants are affluent attorneys who tout eight- and nine-figure litigation recoveries and regularly do business in both New York and New Jersey.  In insisting otherwise, Defendants distract with references to the salaries of their businesses' employees (who are not parties and whom Defendants control) and to AFC's ostensible means.  But Defendants cannot get their story about AFC's finances straight; in New Jersey, Mr. Loevy personally argued that AFC was "desperate for cash," while here, Defendants emphasize AFC's market capitalization.  (Dkt. 14-3 at 64:8; *see id.* at 255:11-13 (Kanovitz testifying that he believes AFC is in "financial distress").)  Defendants should not be rewarded for changing their sworn testimony for litigation advantage.

***Forum's familiarity with governing law.***  While Defendants concede that this factor is either neutral or weighs against transfer, they minimize the extent to which it disfavors transfer.  As Defendants allude to, they agreed to a choice-of-law clause selecting New York law to govern all claims arising out of or relating to the Shareholder Guaranty.  This Court undoubtedly has more familiarity with governing New York law than the District of New Jersey.  *See JVC Prof. Prods. Co. v. HT Elecs., Inc.*, 1999 WL 1080280, at *2 (S.D.N.Y. Dec. 1, 1999) ("[T]his Court presumably has a greater familiarity with New York law than a federal court sitting in" another state).  And this Court is even more familiar with controlling Second Circuit decisions interpreting and applying New York law—decisions to which judges in the District of New Jersey are bound to defer.  *See, e.g.*, *DeBose v. Dun & Bradstreet Holdings, Inc.*, 2025 WL 732288, at *4 (D.N.J. Mar. 7, 2025) ("[W]hen a federal circuit court makes a determination concerning the laws of a

state within that circuit, the federal courts of other circuits should defer to that holding") (quotation marks and citation omitted).

*Weight accorded to the plaintiff's chosen forum.*  Defendants rightly concede that this factor "clearly counsels against transfer." (Dkt. 32 at 12.)  Accordingly, the remaining factors must "be evaluated from a strong baseline in favor of" venue here.  *Albright*, 641 F. Supp. 3d at 55.

*Trial efficiency and the interests of justice.*  This factor strongly favors retention.  The interests of justice would be best served by holding Defendants to their agreement to litigate in New York, by deferring to AFC's choice of forum, and by appropriately treating this case as first-filed.

Defendants assert that they intend to seek consolidation of this action with *Hayden Gateway*.  But if Defendants were genuinely concerned with implementing the "policy in this Circuit favoring the litigation of related claims in the same tribunal." (Dkt. 32 at 7 (citation omitted).), nothing would prevent them from causing the transfer of *Hayden Gateway* here—the District where Defendants and the borrowers agreed to litigate—and AFC would not object to transfer if they did.  Regardless, Defendants have not demonstrated that there are sufficient "common question[s] of law or fact" to warrant consolidation.  Fed. R. Civ. P. 42(a).  This is an action on a different contract, involving different parties, and asserting different claims than those involved in *Hayden Gateway*.  AFC has also filed suit in New York state court to enforce a guaranty provided by the borrowers' parent company, which Defendants owned.  *See AFC Agent LLC v. JG Holdco LLC*, No. 652644/2025 (N.Y. Cty.).  There is no federal subject-matter jurisdiction over that case, so Defendants' companies will be litigating against AFC in New York even if transfer were granted.

Defendants also incorrectly maintain that discovery would be conducted more efficiently in New Jersey than here, on the ground that "the instant 'case remains in the early stages of litigation.'" (Dkt. 32 at 8-9 (citation omitted).) But there is no reason to suppose that this Court would not supervise discovery efficiently, particularly given that this case involves different parties, claims, and issues than those addressed in *Hayden Gateway*. And even if this case "remains in the early stages of litigation," it is still as far or farther along than *Hayden Gateway*, in which the parties have only just begun motion-to-dismiss briefing.

### C. Granting Defendants' Transfer Request Would Endorse Defendants' Judge Shopping

"The purpose of § 1404(a) is not to allow judge-shopping by litigants." *Williams Advanced*, 2007 WL 2245886, at *6 (quotation marks and citation omitted). Yet that is exactly what Defendants' motion seeks to do. Neither Defendants nor their counsel of record nor any of their key witnesses is based in New Jersey—the forum to which Defendants request transfer. Nor does this suit involve the same or even similar claims as those pending in New Jersey. And Defendants scarcely hide that their request to transfer is premised not on convenience so much as on an express plan to seek consolidation of this action before a particular judge—namely, the one who issued a favorable preliminary injunction ruling to Defendants' companies. *See id.* (observing that while party sought transfer on "the pretense that it is more convenient for the parties, the true motivation behind it is 'judge-shopping,'" which was "clear from the fact that [the requested forum] is *not* more convenient"). It is hardly a coincidence that Defendants first asked permission to seek transfer four days after that ruling.

Defendants' motion thus transparently reflects an attempt to lodge their defense not in a more convenient forum, but before a particular judge whom they perceive as more likely to rule in their favor. And that is reason enough to deny the motion. As this Court and others have correctly

recognized, "judge shopping" undermines the goals of the legal system and greatly disserves "the interests of justice."  *Wang*, 2014 WL 116220, at \*4; *see Williams Advanced*, 2007 WL 2245886, at \*7 ("[E]ven if the balance of convenience tipped slightly in favor of transferring this action, the Court would decline to do so as the motion is obviously motivated by improper judge shopping."). The Court should decline Defendants' invitation to endorse that highly improper tactic here.

## CONCLUSION

Defendants' motion to transfer venue should be denied.

DATED:  New York, New York      QUINN EMANUEL URQUHART &
            August 29, 2025                SULLIVAN, LLP


By: */s/ Kevin S. Reed*
   Kevin S. Reed


   Kevin S. Reed
   Alex Zuckerman
   295 Fifth Avenue, 9th Floor
   New York, NY 10016
   (212) 849-7000
   kevinreed@quinnemanuel.com
   alexzuckerman@quinnemanuel.com

   Jason D. Sternberg
   2601 South Bayshore Drive, Suite 1550
   Miami, FL 33133
   (305) 402-4880
   jasonsternberg@quinnemanuel.com


*Attorneys for Plaintiffs Advanced Flower*
*Capital, Inc. and AFC Agent LLC*

25

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with the length limit requirements of Local Rule 7.1(c) because it contains 7,302 words (based on the Microsoft Word word count function) excluding the parts exempted by the Local Rules.

Dated: August 29, 2025

*/s/ Kevin S. Reed*

Kevin S. Reed