UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCED FLOWER CAPITAL INC. and AFC AGENT LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL KANOVITZ and JON LOEVY, <br><br> Defendants. | No. 1:25-cv-02996 (PKC) <br><br><br> ORAL ARGUMENT REQUESTED |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**MOTION TO DISMISS AMENDED COMPLAINT**

Michael B. Homer
Constantine P. Economides
DYNAMIS LLP
175 Federal Street, Suite 1200
Boston, MA 02110
(617) 693-9732

*Counsel for Defendants Michael Kanovitz
and Jon Loevy*

## **TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................................................... 1

**ARGUMENT** ............................................................................................................................ 1

    I.  AFC HAS FAILED TO PLEAD PLAUSIBLE BREACHES OF THE SHAREHOLDER GUARANTY ............................................................................................................. 1

        A.   The Loan Has Been Judicially Declared Not to Be in Default. ....................................... 1

        B.   Given That The Loan Is Not In Default, None of AFC's Allegations Are Plausible Or Sufficiently Pled Here. ........................................................................................................ 2

        C.   Defendants Cannot Be Liable as Guarantors While the Loan Is Not in Default, with Principal Not Yet Due, and with AFC Enjoined. ................................................................. 3

    II.  AFC HAS FAILED TO STATE A PLAUSIBLE TORTIOUS INTERFERENCE CLAIM ... 4

    III.   AFC HAS FAILED TO SUFFICIENTLY PLEAD A CLAIM FOR FRAUD. .................... 4

        A.   The "Restricted Payments" Allegations Are Entirely Deficient ..................................... 5

        B.   AFC's Fraudulent Misrepresentation Allegations Fall Short ......................................... 6

        C.   AFC Fails To Allege Sufficient Scienter ................................................................... 7

        D.   A Legal Conclusion Cannot Be Miscast As a Fraudulent Misstatement ........................ 8

    IV.   AFC HAS FAILED TO PLAUSIBLY PLEAD CONVERSION ....................................... 8

    V.  PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ESTABLISH PERSONAL JURISDICTION OVER THE DEFENDANTS. ................................................................... 9

**CONCLUSION** ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Nev., LLC v. Grand Majestic Riverboat Co., LLC*,
    646 F. Supp. 3d 426 (S.D.N.Y. 2022) .................................................................................. 9, 10

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) ........................................................................................................ 7

*AIM Int'l Trading, LLC, v. Valcucine*,
    2003 WL 21203503 (S.D.N.Y. 2003) ..................................................................................... 4

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*,
    2009 WL 928718 (E.D.N.Y. Mar. 31, 2009) .......................................................................... 7

*Madonna v. United States*,
    878 F.2d 62 (2d Cir. 1989) ...................................................................................................... 7

*Rabinowitz v. Kelman*,
    75 F.4th 73 (2d Cir. 2023) ..................................................................................................... 10

*Tanzman v. LaPietra*,
    8 A.D.3d 706 (NY App. Div., 3d Dep't. 2004) ....................................................................... 8

**INTRODUCTION**

This loan is not in default, and Defendants did not commit any torts. AFC's allegations are not only false, but more relevant for present purposes, they are fatally implausible and cannot withstand scrutiny under Rule 12(b)(6) given the outcome of the proceedings in the District of New Jersey. They also fail to satisfy Rule 9(b). Because AFC has tried and failed twice to plead its claims with the required plausibility and specificity, the Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.     AFC HAS FAILED TO PLEAD PLAUSIBLE BREACHES OF THE SHAREHOLDER GUARANTY**

**A.     The Loan Has Been Judicially Declared Not to Be in Default.**

As set forth in the opening Motion, Judge Quraishi of the District Court of New Jersey recently convened an evidentiary hearing on the very same subject covered by this Complaint. The Court heard testimony from five live witnesses, including one of the Defendants and AFC's CEO, and considered all of the relevant loan documents, plus 120 pages of briefing submitted by the parties. Mot. at 3. Defendants have represented to this Court that at the conclusion of that process, on May 9, Judge Quraishi "declared that the loan was not in default at all." *Id*.

AFC's Opposition claims that this representation was "false." Opp. at 10.

At the outset, the Court should resolve this critical discrepancy, upon which the motion to dismiss largely turns. Defendants are the guarantors, not the borrowers. Thus, the premise that the underlying loan has been declared not in default is central to many of Defendants' arguments, and fatal to AFC's position. AFC cannot plausibly plead a claim for breach of a guaranty on a loan that is *not* in default.

As the Court will quickly observe, AFC's representation is impossible to defend. In relevant part, Judge Quraishi unambiguously "declare[d] that, as of the date of this Order, Plaintiffs

1

are not in breach or default," and enjoined AFC from exercising default remedies. *Hayden Gateway LLC v. Advanced Flower Cap. Inc.*, No. 25-2789, Dkt. No. 47 at 1 (D.N.J. May 9, 2025). There was nothing "false" about Defendants' representation that Judge Quraishi declared the loan not in default. AFC's suggestion otherwise should be rejected.

      **B.    Given That The Loan Is Not In Default, None of AFC's Allegations Are Plausible Or Sufficiently Pled Here.**

In their papers and at the evidentiary hearing before Judge Quraishi, AFC (very motivated to defend its actions and proceed with foreclosure) tried to prove that the borrowers committed various defaults. In response, the borrowers offered proof that no money was improperly diverted and no false representations were made. Rather than defend the fraud or theft allegations, including the restricted payment allegation, AFC abandoned them, and tried to prove other defaults instead.

Thereafter, having lost on every issue that it did raise, AFC appealed to the Third Circuit, arguing only four alleged defaults: (1) the borrowers did not provide audited financial statements as required by the Credit Agreement; (2) the borrowers filed affirmative defenses to AFC's foreclosure action on the Pennsylvania facility; (3) one of the borrowers' permits was not renewed; and (4) the borrowers did not provide email notification of the non-renewal until roughly two weeks after receiving the news, whereas the loan agreement required that notification within five days.

This is not an exaggeration. These are the four, and only four, reasons why AFC claims in the Third Circuit that the loan is in default. Appellants' Opening Br., *Hayden Gateway LLC v. Advanced Flower Cap. Inc.*, No. 25-2061, Dkt. No. 23 (3d Cir. July 1, 2025).

Meanwhile, AFC *did not* argue—either in the district court or now in the Third Circuit—that there was a valid factual or legal basis for *any* of the following alleged defaults: any fraud; any "restricted payments"; any diversion of a single penny; or repayment of the law firm loan.

AFC is trying to keep this lawsuit alive to pressure the Defendants for purposes of future loan

2

renegotiations, but to do so, AFC is improperly operating in two parallel universes. In New Jersey, where it had to prove its allegations, AFC raised one set of arguments. In New York, where AFC need only plead them, AFC is telling a completely different story: that Defendants committed criminal racketeering (although AFC quietly dismissed that claim), looted the company of tens of millions of dollars, and committed rampant fraud.

Defendants acknowledge the presumption at this stage that non-conclusory allegations are assumed true. But allegations must also be plausible, and they must satisfy Rule 9(b). AFC's allegations fail both standards. While AFC is arguing in the Third Circuit that the loan is in default because the borrowers filed affirmative defenses (to an unjustified foreclosure) and were two weeks late with an email notification, AFC cannot plausibly allege here that it forgot to mention in New Jersey that the borrowers also committed widespread fraud and stole tens of millions from AFC.

### C. Defendants Cannot Be Liable as Guarantors While the Loan Is Not in Default, with Principal Not Yet Due, and with AFC Enjoined.

Defendants did not personally borrow this money or agree to be personally liable for such a substantial obligation. Instead, Defendants executed a standard "bad boy" guaranty, whereby they are liable only if two conditions precedent are triggered: (a) the borrowers default; and (b) the Defendants engage in serious misconduct like fraud of theft. *See* Dkt. No. 30-1. In other words—and as set forth with case support in Defendants' Motion (*see* Mot. at 11-13)—the guaranty is not implicated at all unless and until the loan expires without payment by the borrowers. Here, neither triggering event has occurred (or is properly alleged). Loan payments are being timely made, there has been no default, and the loan does not expire until May 2026. Applying the terms of the contract, therefore, there is no obligation yet "due and owing" that Defendants *qua* guarantors could be lawfully called upon to backstop. AFC cannot talk its way around this reality.

Indeed, AFC does not even try. Having no answer, AFC's Opposition simply ignores the

contract's "due and owing" language altogether, apparently hoping this Court will too. Instead, AFC argues that Defendants committed fraud, stole money, and made misrepresentations that induced AFC to loan money. Even if those allegations were satisfactorily pled (as discussed below, they are not), the "bad boy" guaranty still would not be triggered, at least not yet. AFC's argument continues to ignore that guarantors cannot be liable on their obligation unless and until the borrowers first come up short on their underlying obligation.[1]

## II. AFC HAS FAILED TO STATE A PLAUSIBLE TORTIOUS INTERFERENCE CLAIM.

For similar reasons, Defendants have the better of this argument too. Where another court has declared that the borrowers have not breached the underlying contract (after AFC had every opportunity to prove otherwise), AFC cannot plausibly allege that Defendants are liable for tortiously causing the borrowers to breach that same contract. *E.g., AIM Int'l Trading, LLC, v. Valcucine,* 2003 WL 21203503, at *4 (S.D.N.Y. May 22, 2003) (to have a cause of action for tortious interference of contract, "it is axiomatic that there must be a breach of that contract").

Independently, AFC also fails to overcome the black-letter law cited by Defendants establishing that the tort does not apply to directors alleged to have caused their company to breach a contract. *See* Mot. at 13-14 (citing cases). Were it otherwise, every breach of contract case would give rise to a parallel tortious interference claim, which is not the law. *Id.*[2]

## III. AFC HAS FAILED TO SUFFICIENTLY PLEAD A CLAIM FOR FRAUD.

---

[1] AFC also argues that there are presently some unpaid vendor bills and taxes that perhaps the borrowers will not have resolved by the time the loan expires or defaults, thereby possibly creating a potential loss for AFC (assuming any resulting foreclosure sale does not make AFC whole). *See* Opp. at 18 ("The borrowers' unpaid tax bills create potential competing claims against the assets. . . "). But none of that is a present loss. And it may well never be a loss at all. This defeats AFC's argument. Because nothing is "due and owing," the guaranty's condition precedent is not triggered.

[2] AFC attempts to invoke exceptions where corporate officials act beyond the scope of their employment or are motivated by personal gain. Opp. at 18-20. Neither argument is persuasive. The scope argument is not explained at all, and has no apparent applicability. And AFC failed to plead how Defendants' actions were for personal gain. To the contrary, repaying the company's debt (to their law firm, or anyone else) is in the company's interest, and the Complaint expressly alleges that money was diverted to run the cannabis company. Am. Compl. ¶ 152.

If Defendants had committed even a fraction of the fraud and theft alleged in the Amended Complaint—really, even just one single defensible example—then AFC would surely not be in New Jersey, and now the Third Circuit, arguing instead that the loan is in default because an email notice was sent two weeks late (then cured) and because the borrowers failed to provide audited financial statements (a requirement that the district court found had been expressly waived).

Defendants again acknowledge that the Court's role at this juncture is not to decide who is right. But Defendants do ask the Court to hold AFC to what Rules 9(b) requires. AFC has not met that standard, because it cannot. Fundamentally, what it is alleging is counterfactual. The fraud claim cannot be dismissed just because it is a lie. But because it is a lie, AFC cannot, and has not, alleged supporting facts and circumstances with anywhere near the particularity required by Rule 9(b).

### A. The "Restricted Payments" Allegations Are Entirely Deficient

With the exception of two payments discussed below, the Complaint contains zero allegations about any other supposedly "restricted" payment: to whom, for what, when made, or, most importantly, how or why that intra-company payment was supposedly "restricted." This lack of specificity is fatal. The company operated out of a single bank account during the relevant time period, and there is nothing inherently impermissible about intra-company transfers. If any *specific* intra-company payment (just a handful? hundreds?) qualifies as a restricted payment (for what? to whom? for what amount?), AFC has completely failed to explain *how* or *why* that is so.

AFC suggests in response that it does not have to allege "each instance of illicit fund diversion." Opp. at 21. It may be true that AFC need not allege "each instance," but AFC has not alleged *any*, save two. And not for lack of trying. After Defendants pointed out the deficiency in its pre-filing letter, AFC sought and received permission to try again. Yet AFC's Complaint, as amended, again identifies two, and only two, alleged instances.

AFC no longer defends the first. As explained in Defendants' Motion (and not contradicted

5

in Plaintiffs' Opposition) the company's new ownership team inadvertently sought reimbursement for a $408,814 piece of equipment that had already been paid for. *See* Mot. at 18. AFC pointed out the discrepancy, and Defendants promptly repaid the money. *See id.* Critically, the issue was expressly and specifically waived in a subsequent forbearance agreement (for which Defendants paid valuable consideration). *See id.*; Dkt. No. 30-3. That AFC's Amended Complaint tried to use this as one of the only two specified restricted payments justifying relief—even after Defendants pointed this out—speaks volumes about the weakness of AFC's position.

The only other specified restricted payment concerns the law firm loan repayment. There was nothing restricted about this payment either, as the borrowers used money belonging to the company, not AFC, to repay money that the law firm had legitimately loaned to the borrowers. But what matters for present purposes is that AFC's conclusory (and false) claim that AFC's money was used to make this repayment is wholly unsupported by anything pled. Other than assuming its own conclusion, the Amended Complaint pleads no facts at all explaining why this payment qualifies as "restricted," or how or why the payment was made with AFC's money.

Defendants understand that the Court does not know whose money this was, and that Rule 12(b)(6) is not the proper vehicle to decide. But given that (a) the loan has been declared not in default, and (b) stealing AFC's money most certainly would have put the loan in default, AFC's allegations are fatally implausible. And under Rule 9(b), it was incumbent on AFC to plead specific facts supporting its claim that Defendants stole AFC's money. AFC cannot, and did not. AFC's Opposition makes no attempt to overcome these fatal defects. Instead, AFC urges the Court to merely accept the conclusory allegation that this loan repayment diverted AFC's money. Rule 9(b) requires more.

### B. AFC's Fraudulent Misrepresentation Allegations Fall Short

AFC also alleges that Defendants fraudulently misrepresented in reports and certificates that the loan was not in default. But this is obviously circular: AFC has not plausibly pled with specificity

6

in New York (much less proved in New Jersey) that the loan actually was in default, so Defendants' certifying that the loan was not in default cannot be fraud.

In any event, the Defendants did not even sign these reports or certifications. The borrowers did. That is a problem that AFC fails to overcome. The Complaint's allegations that Loevy supposedly "directed" the borrowers' officers to do so, or that Kanovitz even knew about them at all, are conclusory, totally unsupported by any pled facts. Importantly, AFC's new request for discovery to fill in that gap, *see* Opp. at 21, should not be rewarded – litigants are not supposed to sue first and then try to prove fraud later. *See, e.g., Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) ("One of the [further] purposes of Rule 9(b) is to discourage the filing of complaints as a pretext for discovery of unknown wrongs. [A plaintiff's] contention, that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to discourage.") (citation modified).

### C. AFC Fails To Allege Sufficient Scienter

AFC also fails to rebut Defendants' scienter argument. As noted, the Second Circuit has cautioned that courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation marks omitted). Nor is a generalized profit motive, or claims that defendants stand to gain economically, sufficient for Rule 9(b). *See Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009).

Put simply, there are no specific allegations in this Complaint supporting any conclusion that Loevy (much less Kanovitz) had any idea about anything AFC alleges. Mere ownership of the company is plainly insufficient. Even after an opportunity to fix the problem, the Amended Complaint remains rife with conclusory statements that Defendants "knew" something, without alleging a single

specific fact supporting any inference (much less the requisite "strong interference") that Defendants knew the thing alleged.

There is no dispute that Defendants were lawyers, running their law firm and practicing law. While they were the primary investors in the cannabis company, AFC cannot plausibly allege that they were personally involved in any of these payments, certifications, or reports. Because they were not. Which is why AFC cannot, and has not, pled any facts sufficient to establish scienter.

### D.  A Legal Conclusion Cannot Be Miscast As a Fraudulent Misstatement

AFC also comes up short against Defendants' argument that whether or not the loan was in default is a legal conclusion, subject to a reasonable difference of opinions. Being wrong about this hotly contested issue can hardly be a basis for alleging a *knowing* fraud. The loan documents comprise more than a thousand pages of jargon, the meaning of which the lawyers have never stopped fighting over. AFC cannot credibly maintain that Defendants committed knowing fraud for representing that the loan was not in default, particularly where Judge Quraishi did not think so either. AFC does not come close to plausibly alleging that Defendants' belief (a legal conclusion) that the loan was not in default was not only false, but "*known by the Defendant to be false*." *Tanzman v. LaPietra,* 8 A.D.3d 706, 707 (NY App. Div., 3d Dep't. 2004) (emphasis added).

AFC gives this point short shrift, but the Court should not. It is fatal to AFC's argument.

### IV.  AFC HAS FAILED TO PLAUSIBLY PLEAD CONVERSION

After hearing evidence, a federal court in New Jersey concluded that this loan is not in default for any of the reasons AFC proffered. Yet AFC now asks this Court to deny the motion to dismiss in New York so that AFC can try and prove that Defendants effectively stole all of the loan proceeds.

If AFC wants its money back based on alleged malfeasance, it should have to persuade the Third Circuit that the loan agreement has actually been breached. Otherwise, if AFC has its way, Defendants are going to owe AFC what AFC claims is now $125 million as the guarantors, while the

underlying borrowers have never been adjudged to owe AFC anything. That cannot be.

## V. PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ESTABLISH PERSONAL JURISDICTION OVER THE DEFENDANTS.

Plaintiffs raise four discrete arguments for the assertion of personal jurisdiction based on a provision of the Shareholder Guaranty. Each argument fails, and Plaintiffs have not raised any other basis (*e.g.*, a long-arm statute or minimum contacts) for personal jurisdiction.

First, Plaintiffs argue that the forum selection clause—which was in the Credit Agreement, not in the Shareholder Guaranty—was reasonably communicated to Mr. Loevy because he signed the Credit Agreement. Opp. at 12. However, there is no "Credit Agreement" in the record that was signed before or on the same day as the Shareholder Guaranty (April 5, 2021). The only forum selection clause in the record (*i.e.*, the clause from the Second Amended and Restated Credit Agreement) post-dates the Shareholder Guaranty by four months and, therefore, could not have been reasonably communicated to Mr. Loevy when he signed the Shareholder Guaranty.[3]

Second, Defendants speculate that the Credit Agreement signed by Mr. Loevy "all but certainly" was communicated to Mr. Kanovitz. Opp. at 12. Leaving aside the inadequacy of that assertion, Plaintiffs fail to allege which documents he received or when, or that he signed or received any agreement along with the Shareholder Guaranty. The record is silent on that issue.

Third, Plaintiffs contend that the Shareholder Guaranty's incorporation of the Credit Agreement's "venue" (but not "jurisdiction") provision is sufficient to also cover personal jurisdiction. *See* Opp. at 13 (quoting *Absolute Nev., LLC v. Grand Majestic Riverboat Co., LLC*, 646 F. Supp. 3d 426, 438 (S.D.N.Y. 2022) (Castel, J.)). That contention is misplaced. In *Absolute Nev., LLC*, the Court correctly noted that "parties can consent to personal jurisdiction through

---

[3] For this reason, the precedent cited by Plaintiffs is inapposite. *See* Opp. at 12-13 (citing cases). None of the decisions upon which AFC relies involved the incorporation by reference of a forum selection clause that was not in the record or that post-dated the operative contract.

9

forum-selection clauses in contractual agreements" and an "agreement to resolve disputes by arbitration in New York constitute[s] consent to personal jurisdiction in New York.*"* 646 F. Supp. 3d at 438 (alteration in original) (citations omitted). Those principles are not in dispute. The question here is whether the Shareholder Guaranty's precise contractual language constitutes an enforceable consent to personal jurisdiction before this Court. Unlike the language in the decisions cited by Plaintiffs, the clause here *never* mentions jurisdiction. *See* Mot. at 10.

Finally, assuming any language from the Credit Agreement had been reasonably communicated, Plaintiffs incorrectly assert that the clause is enforceable even though it is non-exclusive. Opp. at 14. Plaintiffs mistakenly rely on *Rabinowitz v. Kelman*, in which the Second Circuit reiterated that non-exclusive forum-selection clauses are deemed "permissive" and are *not* presumptively enforceable. 75 F.4th 73, 83 (2d Cir. 2023) ("Forum selection clauses lacking any clear exclusionary or obligatory language—i.e., specific language of exclusion—are permissive and *not subject to a presumption of enforceability*." (citation modified) (emphasis added)). Because Plaintiffs concede that the forum-selection clause is "non-exclusive" (*see* Opp. at 14), they have not met their burden to enforce it.

## CONCLUSION

During contentious loan renegotiations, AFC threatened Defendants that if they did not give into AFC's demands, AFC would harm their good reputations by suing them for RICO, fraud, and theft. When Defendants refused to be extorted, AFC followed through with its threat. AFC knows full well the resulting lawsuit is frivolous, but is trying to keep it alive as long as possible to bully and pressure the Defendants into capitulating. This strategy should not be rewarded. The complaint should be dismissed. Not only does the Court lack personal jurisdiction over Defendants per Rule 12(b)(2), but all claims fail to state a claim per Rule 12(b)(6), and the fraud claims fail to conform to Rule 9(b).

Dated: September 12, 2025    Respectfully submitted,

*/s/ Michael B. Homer*
Michael B. Homer
Constantine P. Economides
DYNAMIS LLP
175 Federal Street, Suite 1200
Boston, MA 02110
(617) 693-9732
mhomer@dynamisllp.com

*Counsel for Defendants Michael Kanovitz and Jon Loevy*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on September 12, 2025, via the Court's ECF system.

*/s/ Michael B. Homer*
Michael B. Homer
