# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCED FLOWER CAPITAL INC. and AFC AGENT LLC, | |
| Plaintiffs, | No. 1:25-cv-02996 (PKC) |
| v. | |
| MICHAEL KANOVITZ and JON LOEVY, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF
## <u>MOTION TO TRANSFER VENUE</u>

Michael B. Homer
Constantine P. Economides
DYNAMIS LLP
175 Federal Street, Suite 1200
Boston, MA 02110
(617) 693-9732

*Counsel for Defendants Michael Kanovitz and Jon Loevy*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

   I.   AFC's Desire to Start Over Is Not An Appropriate Grounds To Avoid Transfer. .... 2

   II.   The Forum Selection Clause Is Not Enforceable, But Even If It Were, The Court
Could and Should Still Transfer This Action. ........................................................ 5

   III.   AFC's Attempted Reliance on the First to File Rule Is Misplaced. ........................ 9

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITES

**CASES**

*Albright v. Terraform Labs, Pte. Ltd.*,
   641 F. Supp. 3d 48 (S.D.N.Y. 2022)................................................................. 8, 10

*APA Excelsior III L.P. v. Premiere Technologies, Inc.*,
   49 F. Supp. 2d 664 (S.D.N.Y. 1999)................................................................ 8, 10

*BDO USA, P.C. v. Rojas*,
   2024 WL 3236822 (S.D.N.Y. June 27, 2024), *reconsideration denied*, 2024 WL 3729581
   (S.D.N.Y. Aug. 8, 2024) .................................................................................... 8

*Garnish & Gather, LLC v. Target Corp.*,
   No. 19-cv-10404 (JSR), 2019 WL 6729152 (S.D.N.Y. Dec. 11, 2019) ................................. 10

*Hayden Gateway LLC et al. v. Advanced Flower Capital Inc. et al.*,
   No. 25-2789 (D.N.J. May 9, 2025) ................................................................ 1, 3, 4, 5

*Hayden Gateway LLC v. Advanced Flower Cap. Inc.*,
   No. 25-2061 (3d Cir. July 1, 2025)................................................................... 4

*MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*,
   442 F. Supp. 3d 738 (S.D.N.Y. 2020)................................................................... 6

*Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*,
   743 F. Supp. 260 (S.D.N.Y. 1990)...................................................................... 5

*Philips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007)............................................................................ 6

*Recovery Racing III, LLC v. MAG Retail Holdings-FLI, LLC*,
   2025 WL 173682 (E.D.N.Y. June 23, 2025) ............................................................ 7

*Savin v. CSX Corp.*,
   657 F. Supp. 1210 (S.D.N.Y. 1987)..................................................................... 8

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)....................................................................................... 8

*ZPC 2000, Inc. v. SCA Grp., Inc.*,
   86 F. Supp. 2d 274 (S.D.N.Y. 2000)................................................................... 10

**STATUTES**

28 U.S.C. § 1404(a) .......................................................................................... 5, 6, 9

**INTRODUCTION**

There is a reason why AFC offers 24 pages of arguments for keeping this case out of New Jersey. AFC does not want to litigate in front of a New Jersey judge who considered robust briefing, documentary evidence, and testimony—including testimony from AFC's CEO, Daniel Neville (Dkt. No. 33 at 19)—before concluding the loan is not actually in default, and specifically finding Neville to be "less than credible on the whole." *Hayden Gateway LLC et al. v. Advanced Flower Capital Inc. et al.*, No. 25-2789 (D.N.J. May 9, 2025), Dkt. No. 46, at 38 ("*Hayden Gateway*"). AFC, in other words, would very much like to start over with a clean slate. But the law does not support that request.

All significant factors favor transfer. Notwithstanding AFC's attempt to pretend that the "first-filed rule" favors New York, reality intrudes. The first case concerning the alleged breach of this loan was filed against Timothy Bossidy (who colluded with AFC) in the District of New Jersey on March 7, 2025, five weeks before AFC filed this action. And Defendants obviously did not select or "judge shop" for Judge Quraishi. He was randomly assigned. When the borrowers then commenced the subsequent action against AFC in New Jersey, it was properly listed as related and assigned to Judge Quraishi as well—who had not yet heard or ruled on borrowers' request for injunctive relief.

Defendants, moreover, reasonably chose New Jersey in both instances. The District of New Jersey courthouse is 2.4 miles from the cultivation facility that Defendants constructed with the AFC loan proceeds, and 2.8 miles from Defendants' related dispensary business. In other words, the epicenter of the parties' dispute is a seven-minute drive from the court that AFC claims to be disconnected and inconvenient. The employees of that cultivation facility were witnesses to several of the alleged "defaults" that AFC attempts to enforce in this case.

Finally, AFC's lengthy Response cannot, and does not, dispute the most telling fact of all: the only New York connection identified by AFC is the location of its lawyers. Nothing else ties this

dispute to New York—no witnesses, no transactions, no relevant events. Tellingly, although AFC initially claimed that "AFC's CEO . . . lives right here in Manhattan" (Dkt. No. 14 at 5), AFC has backed off from that claim, instead conceding that, even though "[n]one of the parties reside[] in New York or New Jersey," "AFC's CEO has a residence in New York" (Dkt. No. 33 at 20).

In sum, as explained below, Plaintiffs' sundry arguments against transfer are inapposite or otherwise unfounded. This case should be transferred to the District of New Jersey where this dispute is already being litigated, and is much further along.

## ARGUMENT

### I.    AFC's Desire to Start Over Is Not An Appropriate Grounds To Avoid Transfer.

In New Jersey, AFC vigorously opposed injunctive relief, insisting that it needed to proceed with foreclosure. AFC had already self-helped itself to almost $2 million from borrowers' bank account, and had already started the process of shopping and selling borrowers' assets. AFC had also already by then filed this RICO action, accusing Defendants of criminal racketeering, fraud and theft—very serious accusations that profoundly affected Defendants' lives. So AFC could hardly claim it did not have all of its ducks in a row as to the 23 different ways that its default notices had asserted that borrowers were supposedly in default.

In New Jersey, the borrowers then submitted evidence rebutting everything AFC alleged. The borrowers' evidence, including affidavits and bank records, established that there were no restricted payments, no fraud, and no misrepresentations on any certifications or reports. This evidence confirmed that all of the company's intra-company payment (including the loan repayment AFC is focused on) were legitimate, and made with borrowers' money, not AFC's. Contrary to AFC's allegation in this lawsuit that the Defendants looted the company and diverted millions of dollars,

Defendants proved that not one penny was diverted, and they had committed no fraud in any report, certification, or anywhere else. *Hayden Gateway*, Dkt. No. 7-7, ¶¶ 22-31.

When it came time for the evidentiary hearing, AFC was heavily motivated to prove a default and exercise its remedies. Yet when it was AFC's turn to prove any single reason why the loan was supposedly in default, AFC did not even attempt to prove:

- any fraud whatsoever;
- any "restricted payments";
- any diversion of a single penny;
- repayment of the law firm loan; or
- any false certificates.[1]

Instead of proving any of these things—any one of which would have supported AFC's contention that the loan was in default and the injunction should be denied—AFC went with other arguments. These included things like: Borrowers did not provide email notification of permit non-renewal until roughly two weeks after receiving the news, whereas the loan agreement deadline was five days; Borrowers filed affirmative defenses trying to resist AFC's (unjustified) foreclosure action in violation of the credit agreement; and Borrowers allegedly did not provided audited financial statements (even though AFC told them not to). *See generally Hayden Gateway*, Dkt. No. 46 (D.N.J. May 9, 2025).

The arguments AFC presented were weak and unpersuasive, at least in the estimation of the New Jersey court. At the conclusion of the hearing, Judge Quraishi rejected every one of them. The Court "Declare[d] that, as of the date of this Order, Plaintiffs are not in breach or default," and enjoined AFC from asserting remedies. *Hayden Gateway*, Dkt. No. 47 at 1 (D.N.J. May 9, 2025).

---

[1] Unlike each of these listed categories which AFC never raised at all, AFC did include the alleged perfection certificate default in its initial hearing brief. However, when Borrowers responded with an affidavit establishing that (a) the certificate was 100% accurate, and (b) AFC was expressly aware of the information it claimed was missing, *Hayden Gateway*, Dkt. No. 7-5, ¶¶ 2-26, AFC abandoned this alleged default at the hearing, and never mentioned it again.

AFC recently appealed to the Third Circuit, arguing the loan is supposedly in default. AFC filed a brief last week, and conspicuously absent from AFC's appellate position is any suggestion about restricted payments, diversion of money, or any kind of fraud or misrepresentations. *See* Appellants' Opening Br., *Hayden Gateway LLC v. Advanced Flower Cap. Inc.*, No. 25-2061, Dkt. No. 23 (3d Cir. July 1, 2025).

This background is pertinent to the present motion. AFC is essentially asking this Court to allow it to start over in a new forum. The Court should not indulge this request. Upon reflection, it is not at all clear how the parties would litigate the same dispute involving the same witnesses and the same documents in two courts at once. For example, does AFC envision double depositions of the same people about the same topics? And while neither judge is biased for or against either side, the parties would presumably race to try to get their case to a favorable judgment, hoping to preclude the other side in the slower case, only to make arguments why preclusion, or partial preclusion, should or should not apply. This is not an orderly plan for litigation. Finally, but critically, if AFC were to succeed in keeping this case in New York, and if the Court were to deny Defendants' motion to dismiss, there is a very real possibility of contradictory findings.[2]

"The presence of related litigation in the transferee forum *weighs* heavily in favor of transfer, since litigation of related claims in the same tribunal results in more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest." *Nat. Union Fire Ins. Co. of*

---

[2] At the risk of sounding facetious, if the Third Circuit affirms in New Jersey, perhaps someday AFC will win in New York and get affirmed by the Second Circuit, creating a "circuit split" on whether or not this loan is in default. More seriously, common sense principles of conservation of judicial economy should control here. There is no good reason for this Court to host this dispute when its judicial colleague in New Jersey has already invested considerable judicial resources.

*Pittsburgh, Pa. v. Turtur*, 743 F. Supp. 260, 263 (S.D.N.Y. 1990) (internal citations and quotation marks omitted) (emphasis added). For all of these reasons, the Court should transfer this case.[3]

## II.    The Forum Selection Clause Is Not Enforceable, But Even If It Were, The Court Could and Should Still Transfer This Action.

Plaintiffs incorrectly assert that the Loan Agreement's forum selection clause forecloses a transfer under the 28 U.S.C. § 1404(a) factors. Opp. at 8-16. "Because the enforceability of a forum selection clause significantly affects the transfer analysis under 28 U.S.C. § 1404(a), the Court first evaluates whether either Plaintiff's claims are subject to an *enforceable* forum selection clause." *Gaynor v. Diamond*, 2025 WL 2256662, at *7 (S.D.N.Y. Aug. 7, 2025) (emphasis added) (citation modified) (holding that forum selection clauses were not enforceable and that transfer was warranted under § 1404). For a forum selection clause to be "presumptively enforceable," moreover, the enforcing party should  "demonstrate that: (i) the clause was reasonably communicated to the party challenging enforcement; (ii) the clause is mandatory, rather than permissive, in nature; *and* (iii) the clause encompasses the plaintiff's claims." *Id.* (emphasis added). "If all three of these requirements are met, the forum selection clause is presumed enforceable[.]" *MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 747 (S.D.N.Y. 2020) (citing *Philips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).

---

[3] AFC's bizarre claim that this matter (which has not yet gotten out of the gate) is "as far or farther along" than *Hayden Gateway*, Opp. at 23, bears no relationship to the reality of the situation. It ignores the extensive testimony, evidence, and factfinding Judge Quraishi has already conducted concerning many of the same issues in this case. For instance, Judge Quraishi has already ruled that—contrary to the contentions in the Amended Complaint—many of the construction delays referenced in the Amended Complaint were caused by AFC's agent, Bossidy. *See Hayden Gateway*, Dkt. No. 46, at 30 ("Plaintiffs have shown that Bossidy and Neville were coordinating their activities."); *id.* at 32 (finding that Bossidy's decision to withhold payments "for [AFC's] benefit sufficiently impacted Plaintiffs' ability to receive the final certificate of occupancy by the dates required in the 2024 Forbearance Agreement"); *id.* at 33 ("[T]he Court finds that Plaintiffs would likely have obtained a final certificate of occupancy but for Bossidy's bad faith conduct."); *id.* at 33 ("[T]he preliminary evidence presented at the hearing demonstrates that Bossidy and Neville were acting in concert and that they interfered with Plaintiffs' rights under the 2024 Forbearance Agreement.").

AFC has not and cannot meet that burden here. For the reasons stated in Defendants'
Memorandum of Law in Support of Motion to Dismiss Amended Complaint (Dkt. No. 30)
("MTD") and Reply in Further Support of Motion to Dismiss Amended Complaint (Dkt. No. 36)
("MTD Reply"), the subject forum selection clause is not enforceable under the applicable factors.
Plaintiffs have not shown that the clause was reasonably communicated to Loevy or Kanovitz. *See*
MTD at 8-9; MTD Reply at 9.[4] Regardless, enforcement is not mandatory because the forum-
selection clause *expressly states* that it is "non-exclusive" (Dkt. No. 30-2 § 13(c)), and is thus
permissive. *Recovery Racing III, LLC v. MAG Retail Holdings-FLI, LLC*, 2025 WL 173682, at *3
(E.D.N.Y. June 23, 2025) ("[A] permissive forum selection clause only reflects the contracting
parties' consent to resolve disputes in a certain forum, but does not require that disputes be resolved
in that forum."); *see also id.* (collecting cases); MTD at 9-10; MTD Reply at 10.

More importantly, Plaintiffs overlook that, even if the forum selection clause is valid and
enforceable, the Court still has discretion to transfer based on the public factors under § 1404(a).
*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (stating that forum selection clause is
only "a significant factor" in § 1404(a) analysis); *Credit All. Corp. v. Crook*, 567 F. Supp. 1462,
1464 (S.D.N.Y. 1983) ("Although forum-selection clauses are usually upheld absent a showing of
unreasonableness, the existence of such a clause, if not mandatory, does not prevent the court from
ordering a change of venue under § 1404(a).") (citations omitted). In other words, "although a
forum selection clause should be a significant factor in the district court's decision on whether to
transfer venue in a diversity action, it alone is not dispositive, and Section 1404(a) requires courts

---

[4] In the MTD, Defendants assert that the Shareholder Guaranty did not mention "jurisdiction" and, therefore, did not
reasonably communicate any consent to jurisdiction by Loevy or Kanovitz (or incorporate by reference any
jurisdictional provisions in the Loan Agreement). *See* MTD at 9, 10. That specific argument does not apply to "venue,"
which was mentioned in the subject provision of the Shareholder Guaranty. The MTD's remaining arguments
regarding the forum selection clause's unenforceability do apply to "venue."

to take into account the public interest considerations." *BDO USA, P.C. v. Rojas*, 2024 WL 3236822, at *10 (S.D.N.Y. June 27, 2024), *reconsideration denied*, 2024 WL 3729581 (S.D.N.Y. Aug. 8, 2024) (citation modified); *APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 49 F. Supp. 2d 664, 672-73 (S.D.N.Y. 1999) (transferring case in the interest of justice despite existence of permissive forum selection clause because transfer "will avoid unnecessarily duplicitous litigation and the risk of inconsistent judgments"); *Savin v. CSX Corp.*, 657 F. Supp. 1210, 1214 (S.D.N.Y. 1987) (granting motion to transfer despite existence of forum-selection clause largely because transferee judge was "familiar[] with the factual background underlying the contested dividend").

AFC acknowledges, Opp. at 18, that the decision whether to transfer is discretionary, and that courts are empowered to exercise that discretion "in a way that promotes the underlying purposes of § 1404, namely 'to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Albright v. Terraform Labs, Pte. Ltd.*, 641 F. Supp. 3d 48, 55 (S.D.N.Y. 2022) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). AFC argues that all of the remaining factors "weigh against transfer or are uniformly neutral," Opp. at 19, but there is no support for that contention.

In particular, AFC claims that the "locus of operative facts" and the location of evidence proof are both neutral factors by claiming that "the scheme" was "orchestrated from Illinois," apparently because Defendants Loevy and Kanovitz live there. Opp. at 20. But, as explained in the Motion, New Jersey is indisputably the center of gravity in this litigation, and accordingly, many of the relevant records and evidentiary sources are located in New Jersey. The borrowers in the loan documents at issue are all New Jersey and Pennsylvania entities, and the *entire purpose of*

*the loan* was to build and operate cannabis businesses in New Jersey and eastern Pennsylvania. MTD at 6.[5]

AFC alleges that the funds were not used "for their required purpose," Am. Compl. ¶ 1—that is, the development of the facilities in question—and thus, the construction and development of those specific facilities is a central issue in the case. AFC's attempt to claim that Defendants' "knowledge" occurred in Illinois ignores the fact that the majority of the events literally occurred in New Jersey. *E.g.*, MTD at 7 (explaining that most of the draw requests claimed to be fraudulent related to requests for construction of facilities in New Jersey); *see also, e.g.*, Am. Compl. ¶¶ 91, 107-111. Moreover, the referenced construction occurred predominantly in New Jersey, and the employees who witnessed and contributed to it overwhelmingly work and reside in New Jersey. MTD at 9-11. Nothing about the case, by contrast, involves New York.

In sum, based on a comparison of administrative difficulties and judicial resources, this case presents unique circumstances warranting transfer. The transferee court has already conducted an evidentiary hearing, made factual and credibility determinations, and issued a preliminary injunction involving issues and parties inextricably intertwined with this litigation. If the case is transferred, that court can readily determine how to coordinate or consolidate these cases and whether and to what extent the existing record can streamline either or both cases. There will be an option for a single discovery process with a single trial. The risk of needless duplication will disappear. Thus, even if there were an enforceable forum selection clause for venue in New York (there is not), transfer would still be warranted under the public interest factors. *E.g.*, *ZPC*

---

[5] *See also* Am. Compl. ¶ 1 ("This action seeks to recover tens of millions of dollars that [Defendants] fraudulently diverted from loans provided by AFC *to facilitate the development of two of their cannabis projects in Pennsylvania and New Jersey*."); Am. Compl. ¶ 7 ("Defendants' systematic fraud caused the New Jersey project to suffer delay and financial setbacks and Pennsylvania project to fail. The Pennsylvania project collapsed entirely, accruing millions in unpaid taxes and vendor liabilities. The New Jersey project has finally become fully operational today after years of significant obstacles.").

*2000, Inc. v. SCA Grp., Inc.*, 86 F. Supp. 2d 274, 279-81 (S.D.N.Y. 2000) (transferring case from Southern District of New York to Northern District of Illinois in the interest of justice, despite existence of permissive forum selection clause); *APA Excelsior*, 49 F. Supp. 2d at 673 (transferring case in interest of justice despite permissive forum selection clause because "a transfer will avoid unnecessarily duplicitous litigation and the risk of inconsistent judgments").[6]

## III.    AFC's Attempted Reliance on the First to File Rule Is Misplaced.

The first to file rule does not apply here, and even if it did, transfer would still be warranted. "A court examines the same factors considered in connection with motions to transfer venue in determining whether departure from the first-filed rule is warranted. In other words, on a motion to transfer venue, the first-filed rule does not supersede the inquiry into the balance of convenience under § 1404(a)." *HomeoPet LLC v. Speed Lab'y, Inc.*, 2014 WL 2600136, at *14 (E.D.N.Y. June 11, 2014) (citation modified). Thus, Defendants' analysis under the § 1404(a) factors applies (regardless of any first-filed argument), and as discussed *supra* and in the Motion, those factors weigh in favor of transfer.

Plaintiffs incorrectly suggest that Defendants should have predicted and negated Plaintiffs' arguments in opposition to transfer. *See* Opp. at 18 ("Defendants do not dispute that the first-filed rule applies. Instead, they omit from their motion any reference to the first-filed rule . . . ."). Defendants did not address the first-filed rule because (1) Defendants do not seek to apply it, and (2) Defendants did not know that Plaintiffs would assert the illogical argument that their second-

---

[6] AFC's Opposition argues that the "presumption against disturbing plaintiffs' chosen forum" counsels against transfer, Opp. at 16-18, but ignores that Plaintiffs' choice of forum, like the forum selection clause, is only one of many factors under § 1404(a). Moreover, "a plaintiff's decision to bring a case in the Southern District of New York is less pertinent to the balancing test when 'New York is not the plaintiff's home district, and the operative facts have little connection to the chosen district.'" *Albright*, 641 F. Supp. 3d at 55 (quoting *Garnish & Gather, LLC v. Target Corp.*, No. 19-cv-10404 (JSR), 2019 WL 6729152, at *2 (S.D.N.Y. Dec. 11, 2019)). And as Defendants' motion pointed out, if that factor controlled, no defendant could ever win a motion to transfer, as plaintiffs pick the forum in every case.

filed action is *actually* the first-filed action in relation to the third-filed action, because the literally first-filed action was subsequently transferred and dismissed. AFC also absurdly mischaracterizes the *Bossidy* action as nothing but an "action to obtain documents," Opp. at 17, but omits the fact that that documents sought were *Bossidy's communications with AFC*, because Bossidy, who had been installed by AFC, was "acting in the best interests of AFC [] and not of Justice Grown[,]" thereby "impairing Justice Grown's ability to defend itself" against AFC's allegations of default. *Bloc Dispensary LLC v. Timothy Bossidy*, No. 25-1725 (D.N.J. Mar. 7, 2025), Dkt. No. 1 (Complaint), ¶¶ 2, 57-58.

## **CONCLUSION**

For all of the reasons discussed in the other pending motion, the Court should grant Defendants' motion to dismiss all claims on the merits. That would and should end this case. But if the Court is not inclined to do that, it should transfer this litigation to the District of New Jersey, where it is already being litigated, and is much further along.

Dated:  September 12, 2025                  Respectfully submitted,

                                            */s/  Michael B. Homer*
                                            Michael B. Homer
                                            Constantine P. Economides
                                            DYNAMIS LLP
                                            175 Federal Street, Suite 1200
                                            Boston, MA 02110
                                            (617) 693-9732
                                            mhomer@dynamisllp.com

                                            *Counsel for Defendants Michael Kanovitz and Jon Loevy*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on September 12, 2025, via the Court's ECF system.

<u>*/s/ Michael B. Homer*</u>
Michael B. Homer