quinn emanuel trial lawyers | new york
295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

September 29, 2026

WRITER'S DIRECT DIAL NO.
**(212) 849-7160**

WRITER'S EMAIL ADDRESS
**kevinreed@quinnemanuel.com**

**VIA ECF**

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: Advanced Flower Capital Inc. v. Kanovitz, 1:25-cv-02996-PKC

Dear Judge Castel:

On behalf of Plaintiffs Advanced Flower Capital Inc. and AFC Agent LLC (together, "AFC"), we write to bring to the Court's attention conduct that AFC does not raise lightly.

Defendants Michael Kanovitz and Jon Loevy—acting through the general counsel of their company, Justice Cannabis Co. ("JCC")—have interfered with subpoenas duces tecum that AFC lawfully served in this action (the "Action") by directing a non-party witness to withhold responsive documents and to contact Defendants personally before complying with the subpoenas. AFC respectfully requests that the Court order the relief set forth below to remedy this interference and prevent its recurrence.

AFC brought the Action to enforce the obligations of Defendants under a Guaranty Agreement they signed in connection with AFC's loan to entities affiliated with Defendants and their company, JCC. *See, e.g.*, Second Am. Compl. ¶¶ 72-117. In connection with this Action, AFC served subpoenas *duces tecum* on, among others, former JCC executive Darin Carpenter on August 11, 2026. The subpoena specified a compliance date of September 3, 2026.

On August 25, 2026, JCC's General Counsel, Alexander Hymowitz, sent Carpenter a letter (the "JCC Letter") threatening legal action if he complied with the subpoena without first consulting JCC. Ex. A.[1] The JCC Letter asserts that JCC "has a protected interest in the confidentiality of any documents, emails, records, files, communications, or other materials that may be in your possession or control and that may be responsive to" the subpoena. The letter further asserts that any such materials are the property of JCC, and it claims that "any documents containing, reflecting, or referring to communications with Jon Loevy, Mike Kanovitz, Joel Feldman, Gail Brashers-Krug, or any other lawyer constitute materials legally protected by the

[1] Exhibit A (JCC Letter) has been redacted to obscure personal identifying information.

attorney-client privilege" and that Carpenter is "legally prohibited from disclosing to a third party any such privileged communications." On the basis of these sweeping assertions, the JCC Letter ominously warns, "[i]f you possess Company materials and proceed to disclose or produce them without first providing the Company with an opportunity to address the issue, [JCC] reserves all rights to seek all appropriate legal remedies." JCC paired that threat with a claim that "we are not asking you to disregard or violate a valid subpoena or other legal obligation." Yet the same letter concludes by demanding that Carpenter "reach out or have your attorneys reach out to Jon [Loevy] or Mike [Kanovitz]"—*i.e.*, Defendants—"immediately upon receipt of this letter and, in any event, before producing any [JCC] materials."

Defendants' attempt to intimidate Carpenter into letting them determine the timing and scope of Carpenter's production is improper. Any claim that responsive materials in the possession of Carpenter belong to JCC or are confidential—neither of which would allow JCC itself to refuse to produce those materials—is likewise no basis for Defendants to demand that a third party not produce them. No more availing is the claim that any and all responsive materials referencing Defendants or any other lawyer associated with JCC are privileged, irrespective of their contents. And most fundamentally, even accepting that Defendants had legitimate objections to the subpoena, the permissible means to address those objections were attempting to resolve them with Plaintiffs and, failing that, raising them with the Court. Defendants were not entitled to exercise self-help by demanding that Carpenter consult with them before making his production and threatening him with legal action if he did otherwise. *See Handloser v. HCL America, Inc.*, 2020 WL 6460986, at *5 (N.D. Cal. Nov. 3, 2020) ("If HCL believed its interests were affected by plaintiffs' subpoena," it "had two options: it could move to quash or modify the subpoena . . . or it could move for a protective order."); *Teri v. Oxford Mgmt. Svcs., Inc.*, 2008 WL 11435689, at *7 (E.D.N.Y. Sept. 30, 2008) (if a party has "proper objections to materials sought, their proper course should have been a motion to quash the subpoena.").

Courts have repeatedly condemned precisely this tactic and treated it as sanctionable. As one court explained, "[n]owhere in [Rule 45] is it contemplated that the adversary of the party seeking the information may advise, ***no matter the reasons***, the person commanded by the subpoena to produce the information to ignore the subpoena's command." *Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 794 (E.D. Pa. 2012) (emphasis added). Doing so "arrogate[s] to" JCC "a power assigned to the Court under the Rule. The violation is clear and it is sanctionable." *Id.*; *see also Fox Indus., Inc. v. Gurovich*, 2006 WL 2882580, at *8, *10 (E.D.N.Y. Oct. 6, 2006) ("It is the court's duty to rule on the validity of subpoenas," and attorney's letters instructing non-parties not to comply were "clear evidence of his bad faith and vexatious behavior.") (internal quotation omitted); *Furth v. Zanic*, 2008 WL 11380207, at *1 n.1 (N.D. Ohio Oct. 15, 2008) ("If counsel believe that a subpoena is wrongful, the proper action is to move for a protective order, not engage in vigilantism."). It was similarly improper for JCC to demand that Carpenter hold his production in abeyance while JCC "evaluat[es] whether judicial intervention is necessary." Ex. A at 2; *see also Covert Manufacturing, Inc. v. Covert Innovations, LLC*, 2024 WL 904404, at *8 (S.D. Ohio Mar. 1, 2024) ("[U]nilaterally directing the third parties not to comply without any authority was in bad faith" and "sanctionable"). The risk of such influence is particularly acute here, where Defendants are founding partners of a prominent trial firm whose website describes Loevy as "one of the most successful trial lawyers in the United States." They knew, at a

minimum, that an objection to a subpoena belongs in a motion to quash or for a protective order, not in a letter threatening a non-party witness.

AFC respectfully requests that Defendants be directed to (i) withdraw their letter to Carpenter, (ii) withdraw any similar communications sent to any other non-party subpoena recipients, (iii) refrain from any further interference with third-party subpoenas issued by AFC in this matter, and (iv) disclose to AFC all communications, past or future, in which Defendants or JCC have urged a subpoena recipient to withhold or delay production.

Respectfully submitted,

*/s/ Kevin S. Reed*

Kevin S. Reed

cc: All counsel of record (via ECF)